IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., | |
| Plaintiff, | CIVIL ACTION FILE |
| v. | NO. C-1-02 490 |
| PHILIPPE HOUEIX, | |
| Defendant. | |

**REPLY OF SAVANNAH COLLEGE OF ART AND DESIGN
TO PHILLIPPE HOUEIX'S
COUNTERCLAIM FOR BREACH OF CONTRACT**

Plaintiff Savannah College of Art and Design, Inc. ("SCAD") hereby sets forth its Reply to the Counterclaims for Breach of Contract ("Counterclaim") of Defendant Philippe Houeix ("Houeix"). Pursuant to Fed. R. Civ. P. 38(b), SCAD demands a trial by jury of all issues triable of right by a jury that are raised in SCAD's Complaint or Houeix's Answer and Counterclaim.

**FIRST DEFENSE**

Houeix has failed to state a claim upon which relief may be granted.

**SECOND DEFENSE**

Houeix's claims are barred by waiver.

**THIRD DEFENSE**

Houeix's claims are barred by the doctrine of estoppel.

**FOURTH DEFENSE**

Houeix's claims are barred by the doctrine of unclean hands.

**FIFTH DEFENSE**

Houeix's claims are barred by failure to mitigate damages.

ATL01/11535405v1

**SIXTH DEFENSE**

Houeix's claims are barred by accord and satisfaction.

Responding to the individually enumerated paragraphs of Houeix's Counterclaim, SCAD answers as follows:

26. SCAD denies that this Court has subject matter jurisdiction over Houeix's Counterclaim based on diversity jurisdiction because the amount in controversy does not exceed $75,000 exclusive of interests and costs.

27. SCAD admits that it is incorporated in the State of Georgia and has its principal place of business in Georgia and that it is engaged in interstate commerce. SCAD denies that the amount in controversy exceeds $75,000 exclusive of interests and costs.

28. SCAD admits that Houeix responded to SCAD's employment advertisement in 1998, that SCAD hired Houeix in May of 1999, and that Houeix began teaching in June of 1999 at SCAD, and that Houeix moved to Savannah from France. SCAD is without knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations of Paragraph 28, and the same are therefore denied.

29. SCAD admits that the parties executed several Employment Agreements, two of which are dated August 16, 2000 and April 18, 2001 (the "Employment Agreements") and are the subject of Houeix's Counterclaim. SCAD admits that the Employment Agreements specify that they shall be construed and enforced under the laws of the State of Georgia. SCAD admits that the Employment Agreements incorporate by reference the SCAD Faculty Handbooks, which handbooks speak for themselves. SCAD denies that the Repayment Agreement dated September 13, 2000 is a contract modification. SCAD denies any and all remaining allegations contained within Paragraph No. 29 of Houeix's Counterclaim.

30. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD responds that whether a covenant of good faith and fair dealing is generally implied in contracts under Georgia law is a legal issue as to which neither an admission nor denial is required. SCAD denies any and all remaining allegations contained within Paragraph No. 30 of Houeix's Counterclaim.

31. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 31 of Houeix's Counterclaim.

32. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 32 of Houeix's Counterclaim.

33. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that it required Houeix to enroll in a master's degree program in Interior Design if Houeix wished to teach at SCAD and that Houeix enrolled in such a program at SCAD. SCAD admits that certain scheduling conflicts might have existed between Houeix's teaching schedule and the regular schedule for certain master's level courses had he been expected to attend regular classes, but states that this is irrelevant because, for a variety of reasons, the parties agreed that an individualized program of study should be created for Houeix wherein all of his classes would be in the form of a directed, independent study format. Plaintiff admits that Houiex was awarded an "A" grade for eight courses and one incomplete grade, which later reverted to an "F" as a result of his failure to complete the course. SCAD denies any and all remaining allegations contained within Paragraph No. 33 of Houeix's Counterclaim.

34. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that the Chair of the Department of Interior Design became the Dean of the School of Building Arts. SCAD denies any and all remaining allegations contained within Paragraph No. 34 of Houeix's Counterclaim.

35. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that the Dean, Chair and registrar are representatives of SCAD and are agents of the College to the extent that they were acting within the scope of their properly approved duties and functions. SCAD denies any and all remaining allegations contained within Paragraph No. 35 of Houeix's Counterclaim.

36. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 36 of Houeix's Counterclaim.

37. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37, and the same are therefore denied.

38. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 38 of Houeix's Counterclaim.

39. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that the terms of the Faculty Handbooks, which were incorporated into the Employment Agreements, were binding on Houeix. SCAD further admits that the 2000-2001 Faculty Handbook is substantially similar to

the 2001-2002 Faculty Handbook.  SCAD denies any and all remaining allegations contained within Paragraph No. 39 of Houeix's Counterclaim.

40. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action.  Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 40 of Houeix's Counterclaim.

41. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action.  Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 41 of Houeix's Counterclaim.

42. SCAD admits that Houeix requested that he be allowed to take an additional course per semester even though the College did not require Houeix to take the additional courses.  SCAD further admits that the parties executed an Agreement of Repayment dated 9/13/00, that a correct copy of the Agreement is attached as Exhibit D to Houeix's Counterclaim, and that the agreement speaks for itself.  SCAD denies any and all remaining allegations contained within Paragraph No. 42 of Houeix's Counterclaim.

43. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action.  Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 43 of Houeix's Counterclaim.

44. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action.  Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 44 of Houeix's Counterclaim.

45. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action.  Nonetheless, SCAD is without knowledge or information

sufficient to form a belief as to the truth of the allegations contained in Paragraph 45, and the same are therefore denied.

46.    SCAD admits that if Houeix wished to teach at SCAD, he was obligated to be actively engaged in pursuing a master's degree in Interior Design, and that Houeix enrolled in such a program at SCAD. SCAD admits that Houeix requested that he be allowed to take two courses per semester, even though the College required only one. SCAD further admits that the College agreed to an additional tuition waiver for Houeix to allow him to take two courses per quarter provided that Houeix sign the Agreement of Repayment, which Agreement speaks for itself. SCAD denies any and all remaining allegations contained within Paragraph No. 46 of Houeix's Counterclaim.

47.    These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that certain scheduling conflicts might have existed between Houeix's teaching schedule and the regular schedule for certain master's level courses had he been expected to attend regular classes, but states that this is irrelevant because, for a variety of reasons, the parties agreed that an individualized program of study should be created for Houeix wherein all of his classes would be in the form of a directed, independent study format. SCAD denies any and all remaining allegations contained within Paragraph No. 47 of Houeix's Counterclaim.

48.    These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that certain scheduling conflicts might have existed between Houeix's teaching schedule and the regular schedule for certain master's level courses had he been expected to attend regular classes, but states that this is irrelevant because, for a variety of reasons, the parties agreed that an individualized program of study

should be created for Houeix wherein all of his classes would be in the form of a directed, independent study format. SCAD denies any and all remaining allegations contained within Paragraph No. 48 of Houeix's Counterclaim.

49. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD admits that Houeix received grades of "A" for the three courses that he took in the summer quarter of 2001 and that these grades continue as a permanent part of Houeix's student record at SCAD. SCAD denies any and all remaining allegations contained within Paragraph No. 49 of Houeix's Counterclaim.

50. SCAD admits that SCAD loaned Houeix a fully loaded laptop computer for use during his employ, but that, despite a demand for its return, Defendant has refused to return the laptop to SCAD. SCAD is without knowledge or information sufficient to form a belief as to the truth of the allegation that the computer contains Houeix's professional data and information that may be evidence in this case, and so the allegation is therefore denied. SCAD denies any and all remaining allegations contained within Paragraph No. 50 of Houeix's Counterclaim.

51. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD responds that the August 16, 2000 Employment Agreement speaks for itself. SCAD denies any and all remaining allegations contained within Paragraph No. 51 of Houeix's Counterclaim.

52. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD responds that the April 18, 2001 Employment Agreement speaks for itself. SCAD denies any and all remaining allegations contained within Paragraph No. 52 of Houeix's Counterclaim.

53. SCAD denies any and all allegations contained within Paragraph No. 53 of Houeix's Counterclaim.

54. Upon information and belief, SCAD admits that Houeix complained to the Southern Association of Colleges and Schools (SACS). SCAD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 54, and the same are therefore denied.

55. SCAD admits that Houeix operated at least two Web sites, one at the domain name <phoueix-master-scad.com> and another at the domain <scad.info>, the latter of which at least is still operating. SCAD admits that Houeix operates a Web site at the domain name <scad-and-us.info>. SCAD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 55, and the same are therefore denied.

56. SCAD denies that Houeix intended to create a Web site for the exchange of truthful information with regard to SCAD or that he intended to publish only true facts at the Web site. SCAD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 56, and the same are therefore denied.

57. SCAD denies that Houeix had no bad faith intent to profit from use of SCAD in the name of his Web site address. SCAD further denies that Houeix had legitimate reason to believe that his use of domain names that includes the famous SCAD trademark was a fair use or otherwise lawful. SCAD is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 57, and the same are therefore denied.

