IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,

            Plaintiff,

    v.

PHILIPPE HOUEIX,

            Defendant.

CASE NO. C-1-02 490

Magistrate Judge Hogan

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
## ON DEFENDANT'S COUNTERCLAIMS

Defendant Philippe Houeix ("Houeix") asserted several counterclaims against Plaintiff

Savannah College of Art and Design, Inc. ("SCAD") in his original Answer and Counterclaims.

This Court dismissed most of Houeix's Counterclaims in an Order dated September 23, 2003.

Houeix's only remaining claims are that SCAD breached two Employment Agreements with him

by allegedly failing to provide him with instruction toward a master's degree in interior design.

SCAD now moves the Court for summary judgment on both of Houeix's counterclaims on the

grounds that Houeix has waived his right to assert the claims. In the alternative, SCAD moves

for partial summary judgment on the damages for which Houeix seeks recovery on his claims.

As set forth more fully in the accompanying Memorandum of Law, under Georgia Law,

when a party continues a contract in spite of a known breach, the party waives the breach and any

claim or defense thereupon is lost. Houeix does not dispute that he was aware of SCAD's

alleged breach at least as early as the fall quarter of 2000. Nevertheless, it is undisputed that

Houeix failed to complain or raise any issue with SCAD regarding the alleged breach during that

quarter or any of the subsequent three quarters. It is further undisputed that Houeix entered into a

new Employment Agreement with SCAD for the subsequent school year without giving any notice to SCAD of the alleged breach, and it is undisputed that Houeix thereafter unilaterally terminated the new Employment Agreement two days into the new school year without notice to SCAD of the alleged breach.  Throughout this period, Houeix continued to receive and accept his salary from SCAD.  By doing so, Houeix has waived any claim that SCAD breached the Employment Agreements by failing to provide instruction to him as a matter of undisputed fact and law.

In the event the Court determines that triable issues of fact remain regarding the merits of Houeix's Counterclaims, SCAD submits that it is entitled to partial summary judgment with respect to a number of different categories of damages that are plainly unrelated to Houeix's remaining claims but for which Houeix continues to seek recovery.  For these reasons and the reasons set forth more fully in the accompanying Memorandum of Law, SCAD respectfully requests that the Court grant this Motion.

Respectfully submitted this 31st day of March 2004.

By: /s/ David T. Croall_____
David T. Croall (0009149)
Rachel E. Burke (0066863)
Adele E. O'Conner (0023133)
Porter Wright Morris & Arthur LLP
250 East Fifth Street, Suite 2200
Cincinnati, Ohio 45202-5117
Telephone: (513) 381-4700
Facsimile: (513) 421-0991

Of Counsel:
Stephen J. Butler (0010401)
Theodore D. Lienesch, (0016542)
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771

Peter M. Degnan
David J. Stewart
Patrick Elsevier
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000

Counsel for Plaintiff
SAVANNAH COLLEGE OF ART AND
DESIGN, INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,

               Plaintiff,

     v.

PHILIPPE HOUEIX,

               Defendant.

CASE NO. C-1-02 490

Magistrate Judge Hogan

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
ON DEFENDANT'S COUNTERCLAIMS**

Following this Court's September 23 Order, the only remaining counterclaims of

Defendant Philippe Houeix ("Houeix") against Plaintiff Savannah College of Art and Design,

Inc. ("SCAD") are that SCAD breached Employment Agreements with Houeix for the 2000-

2001 and 2001-2002 school years by allegedly failing to provide him with master's level course

instruction.  (September 23 Order, at 4).  However, Houeix admits that he never raised the

alleged breaches with SCAD despite continuing to receive a salary from SCAD under the

agreements.  By failing to timely bring his claims to SCAD's attention while continuing to

receive benefits from SCAD, Houeix has waived his claims of breach as a matter of Georgia law.

SCAD is therefore entitled to summary judgment on Houeix's counterclaims.

In addition, Houeix continues to assert claims for damages that are unrelated to his

remaining claims.  Because these damages do not flow naturally from Houeix's remaining

claims, they are not recoverable under Georgia law.  Accordingly, should the Court deny

SCAD's motion for summary judgment on Houeix's counterclaims in their entirety, the Court should award SCAD summary judgment with respect to all of Houeix's damages claims.