58. SCAD denies that Houeix's use of the domain <scad.info> is a form of news reporting or news commentary or that it is a noncommercial use. SCAD is without knowledge or

information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 58, and the same are therefore denied.

59. SCAD denies any and all allegations contained within Paragraph No. 59 of Houeix's Counterclaim.

60. SCAD admits that it initiated a proceeding under the ICANN Uniform Domain Name Dispute Resolution Policy to have the domain name <scad.info> transferred to SCAD and that the panelist assigned to hear the request did not transfer the domain name to SCAD. SCAD further responds that the panelist's decision speaks for itself. SCAD denies any and all remaining allegations contained within Paragraph No. 60 of Houeix's Counterclaim.

**FIRST CLAIM**

61. SCAD repeats and incorporates its answers to the allegation of paragraphs 26-60 of Houeix's Counterclaim as if fully set forth herein.

62. SCAD admits that the August 16, 2000 Employment Agreement was executed on or about August 16, 2000. SCAD further responds that the Employment Agreement speaks for itself. SCAD denies that the September 13, 2000 Agreement of Repayment is a part of the August 16, 2000 Employment Agreement. SCAD denies any and all remaining allegations contained within Paragraph No. 62 of Houeix's Counterclaim.

63. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 63 of Houeix's Counterclaim.

64. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 64 of Houeix's Counterclaim.

65. SCAD denies any and all allegations contained within Paragraph No. 65 of Houeix's Counterclaim.

66. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 66 of Houeix's Counterclaim.

67. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 67 of Houeix's Counterclaim.

## SECOND CLAIM

68. SCAD repeats and incorporates its answers to the allegation of paragraphs 26-60 of Houeix's Counterclaim as if fully set forth herein.

69. SCAD admits that the April 18, 2001 Employment Agreement was executed on or about April 18, 2001. SCAD further responds that the Employment Agreement speaks for itself. SCAD denies that the September 13, 2000 Agreement of Repayment is a part of the April 18, 2001 Employment Agreement. SCAD denies any and all remaining allegations contained within Paragraph No. 69 of Houeix's Counterclaim.

70. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 70 of Houeix's Counterclaim.

71. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 71 of Houeix's Counterclaim.

72. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 72 of Houeix's Counterclaim.

73. These allegations relate to an issue that has been dismissed by the Court and, thus, are not relevant to this action. Nonetheless, SCAD denies any and all allegations contained within Paragraph No. 73 of Houeix's Counterclaim.

74. SCAD denies any and all allegations contained within Paragraph No. 74 of Houeix's Counterclaim.

75. SCAD denies any and all allegations contained within Paragraph No. 75 of Houeix's Counterclaim.

### Request for Relief

Although no response is required to the prayer for relief set forth in Houeix's Counterclaim, SCAD states that there is no basis in law or equity for the relief requested therein. Except as expressly admitted herein, SCAD denies each and every allegation of Houeix's Counterclaim.

Wherefore, SCAD prays for the following relief on the basis of its Answer:

(a) That the Court enter judgment in favor of SCAD, awarding Houeix nothing;

(b) That the Court dismiss Houeix's Counterclaim with prejudice;

(c) That the Court enter judgment awarding SCAD its costs and reasonable attorneys' fees incurred in this suit; and

(d) That the Court grant such other and further relief as it deems just and appropriate under the circumstances.

Respectfully submitted, this 31st day of October 2003.

- 12 -

        /s/ Adele E. O'Conner by Rachel E. Burke (0066863)
Adele E. O'Conner, Trial Attorney (0023133)
Porter, Wright, Morris & Arthur LLP
Suite 2200
250 East Fifth Street
Cincinnati, Ohio 45202-5117
Phone: (513) 381-4700
Fax: (513) 421-0991

Of Counsel:

Stephen J. Butler, Esq. (0010401)
Theodore D. Lienesch, Esq. (0016542)
Thompson Hine LLP
312 Walnut Street
Cincinnati, OH 45202-4089
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771

David J. Stewart, Esq.
Patrick Elsevier, Esq.
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000

        Counsel for Plaintiff
SAVANNAH COLLEGE OF ART AND DESIGN, INC.

- 13 -

## CERTIFICATE OF SERVICE

This is to certify that the foregoing: Reply of Savannah College of Art and Design to Philippe Houeix's Counterclaim for Breach of Contract was served upon Defendant Philippe Houeix by causing true and correct copies thereof to be delivered by first class mail to Defendant's attorneys of record as follows:

John A. Rebel
McKinney & Namei
15 East 8th Street
Cincinnati, OH 45202

This 31st day of October 2003.

/s/ Rachel E. Burke