## I.    UNDISPUTED FACTS

SCAD is one of the best-known and most widely respected institutions of higher learning devoted to art and design in the United States.  (See Declaration of Brian Murphy, attached hereto as Exhibit A, ("Murphy Decl," ¶ 3).  Since its founding in 1978, SCAD has offered high quality instruction at the college level in the fields of design, the visual and performing arts, the building arts, and the history of art and architecture.  (Murphy Decl, ¶ 4).

In the fall of 1998, SCAD advertised in Europe for an opening for a faculty position at the College.  (Murphy Decl, ¶ 5).  Houeix, a French citizen, responded to the advertisement and applied for a position in the Department of Interior Design.  (See Deposition of Philippe Houeix dated January 29, 2004 ("Houeix Depo"), the cited pages of which are attached hereto as Exhibit B, p. 37).  SCAD subsequently entered into four written contracts with Houeix:

1.    A contract dated February 8, 1999, pursuant to which SCAD retained Houeix as a part-time faculty member to teach during the summer quarter 1999;

2.    A one-year contract dated May 15, 1999, pursuant to which SCAD retained Houeix to teach during the 1999-2000 school year;

3.    A one-year contract dated August 16, 2000, pursuant to which SCAD retained Houeix to teach during the 2000-2001 school year (attached as Exhibit A to Houeix's proposed Amended Answer and Counterclaims); and

4.    A one-year contract dated April 18, 2001, pursuant to which SCAD retained Houeix to teach during the 2001-2002 school year  (attached as Exhibit B to Houeix's proposed Amended Answer and Counterclaims).

(Murphy Decl, ¶ 6).  Only the last two contracts are at issue in this case and are referred to collectively herein as the "Employment Agreements."  (*See* Defendant's Amended Answer and

Counterclaim for Breach of Contract with Jury Demand ("Amended Counterclaim"), ¶ 29). The Employment Agreements state that they are to be "construed and enforced under the laws of the State of Georgia." (*See* Amended Counterclaim, Exhibits A and B).

Houeix began teaching at SCAD during the summer quarter, which began in June of 1999. (Amended Counterclaim, ¶ 28). The principal accreditation body for the programs SCAD offers is the Southern Association of Colleges and Schools ("SACS"). (Murphy Decl, ¶ 7). In keeping with standards of accreditation, SCAD determined that it was prudent to review all faculty credentials as part of the institution's ongoing evaluation and assessment process. (Murphy Decl, ¶ 7). As a result of this review, SCAD discovered that Houeix's educational training in France was not the equivalent of a master's degree in the United States, but rather was the equivalent of an undergraduate degree. (Murphy Decl, ¶ 7). At the time of hiring Houeix, SCAD had understood that Houeix's educational background was the equivalent of a master's degree in the United States. (Murphy Decl, ¶ 7). As a result of this deficiency, SCAD required Houeix to enroll in a master's degree program in Interior Design to supplement his professional experience with additional academic work. (Murphy Decl, ¶ 7; *see also* Houeix Depo, p. 67). Although angry that he had to enroll in graduate classes, Houeix agreed to enroll in SCAD's masters degree program. (Houeix Depo, p. 86).

SCAD only expected Houeix to enroll in one class per quarter, however, Houeix insisted that he be allowed to enroll in an additional class per quarter so that he could complete the degree on an accelerated basis. (Murphy Decl, ¶ 7; *see also* Houeix Depo, pp. 75-76). SCAD agreed to Houeix's request that he be allowed to take two classes per quarter at no expense to Houeix provided that Houeix execute an Agreement of Repayment. (Murphy Decl, ¶ 7; *see also* Houeix Depo, pp. 78). The Agreement of Repayment provided, in pertinent part, that "[i]n consideration

- 3 -

for additional tuition waiver(s) for courses offered by the Savannah College of Art and Design,

… If [Houeix] chooses to leave the College's employment before the term of one year from the

date the degree is awarded, [Houeix] agrees to repay the College the tuition for classes taken to

achieve the terminal degree in Interior Design." (Amended Counterclaim, Exhibit D; *see also*

Houeix Depo, p. 78).

Although the Agreement of Repayment was not entered into at the same time as the

Employment Agreements, and although the Agreement of Repayment does not reference either

of the Employment Agreements, Houeix nonetheless asserts that the Agreement of Repayment is

a contract modification of the Employment Agreements.  (Amended Counterclaim, ¶ 29).

In light of the unique situation of a faculty member teaching courses and working on a

master's degree at the same time, it was necessary to make individual arrangements for Houeix

so that he could both fulfill his teaching requirements and continue to earn his master's degree.

(Murphy Decl, ¶ 8).  Accordingly, SCAD and Houeix agreed that an individualized program of

study should be created for Houeix wherein all of his classes would be in the form of a directed,

independent study format.  (Murphy Decl, ¶ 8).

Pursuant to this arrangement, Houeix enrolled as a student at SCAD for the fall quarter of

2000.  (Houeix Depo, p. 88).  Houeix admits that he met with the Chair of the Department of

Interior Design regarding what student work he needed to do as part of his master's courses, but

he contends that he never did any such work towards his master's degree.  (Amended

Counterclaim, ¶ 47).  SCAD disputes Houeix's assertion that he did not perform the necessary

work for his master's classes, and intends to disprove Houeix's assertions at trial, if necessary.

In any event, at the conclusion of the fall semester, SCAD issued grades to Houeix for his

classes.  Houeix admits that at no time either before or after receiving his grades did he complain

- 4 -

in any way to SCAD that he was not receiving classroom or other instruction.  (Houeix Depo, pp. 102-103, 132-134).  In fact, following the fall 2000 quarter, Houeix continued, without complaint, to enroll in classes towards his master's degree in the winter, spring, and summer quarters.  (Murphy Decl, ¶ 9; *see also* Amended Counterclaim, ¶ 48-49; *see also* Houeix Depo, pp. 102-103, 132-134).  Houeix received grades for work performed during each of these quarters as well; yet he admits that he made no complaint of any kind to SCAD that he did not receive instruction from SCAD during these quarters.  (Houeix Depo, pp. 102-103, 132-134)  He also admits that he was aware of SCAD's formal and well-publicized grievance policy and that he made no attempt to file a grievance with SCAD regarding his alleged lack of instruction. (Houeix Depo, pp. 132-134.)

In September 2001, Houeix's wife obtained a teaching position at the University of Cincinnati.  Unbeknownst to SCAD, Houeix and his family moved to Cincinnati the first of September.  (Houeix Depo, pp. 22, 24).  Classes started at SCAD on September 12, 2001. (Houeix Depo, p. 24).  After teaching classes at SCAD on September 12th and 14th, Houeix abruptly quit his employment at SCAD by mailing a letter of resignation to SCAD from Cincinnati, an action that inflicted substantial hardship on the students and faculty of the interior design program and that was in direct violation of his Employment Agreement with SCAD. (Houeix Depo, p.24; *see also* Complaint, ¶ 24; Murphy Decl, ¶ 10).  Accordingly, SCAD filed a Complaint against Houeix to recover the damages it suffered as a result of Houeix's breach of his Employment Agreement, among other relief.  (*See* Complaint filed July 5, 2002, ¶¶ 47-51).

Houeix responded to SCAD's Complaint by filing a Counterclaim against SCAD alleging that SCAD had breached the Employment Agreements.  Defendant premised his claim on three theories.  First, Houeix alleged that SCAD breached the Employment Agreements by failing to

provide instruction in the master degree courses for which he was *allegedly* charged.[1]  (Amended Counterclaim, ¶¶ 63, 70).  Second, Houeix alleged that SCAD breached the Employment Agreements by allegedly giving Houeix fake grades for classes he allegedly did not attend, and that this alleged activity by SCAD violated a Georgia penal statute, O.C.G.A. § 20-1-17, in breach of implied covenants of good faith and fair dealing under Georgia Law. (Amended Counterclaim, ¶¶ 63-64, 66, 70-74).  Third, Houeix claimed the alleged fraudulent grading process violated provisions of honesty contained in SCAD's "Faculty Handbook" in breach of the Employment Agreements.  (Amended Counterclaim, ¶¶ 62-63, 69-70).

On June 13, 2003, SCAD moved to dismiss Houeix's counterclaims for failure to state claims upon which relief can be granted.  In an Order dated September 23, 2003, this Court granted SCAD's motion to dismiss as to the second and third bases for Houeix's claims. (September 23 Order, at 5-6).  However, the Court held that it could not conclude at the motion to dismiss stage that Houeix could prove no set of facts in support of his theory that SCAD breached the Employment Agreements by failing to provide Houeix class instruction towards a master's degree.  (September 23 Order, at 4).  In reaching its decision, this Court noted that Houeix's counterclaim alleges that his employment contract with SCAD encompasses not only the specific Employment Agreements with SCAD, but also the Agreement of Repayment. (September 23 Order, at 4).  Accordingly, this Court denied SCAD's motion to dismiss Houeix's Counterclaim as to this claim.

Following the Court's September 23 Order, SCAD served discovery on Houeix to determine what damages Houeix alleges he suffered as a result of the alleged breaches of the

---

[1]    Houeix admitted in his deposition that he has not paid anything to SCAD for any of the master's courses. (Houeix Depo, p. 78).

Employment Agreements by SCAD.  In response to SCAD's Interrogatory No. 3, which requests that Houeix identify with specificity each item of damage that he claims to have suffered as a result of SCAD's alleged breaches of the Employment Agreements, Houeix responded as follows[2]:

> *Defendant's damages are the agreed compensation for 2001-2002 school year of about $39,000.00 plus the probable summer quarter salary of $4,800. Defendant's damages include a reduced professional reputation by participation in thee fraudulent scheme that violates Georgia law, OCGA § 20-1-7. Defendant's ability to obtain employment as an instructor have been reduced. Damages are in the amount of $l00,000.00.*
>
> *Plaintiff withdrew $1,215.48 from Defendant's bank account on September 17, 2001.*
>
> *Plaintiff was enriched by its breach since its accreditation status was enhanced by the fraudulent grading scheme. The value of the enrichment is $100,000.00.*
>
> Defendant was obligated to sign the September 13, 2000 Agreement of Repayment for courses that were not attended or not taught. Plaintiff promised to waive tuition, page III.25 (Faculty Handbook) for one course per quarter.  Plaintiff is obligated to provide instruction for courses for which tuition is waived or charged to Defendant.  Plaintiff failed to perform the contract by failing to provide the instruction for the master program classes. These damages amount to $16,500.
>
> *The fraudulent scheme was to create academic grades and credits for master courses and examinations that were never taken, for classes that were never attended, or never existed. The scheme misrepresents to the college accreditation association, SACS, that Plaintiff s master degree program for its instructors meets accreditation standards. Master degrees that were awarded under such scheme enhanced Plaintiffs accreditation.  Plaintiff was enriched by its breach since its accreditation status was enhanced by the fraudulent grading scheme. The value of the enrichment was $100,000.00.*

---

[2]    As can be seen from the text of the interrogatory responses themselves, most of the items of damage for which Houeix continues to seek recovery relate only to counterclaims that the Court dismissed in its September 23 Order.  For the Court's convenience, SCAD has highlighted these responses in italics.  SCAD moves herein for summary judgment in the alternative on each of the highlighted items of damage.

(Houeix's Answer to Plaintiff's SCAD's First Set of Interrogatories to Defendant Philippe

Houeix ("Houeix's Answer to First Interrogatories"), attached hereto as Exhibit C, Answer No. 3

(emphasis added)).  Furthermore, in response to SCAD's Interrogatory No. 4, which requested

that Houeix state the factual basis for each item of damage identified in response to Interrogatory

No. 3, Houeix stated:

> *The agreed compensation for the school year was $39,000.00 plus the compensation for teaching summer classes ($4,800.00). The basis of this are the Employment Agreement (April l8, 2001) term 2.A and prior compensation for summer teaching.*
>
> *The damages for loss of professional reputation are assessed at $100,000.00, since Defendant will necessarily disclose to an educational institution or other potential employer, that the course transcript from Plaintiff was fraudulent and that he was a participant in the scheme. This affects Defendant's ability to obtain employment as an instructor. The scheme is in violation of OCGA § 20-1-7. The basis is the experience and knowledge of the trier of fact.*
>
> *Perhaps an expert will testify Plaintiff was enriched by the fraudulent grading scheme since its accreditation was enhanced by its breach.*

(Houeix's Answer to First Interrogatories, Answer No. 4 (emphasis added)).

## II.    ARGUMENT

Summary judgment is appropriate where there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c); *Celotex v. Catrett*, 477

U.S. 317, 325 (1986).  Once the movant establishes that no material issue of fact exists,

"[s]ummary judgment must be entered 'against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will

bear the burden of proof at trial.'"  *Antioch Co. v. Western Trimming Corp.,* 196 F. Supp. 2d 635,

636 (S.D. Ohio 2002), aff'd 347 F.3d 150 (6th Cir. 2003) (citations omitted).  "It is not sufficient

to 'simply show that there is some metaphysical doubt as to the material facts.'"  *Id.* at 637

- 8 -

(citations omitted).  "Rather, Rule 56(e) 'requires the nonmoving party to go beyond the [unverified] pleadings' and present some type of evidentiary material in support of its position." *Id.*

**A.     Houeix Has Waived His Breach Of Contract Claims.**

Even if everything Houeix alleges in his Counterclaims regarding SCAD's alleged failure to provide him with master's level course instruction is true, Houeix has waived those claims as a matter of undisputed fact and law.  Under Georgia Law, when a contract is continued in spite of a known breach, there is a waiver of the breach and any claim or defense thereupon is lost, and the injured party is himself liable if he subsequently fails to perform.  *See, e.g., Southern Sav. Bank v. Dickey*, 199 S.E. 546, 549 (Ga. Ct. App. 1938) ("[W]hen the defendant breached or changed the contract and departed from its terms, and this was acquiesced in and accepted by the plaintiff by his continuing to work and receive pay therefor, without objection of protest, he is now bound thereby, and cannot be heard to complain."); *Luke v. McGuire Ins. Agency of Ga.*, Inc., 212 S.E.2d 889, 892 (Ga. Ct. App. 1975) (same); *Cartwright v. Bartholomew*, 64 S.E.2d 323, 326 (Ga. Ct. App. 1951) ("Where a contract is entire and one party thereto breaches the same, the other party may usually treat the contract as rescinded and be absolved from further performance, but he cannot do so after waiver of his right by continuing to accept benefits arising under the contract after knowledge of its breach."); *Nguyen v. Talisman Roswell, LLC*, 585 S.E.2d 911, 913 (Ga. Ct. App. 2003) ("When a contract 'is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform'").  "A waiver of rights under a contract may be express or implied from acts or conduct." *James v. Mitchell*, 285 S.E.2d 222, 224 (Ga. Ct. App. 1981).

As set forth above, it is undisputed that Houeix never raised his alleged breach of contract claim with anyone at SCAD at any time prior to his unexpected and unilateral termination of the 2001-2002 Employment Agreement. (Murphy Decl, ¶¶ 9, 10; *see also* Houeix Depo, pp. 102-103, 132-134). Houeix admits that he did not complain to SCAD upon receiving his grades for the fall quarter of 2000. (Houeix Depo, pp. 102-103, 132-134). Houeix had a legal obligation at that point to either object or to continue to receive the benefits of the 2000-2001 Employment Agreement. *See, e.g., Luke*, 212 S.E.2d at 892. It is undisputed that Houeix not only did not object following the fall 2000 quarter but that he continued, without complaint, to enroll in classes in the winter, spring, and summer quarters and continued to receive grades for coursework completed during those quarters. (Murphy Decl, ¶ 9; *see also* Amended Counterclaim, ¶ 48-49; Houeix Depo, pp. 102-103, 132-134). It is also undisputed that Houeix continued to teach at SCAD and received full compensation from SCAD for all amounts due him under the 2000-2001 Employment Agreement. (Murphy Decl, ¶ 9; Houeix Depo, pp. 123-126).

Houeix then entered into a *new* agreement with SCAD for the 2001-2002 school year and enrolled in new classes without lodging any complaint about his failure to receive course instruction. (Murphy Decl, ¶ 9). All of this took place despite the fact that Houeix was fully aware of SCAD's extensive faculty and <u>student</u> grievance process of which Houeix could easily have availed himself.[3] (Murphy Decl, ¶ 10; Houeix Depo, pp. 132-134). It was only some time after Houeix sent SCAD his letter of resignation that the College became aware that Houeix contended that he was given credit for work he alleges he did not perform. (Murphy Decl, ¶ 10).

---

[3]       The proper procedure to resolve such a complaint would have been for Houeix to file a "student complaint," which would have been immediately reviewed and addressed by the institution. (Murphy Decl, ¶ 10).

Having continued to accept the benefits of the 2000-2001 Employment Agreement, having received pay for teaching in the summer of 2001, and having entered into the 2001-2002 Employment Agreement without ever complaining or raising the issue, Houeix waived any claims that he may have had that SCAD breached the Employment Agreements by failing to provide classroom instruction to him. *See, e.g., James*, 285 S.E.2d at 223-224 (affirming trial court's award of summary judgment to plaintiff on defendant's counterclaim for breach of contract); *Nguyen*, 585 S.E.2d at 913 (affirming trail court's award of summary judgment to defendant on plaintiff's breach of contract claim). SCAD is therefore entitled to summary judgment on Houeix's breach of contract claims as a matter of law.

**B.      SCAD Is Entitled To Partial Summary Judgment On Certain of Houeix's Damage Claims.**

In the event the Court denies SCAD's Motion for Summary Judgment on the basis of waiver, SCAD submits that it is entitled to summary judgment on the damages for which Houeix seeks recovery. As set forth above, Houeix continues to assert that he is entitled to the following damages, despite the Court's denial of his breach of contract claims that were premised on an alleged fraudulent grading scheme in the Court's September 23 Order:

- $100,000.00 as compensation for Houeix's alleged "reduced professional reputation by participation in the fraudulent scheme that violates of Georgia law, O.C.G.A. § 20-1-7;"

- $100,000.00, the value that Plaintiff was allegedly "enriched by its breach since its accreditation status was enhanced by the fraudulent grading scheme;"

- $39,000.00, "the agreed compensation for 2001-2002 school year;"

- $4,800, "the probable summer quarter salary;" and

- $1,215.48, the amount of Houeix's last paycheck that SCAD withdrew from Defendant's bank account on September 17, 2001.

(*See* Houeix's Answer to First Interrogatories, Answer No. 3).

- 11 -

With respect to first two damage claims above, which are based on alleged injuries to Houeix's reputation or alleged enhancement of SCAD's reputation, SCAD is entitled to summary judgment on those claims for at least three independent reasons.  First, as a matter of Georgia law, damages for injury to professional  reputation are not recoverable in a breach of contract action. *See, e.g., Bigelow-Sanford Carpet Co. v. Goordroe*, 106 S.E.2d 45, 51 (Ga. Ct. App. 1958) (holding Plaintiff was not entitled to recover for the alleged grievous injury to its reputation caused by its supplier's alleged breach of a supply contract); *Cf. Hamilton v. Powell, Goldstein, Frazer & Murphy*, 306 S.E.2d 340, 344 (Ga. Ct. App. 1983), *aff'd*, 311 S.E.2d 818 (Ga. 1984) ("In regard to [plaintiff's] claim for general damages for injury to his reputation, …damages for this type of personal injury are recoverable only in actions alleging intentional or wanton misconduct, for example, libel and slander, malicious prosecution, or malicious arrest.").

Georgia law on this issue is consistent with the law in other states.  *See, e.g., Wilder v. Cody County Chamber of Commerce,* 933 P.2d 1098,1105 (Wyo. 1997) ("The district court properly ruled as a matter of law that [Plaintiff's] business reputation damages were not proper under a breach of contract/promissory estoppel theory."); *Stancil v. Mergenthaler Linotype Co.*, 589 F. Supp. 78, 84 (D. Haw. 1984) ("[D]amages for injury to reputation are not properly awarded in a breach of contract suit."); *McCone v. New England Tel. & Tel. Co.,* 471 N.E.2d 47, 50 n.8 (Mass. 1984) ("[Damage to professional reputations] … are not contract damages."); *O'Leary v. Sterling Extruder Corp.*, 533 F. Supp. 1205, 1209 (E.D. Wis. 1982) ("The courts seem to be in general agreement that damages for injury to reputation are not properly awardable in a breach of contract action."); *O'Neil v. Spillane*, 119 Cal. Rptr. 245, 254 (Cal. Ct. App. 1975) (noting "invariable rule pronounced by a legion of cases that damages are not recoverable for mental suffering or injury to reputation resulting from breach of contract."); *Skagway City Sch.*

*Bd. v. Davis*, 543 P.2d 218, 225-27 (Ala. 1975) (holding plaintiff is not entitled to recover damages for injury to his reputation and for decreased future earning capacity resulting from breach of employment contract) (overruled on other grounds); *Volkswagen Interamericana, S.A. v. Rohlsen*, 360 F.2d 437, 446 (1st Cir. 1966) (applying federal law); *Tousley v. Atl. City Ambassador Hotel Corp.*, 50 A.2d 472, 474-75 (N.J. Sup. Ct. 1947) (holding damages to reputation are not clearly ascertainable and were not in the contemplation of the parties at the time of making the contract).

Second, Houeix's reputational based claims are not recoverable under Georgia law because they did not arise from SCAD's alleged failure to provide course instruction to Houeix. Under Georgia law, to be recoverable under a breach of contract theory, damages must "arise naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of its breach." O.C.G.A. § 13-6-2. None of the above damages arise naturally from the alleged failure by SCAD to provide classroom instruction to Houeix as a matter of undisputed fact and law. If they arise under any claim Houeix asserted, they arise only under the claims that this Court has already dismissed. Accordingly, SCAD is entitled to a partial summary judgment with respect to these claims for damages by Houeix.

Last, but by no means least, SCAD is entitled to summary judgment on Houeix's reputational based claims because Houeix has introduced no evidence of any kind that this reputation has been damaged or that SCAD's reputation has been burnished by the alleged "grading scheme" about which Houeix complains. In fact, Houeix admitted in his deposition that his reputation in Europe is good and that he does not even have a reputation as a designer or a professor in the United States. (Houeix Depo, pp. 174-176). What's more, Houeix testified that

he has not been turned down for any jobs based on anything that happened at SCAD.  (Houeix Depo, pp. 14-22, 177-178).

The burden is on the plaintiff in a breach of contract action to provide evidence so as to allow the trier of fact "'to estimate with reasonable certainty the amount of damages.'" *Turner v. Connor*, 385 S.E.2d 19, 20 (Ga. Ct. App. 1989).  "'It cannot be left to speculation, conjecture, and guesswork.'"  *Id.*  Furthermore, under Georgia law, "[r]emote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract or unless they are capable of exact computation, such as the profits which are the immediate fruit of the contract, and are independent of any collateral enterprise entered into in contemplation of the contract." O.C.G.A. § 13-6-8.  Because there is no evidence in the record from which a jury could affix any dollar amount to Houeix's reputational based claims, the claims are too remote and speculative to be compensable under a breach of contract claim as a matter of Georgia law, and SCAD is therefore, entitled to summary judgment.  *See, e.g., Hip Pocket, Inc. v. Levi Strauss & Co.*, 242 S.E.2d 305, 307 (Ga. Ct. App. 1978) (affirming summary judgment for the defendant where "[t]here is nothing in the record to indicate the extent of plaintiff's alleged damages other than … speculation.") *Excavation +, Inc., v. Candler*, 352; 433 S.E.2d 340, 341 (Ga. Ct. App. 1993) ("'Since there is nothing in the record to indicate the extent of appellant's alleged damages for lost profits other than appellant's speculation as to the amount, appellant's [claim] for damages was remote and speculative and the trial court properly granted summary judgment to appellees.'") (citations omitted); *Hearn v. Old Dominion Freight Lines*, 660, 324 S.E.2d 517, 518 (Ga. Ct. App. 1984) (same).  The elements of a right to recover for a breach of contract under Georgia law are breach and the resulting damages to the party who has a right to complain about the contract being broken.  *Budget Rent-A-Car of Atlanta, Inc. v. Webb*, 469 S.E.2d 712,

- 14 -

713 (Ga. Ct. App. 1996); *see also Smith v. Geiger*, 456 S.E.2d 636, 637 (Ga. Ct. App. 1995) ("To recover in a suit on a contract, the complaining party must establish both a breach of the contract and resulting damages.") (citations omitted).

Likewise, the other damages that Houeix asserts that he is entitled to recover, apart from the value of the classes themselves, are not recoverable under Georgia law because (1) they do not arise naturally from Houeix's remaining claims; and (2) because it is undisputed that Houeix did not perform under the 2001-2002 contract, and therefore he is not entitled to any salary thereunder.

Houeix asserts that he is entitled to "the agreed compensation for 2001-2002 school year of about $39,000.00 plus the probable summer quarter salary of $4,800," and the deposit amount of Houeix's final paycheck that SCAD cancelled on September 17, 2001. However, these amounts do not flow naturally from SCAD's alleged failure to provide class instruction to SCAD, and as such are not recoverable under Georgia law. O.C.G.A. § 13-6-2. In other words, SCAD's alleged failure to provide classroom instruction to SCAD did not prevent him from working as a professor at SCAD, as had been shown by his teaching during the prior four quarters.

Second, the salary set forth in the 2001-2002 Employment Agreement was clearly compensation for classes that Houeix was to teach. It is undisputed that Houeix unilaterally quit SCAD two days into the 2001-2002 school year, and that Houeix, therefore, did not teach the classes as required under the contract. He therefore is not entitled to receive a salary for the work.

As to the summer quarter of 2002, the 2001-2002 Employment Agreement by its very terms states that the term of employment will only "be extended through the Summer Quarter

2002 in the event that the College assigns the Employee to teach one or more summer classes and the Employee accepts such assignment." Thus, "the probable summer quarter salary of $4,800" sought by Houeix was not guaranteed under the contract. As such, Houeix is not entitled to an award of this salary the clear terms of the contract itself. None of the damages for which Houeix seeks recovery, other than potentially the value of the alleged untaught classes themselves, is therefore properly recoverable as a matter of law.

Finally, Houeix is not entitled even to the value of the allegedly untaught classes. Houeix testified at his deposition that, shortly before his resignation from SCAD, he received the French equivalent of a master's degree in interior design from the appropriate French educational authority. (Houeix Depo, pp. 19-20, 69-70). He did not attend any additional classes to earn such degree. Rather, the French accreditation agency evaluated Houeix's prior education, professional experience, and body of work and awarded him the degree in mid-2001. *Id.* Given that Houeix was able to receive a master's degree without attending any additional classes and that Houeix testified at his deposition that he did not want to, or believe that he should have been required to, take master's level courses, he has suffered no damages whatsoever from SCAD's alleged failure to provide him with classroom instruction and his request for damages must therefore be denied as a matter of law. (Houeix Depo, pp. 19-20, 69-70, 86, 111-12).

## IV.    CONCLUSION

For the reasons set forth above, there are no genuine issues of material fact to be resolved in this matter, and SCAD is entitled to summary judgment against Houeix with respect to his remaining claims. In the alternative, SCAD moves the Court to award summary judgment in its favor and against Houeix with respect to all of Houeix's claims for damages.

Respectfully submitted this 31st day of March 2004.

By: /s/ David T. Croall
    David T. Croall (0009149)
    Rachel E. Burke (0066863)
    Adele E. O'Conner (0023133)
    Porter Wright Morris & Arthur LLP
    250 East Fifth Street, Suite 2200
    Cincinnati, Ohio 45202-5117
    Telephone: (513) 381-4700
    Facsimile: (513) 421-0991

Of Counsel:
Stephen J. Butler (0010401)
Theodore D. Lienesch (0016542)
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771

Peter M. Degnan
David J. Stewart
Patrick Elsevier
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000

Counsel for Plaintiff
SAVANNAH COLLEGE OF ART AND
DESIGN, INC.

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing Plaintiff's Motion for Summary Judgment

on Defendant's Counterclaims was electronically served upon John A. Rebel, Esq., McKinney &

Namei, 15 East Eighth Street, Cincinnati, OH 45202, this 31st day of March, 2004.

/s/ David T. Croall
David T. Croall

ATL01/11628255v2

- 17 -