# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | | |
|---|---|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., | : | CASE No. ___C-1-02-490___ | |
| | : | | |
| Plaintiff, | : | Judge Beckwith | |
| | : | | |
| vs. | : | Magistrate Hogan | |
| | : | | |
| PHILIPPE HOUEIX, | : | **DEFENDANT'S RESPONSE TO** | |
| | : | **PLAINTIFF'S MOTION FOR** | |
| Defendant. | : | **SUMMARY JUDGMENT ON** | |
| | | **DEFENDANT'S COUNTERCLAIMS** | |

## SUMMARY

The subject of Plaintiff's motion are three agreements: the August 16, 2000 Employment Agreement, the September 13, 2000 Tuition Repayment Agreement, and the April 18, 2001 Employment Agreement. (respectively Exhibits A, B & D, Amnd. Ans. & Counterclaim) The obligations of the Faculty Handbook ( Exhibit C. Amnd. Ans. & Counterclaim) are incorporated into the Employment Agreements. A good faith covenant is implied by Georgia law.

This court has concluded that Defendant has no private claim arising from the violation of a Georgia penal section OGCA § 20-1-7. Further it concluded that the Faculty Handbook does not give rise to a duty of honesty in Plaintiff with regard to grading, and grade recordation.(Order, 9/23/03)

This court has not precluded Defendant from his counter claim for breach of the implied covenant, that Plaintiff act in good faith when requiring Defendant to do acts other than teaching. In this case the good faith covenant applies to the enrollment in the masters degree program and the Repayment Agreement. Good faith is implied with the enrollment requirement whether it is treated

1

as an explicit contract term, a condition precedent or as additional consideration.  Here the College

not only required Defendant's involvement in a fraudulent grading scheme; but it failed to provide

educational services or instruction. The College failed to require Defendant to produce art or to

design projects that would advance his knowledge of a given subject, while charging him for

services. Plaintiff-College changed Defendant's grades to "A"'s. Plaintiff charged the Defendant

for the courses.

      The Faculty Handbook promises the instructor a tuition waiver benefit. The Tuition

Repayment Agreement modifies the tuition waiver benefit and sets damages for Defendant's not

renewing an employment contract after the award of the Masters degree.

      Defendant's employment  during the summer of 2001 is  an extension of the August 16,

2000.[1] The term of the first Employment Agreement is from August 16, 2000 to the end of August

2001. The term of the second agreement begins on  April 18, 2001. The breaches of contract

occurred at various times from September 2000 to August 2001, for failure to provide educational

services and for fraudulent grades.

      Defendant's Affidavit Contra to Plaintiff's Motion for Summary Judgment on Defendant's

Counterclaim (herein "H. Afvd.") and his deposition (herein "H. Depos.") verify his total lack of

involvement with the masters courses. Attached to Defendant's Affidavit are grade change forms

for several courses that were initially incomplete. There is one e-mail from Tracy Crow commenting

on the grade change to "A". Excerpted pages from Defendant's deposition are attached hereto.

      Defendant, as an immigrant with a J-1 Visa, could not freely leave the College until

---

[1]  "The term of employment will be extended through the end of the Summer Quarter
2001 in the event the College assigns the Employee to teach summer classes" *Employment
Agreement*, 8/16/2000, pg 4. at *3.Term of Employment*.

September 2001. If he did not maintain his employment with the College, he would lose his J-1 Visa. Consequently, he and his family would be deported. Defendant believed that he would be fired upon complaining about the grading scheme, since he had witnessed the arbitrary terminations of his wife, and two colleagues in his department. Defendant's Affidavit and deposition evidence his motive for not complaining directly to the College administration and for not quitting the College earlier. Defendant did complain to numerous public agencies during June 2001 about the fraudulent grading scheme, including the   Southern Association of Colleges and Schools (SACS) the accreditation agency for the College.

Georgia law dealing with waiver is that the intent to waiver a breach may be implied by a party's conduct. But if the conduct also evidences some other intention, waiver is not implied by law.  Here retaining an immigration status and remaining in the U.S. was Defendant's  sole intent. Georgia law requires that a jury determine if a waiver of the breach is present.

Defendant received no compensation under the April 2001 Employment Contract.  Between the end of summer 2001 quarter and the beginning of the new school years, Defendant received the grades for the three summer masters courses that did not exist, and for which he was charged.

Defendant's lost earnings due to the breach of Plaintiff are, at least,  $ 32,948.00 under the April 2001 contract.

Defendant's loss as to the failure to provide educational services under the tuition waiver for one course per quarter for four quarters is $ 7,400.  under the August 2000 contract.

On September 17, 2001 a few days after Defendant departure from the College, Plaintiff seized $ 1,215  from Defendant's bank account which was the final payment under the August 2000 contract for the summer quarter of 2001.

## FACTS

Defendant was awarded academic credits (eight A's) for courses that he did not attend or that did not exist. (H. Afvd. ¶ 3.)  Defendant did no student work whatsoever, nor did he take any exams for these courses. (H. Afvd. ¶ 5, ¶ 13.) (H. Depos. pp. 66-89, 98-99) There was no agreement that he do independent studies without class attendance. There were no independent studies.(H. Afvd. ¶ 4.) The College did not require Defendant to produce any art or design projects whatsoever, as a masters degree student. The College course instructors never discussed any projects that should be produced for a given course by Defendant. Not one of Plaintiff's instructors critiqued any design project of Defendant, especially an instructor for a course in which he was awarded a grade.  There were no discussions about independent studies, or work to be done as substitution for class instruction.(H. Afvd. ¶ 5, ¶ 13)  After October 2000,Defendant's only question was: which classes do I enroll in. There was absolutely no communications with any instructor as to course content.

During the fall 2000 he went to the Chair of the Interior Design Department with his idea to design the interior of a vacant College building. He requested the floor plan. The Chair told him to "not sweat the project" and "to concentrate on his teaching". (H. Afvd. ¶ 12,) (H. Depos. pp. 98-101) He worked on no art or scholastic projects whatsoever as a master student.

The good faith covenant was breached by the College not providing course instruction or other educational services during the summer of 2001. This  breached of the good faith covenant within  the April 2001 Employment Agreement excused Defendant's performance under the April 2001 contract. Consequently, he was not obligated to teach during September 2001. Defendant did not waive the breach of contract, since he did not accept any benefits under the April 2001 Employment Agreement. Defendant did not waive the breaches after November 2000, since his

4

intent was not to waive, but to retain his and his family's immigration status. (H. Afvd. ¶ 6, ¶ 7.) (H. Depos. pp. 71, 82-84, 102, 158) When his wife obtained an immigration H1B status during September 2001, he quit the College.

The damages for the failure to provide education services is under the Employment Agreement dated August 16, 2000. This agreement incorporates the Faculty Handbook by reference:

> **"Employment Agreement:** This document together with the 2000-2001 Faculty Handbook which is incorporated herein by specific reference." (Exhibit A, pg 1, Amnd. Ans. & Ccl.)

The tuition waiver states:

> **"Tuition Waiver** Faculty or their spouses may take one class per quarter tuition free. Dependent children may receive a full tuition waiver." (Faculty Handbook, Exhibit E, p. III.25 attached to Defendant's Response to Motion to Dismiss)

### Georgia Law - Implied Good Faith

Georgia law implies a good faith covenant, with an unilateral exercise of discretion[2], such as the College's requirement that Defendant enroll in the master's program, and its Repayment Agreement and Tuition Waiver. The Employment Agreements do not grant discretion to Plaintiff to act dishonestly with grades, nor to fail to provide education services and instruction for tuition waiver courses.

---

[2]    "The covenant of good faith and fair dealing is implied to an exercise of contractual discretion." *Burger King v. Agad*, 941 F. Supp. 1217, 1221 (N. D. Ga., 1996); citing *Burger King v. Austin*, 805 F. Supp. 1007 (S.D. Fla. 1992); ""[W]here an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied . [A] breach of such obligation would be a breach of an implied promise". *Kleiner v. First Nat'l Bank* 581 F.Supp. 955, 960 (ND GA 1984) citing *Crooks v. Chapman Co.*, 124 Ga. App. 718, 719-20, 185 S.E.2d 787 (1971).

In Georgia the basis for the implied covenant is both common law[3] and statute.[4] The good faith covenant may modify explicit terms of a contract,[5] or a condition precedent.[6] Even though there is no express contract term requiring Plaintiff to provide educational services and instruction , one will be implied through good faith.[7]

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." [8] Meanings of "good faith" include "honesty in fact in the

---

[3]   *Stuart Enterpr. Intl. V. Peykan*, 252 Ga. App. 231,234; 555 S.E.2d 881, 884, (2001);See *Brack v. Brownlee*, 246 Ga. 818, 820, 273 S.E.2d 390 (1980); *Smithloff v. Benson*, 173 Ga. App. 870, 872-873 , 328 S.E.2d 759 (1985); *JacksonElectric v. Georgia Power,* 257 Ga. 772, 774; 364 S.E.2d 556 (1988); *West v. Koufman*, 295 Ga. 505, 506; 384 S.E.2d 664,666 (1989).

[4]   O.C.G.A.§ 11-1-203 and § 13-4-20;  *Flynn v. Gold Kist, Inc.*, 181 Ga. App. 637, 638-639; 353 S.E.2d 537 (1987)

[5]   The Georgia Supreme Court has held that the good faith covenant applied for a termination of an at-will contract, because the contract did not expressly provide for the retention of all assets by one party after the termination. See *Wilensky v. Blalock*, 262 Ga. 95, 98, 99 (1992) where the Georgia Supreme Court did not apply *Automatic Sprinkler*. ""The 'covenant' [to perform in good faith] is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure." ... "The implied covenant of good faith modifies, and becomes part of, the provisions of the contract itself. As such, the covenant is not independent of the contract". *Stuart Enterpr, supra,* citing  *Alan's of Atlanta, Inc. v. Minolta Corp*., 903 F.2d 1414, 1429 (IV) (11th Cir. 1990).

[6]   *Merritt v. State Farm Mutual Auto. Ins. Co.* 247 Ga. App. 442, 447; 544 S.E.2d 180, 185 (2000); *Pacific Grove Holding v. Hardy* 243 Ga. App.161, 166; 532 S.E.2d 710, 715 (2000).

[7]   *Kleiner v. First Nat'l Bank* 581 F.Supp. 955, 960 (ND GA 1984) at footnote 5."Good faith" is a shorter way of saying 'substantial compliance with the spirit, and not the letter only, of the contract." Restatement of Law, Second, Contracts, § 205*, Comment d* notes that "evasion of the spirit of the bargain" and "abuse of a power to specify terms" have been judicially recognized as examples of bad faith in the performance of contracts." "Good faith in contracting is the obligation to preserve the spirit of the bargain rather than the letter, the adherence to substance rather than form."

[8]   Restatement 2d  Contracts, § 205.

conduct or transaction concerned." Good faith "emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving 'bad faith' because they violate community standards of decency, fairness or reasonableness."[9]

The Georgia community standard for grade recordation is at OGCA § 20-1-7, it prohibits the intentional award of academic credit to student-instructors for courses that were never held or never attended. Its violation does not give rise to a private cause of action. Rather it shows bad faith to Defendant and the resultant breach of contract.

The non-occurrence of good faith and honesty were intolerable. Houeix departed the College, at his first opportunity. The College breached the April 18, 2001 contract after its signing, during the summer, so that Houeix was not obligated to perform in the fall.[10]

### College's Breach

Defendant's 2001 summer midterm grades and the final grades are falsified. There was no education services or instruction provided to Defendant during the summer quarter.(H. Afvd. ¶ 15) It is a breach of the April 2001 Employment Agreement, since it occurred after April 18, 2001.  The College knew or should have known of this breach. Defendant taught two days, but was not obligated to do so. It is clear that the College breached the April 18, 2001 contract several month prior to Houeix' abrupt departure. The College's breaches of good faith and the honesty provisions are of a continuing nature and persist to the present time. The falsified grades are still a part of the College's records. Pertinent provisions of the contracts follow.

---

[9]    Restatement 2d  Contracts, § 205, at *Comment a.*

[10]    *Infra* at page 15, Rest. 2d Contract §§ 237 & 225 discussed.

**Tuition Waiver** Faculty or their spouses may take one class per quarter tuition free. Dependent children may receive a full tuition waiver. (Faculty Handbook, Exhibit E, p. III.25 attached to Defendant's Response to Motion to Dismiss)

**"Employment Agreement:** This document together with the 2000-2001 Faculty Handbook which is incorporated herein by specific reference."
"In consideration of the benefits and obligations contained in the Employment Agreement, the College and Employee agree as follows:"
**1. Appointment** "The Employee acknowledges and agrees that the College may reassign or appoint the Employee to a teaching or non-teaching position.."  (Counterclaim Defendant's Exhibit A & B page 1)

**4. Service to the College.** ...The College in its discretion may assign the Employee to a teaching or non-teaching position...."(Counterclaim Defendant's Exhibit A & B page 4)

**5. Miscellaneous.** This Employment Agreement shall be construed and enforced under the laws of the State of Georgia . . . Headings in this Employment Agreement and 2000-2001 Faculty Handbook are for convenience only and shall not be used to interpret or construe its provisions. In the event of a conflict between anything stated in this document, and anything contained in the Faculty Handbook, or another stated policy or rule issued by the College, the terms of this document (signed portion) shall control.(Counterclaim Defendant's Exhibit A page 6 & B page 5)

In any event, the breach ended Houeix duty to perform. Houeix as the injured party, has the right under general contract law "to suspend his own performance and ultimately to refuse it" and, if the College's nonperformance of the good faith covenant "is not justified, to claim damages for total breach of contract."[11] The College's performance is a condition for the remaining duties of Houeix under the contract.[12]  Under Restatement 2d Contracts § 225 failure of the College to perform

_____

[11]    See Restatement 2d Contracts Introduction to Chap 10 - Performance and Non-Performance. § 243 enumerates instances where non-performance gives rise to damages for total breach.

[12]    Restatement 2d Contracts  §§ 237 and  225

§ 237 *Effect on Other Party's Duties of a Failure to Render Performance*
Except as stated in **§** 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured

its condition causes Houeix' duty to perform to not be due.

"[A] material failure of performance, as well as an absence of performance, operates as the non-occurrence of a condition . . . [T]he non-occurrence of a condition has two possible effects on the duty subject to that condition. The first is that of preventing performance of the duty from becoming due, at least temporarily. The second is that of discharging the duty when the condition can no longer occur."[13]    Under Georgia law for a material breach Defendant has the option of rescinding or suing for damages.[14]

## WAIVER

The Georgia Supreme Court has held that "waiver may be established by expressed statements or implied by acts and conduct from which an intention to waive may reasonably be inferred. Ordinarily, mere silence is not sufficient to establish a waiver."[15]  The majority view of Georgia law is that "a party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act

---

material failure by the other party to render any such performance due at an earlier time.

§ 225 *Effects of the Non-Occurrence Of a Condition*
(1) Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused.
(2) Unless it has been excused, the non-occurrence of a condition discharges the duty when the condition can no longer occur.
(3) Non-occurrence of a condition is not a breach by a party unless he is under a duty that the condition occur.

[13]    Comment a. to Restatement 2d Contracts § 237

[14]    *Mann Electric Co. V. Webco Southern Corp.*, 194 Ga.. App. 541,543, 390 S.E. 2d 905,908 (1990).

[15]    *TST, Ltd., Inc. v. Houston*, 256 Ga. 679,680; 353 S.E.2d 26,27 (1987).

are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible."[16]  Here there is another reasonable explanation of Defendant's conduct; namely, he was afraid of losing his immigration Visa as a result of being fired. (H. Afvd. ¶ 6, ¶ 7.) (H. Depos. pp. 71, 82-84, 102, 158)

Waiver is essentially a matter of intention. To determine the intention "all the attendant facts, taken together, must amount to an intentional relinquishment of a known right."[17]

In this case there is a factual dispute as to Defendant's intent.  Defendant did not leave his position with the College, when the initial breach was evident, during November 2000, or when subsequent breaches occurred, because he intended to maintain his immigration status, and <u>not</u> because he intended to waive the breach. Where the evidence conflicts, the issue of waiver is a factual question for the jury.[18] Examples of reasonable explanations of conduct, that contradicts an intention to  waive a legal right, are varied. Acceptance of a $10,000 down payment check after the closing deadline did not waive the deadline as a matter of law; since the seller accepted the check not for a required down payment, but following its customary practice of depositing checks from prospective purchasers so that the funds would not be lost, stolen, or misplaced.[19]  Failure to deduct remodeling

---

[16]    *MNM 5, Inc. v. Anderson/6438 Northeast Partners, Ltd.*, 215 Ga. App. 407, 410; 451 S.E.2d 788 (1994), followed in *Metro. Deluxe v. Bradsher*, 258 Ga. App. 265, 268; 573 S.E.2d 504, 507 (2002); *Stronghaven, Inc. V. Ingram* 252 Ga. App. 124,127,128,  555 S.E.2d 49 (2001); *Georgia Farm Bureau Mut. Ins. Co. v. Bishop*, 219 Ga. App. 42, 44; 464 S.E.2d 9, 11; (1995)

[17]    *Stronghaven, Inc. V. Ingram* 252 Ga. App. 124,127,128,   555 S.E.2d 49 (2001); citing *Kusuma v. Metametrix, Inc*, 191 Ga. App. 255, 257 (3) (381 S.E.2d 322) (1989).   See also *MNM 5, Inc. v. Anderson/6438 Northeast Partners, Ltd.*, 215 Ga. App. 407, 410 (2) (451 S.E.2d 788) (1994)

[18]    *McCullough v. McCullough*, 263 Ga. 794, 795 (1) (439 S.E.2d 486) (1994); *Kusuma*, supra.

[19]    See *Frank v. Fleet Finance*, 227 Ga. App. 543, 547-548, 489 S.E. 2d 523, 527(1997).

costs from rental payments over a three year period may reasonably be explained as a wish to avoid a dispute as to the amount of the remodeling costs prior to deducting them from rent due, instead of waiver.[20]  The inference of a normal act of devotion and duty towards a party's wife was a sufficient reasonable explanation  to avoid a waiver of a defense.[21]

The case relied upon by Plaintiff can be distinguished on the facts, since there was no reasonable explanation of the actor's intention other than a clear intention to waive. Furthermore two of the cases *Southern Savings Bank* and *Luke v. McGuire* were characterized as creations of new employment contracts followed by seven or eight years of employment. [22]  None of the cases cited by Plaintiff had a fact pattern showing an intention other than waiver.

### DAMAGES

The Employment Agreements do not fix liquidated damages for a breach by Plaintiff. The consideration of $ 39,000 is in exchange for all of Defendant's promises of performance. He promised to be available for nine months of teaching and for any other service required by Plaintiff, (Exhibits A, B & D, Amnd. Ans. & Cc. PP 1, 3, 4) such as enrollment in the masters courses. Plaintiff's breaches after April 18, 2001, during the summer quarter. Not only excused Defendant from further performance, but entitled him to damages.

Defendant was not paid the final compensation, $ 1,215.48 for the summer 2001 teaching under the August 2000 Employment Agreement. (H. Afvd. ¶ 20.)

Defendant was entitled to receive one free course per quarter of educational services from the

---

[20]    *Eckerd Corp. v. Alterman Prop.* 264 Ga. App. 72, 75; 589 S.E.2d 660, 664  (2003).

[21]    *Jones v. Roberts Marble,* 90 Ga. App. 830, 832, 84 S.E. 2d 269, 471 (1954).

[22]    *Southern Savings Bank v. Dickey,* 58 Ga. App. 718, 721; 199 S.E. 546, 48 (1938); *Luke v. McGuire Ins.* 133 Ga. App. 948, 953, 212 S.E. 892, 471 (1975)..

college. This provision was breached. The value of this is $7,400.(H. Afvd. ¶ 9.)  The invoices for tuition attached to the Defendant's Affidavit show that the cost of one course per quarter is $1,850. "Damages growing out of a breach of contract, in order to form the basis of a recovery, must be such as can be traced solely to the breach, must be capable of exact computation, must have arisen naturally and according to the usual course of things from such breach, and must be such as the parties contemplated as a probable result of the breach."[23]  The measure of damages in the case of a breach of contract is the amount which will compensate the injured person for the loss which a fulfillment of the contract would have prevented or the breach of it entailed. In other words, the person injured is, so far as it is possible to do so by a monetary award, to be placed in the position he would have been in had the contract been performed.  Total damages naturally flowing from the breach of the August 2000 employment agreement are $ 8,615.48.

Total damages naturally flowing from the breach of the April 2001 employment agreement are $ 32,948. (H. Afvd. ¶ 19.)

## CONCLUSION

For these reasons Plaintiff's Motion for Summary Judgment on the Counterclaim ought to be over ruled.

---

[23]     *Sanford-Brown Co. v. Patent Scaffolding Co*., 199 Ga. 41 (33 SE2d 422) (1945), quoted in *Bennett v. Assoc. Food Stores*, 118 Ga. App. 711, 714 (165 SE2d 581) (1968); see O.C.G.A. § 13-6-2.

Respectfully submitted,

/s/ John A. Rebel
John A. Rebel (0031771)
Attorney for Defendant
McKinney & Namei
15 E. 8th St.
Cincinnati, Ohio 45202
(513) 721-0200, Fax: 513- 632-5898

### Certification of Service

The foregoing and the Affidavit of Defendant in Support of the foregoing were served by electronic means or by ordinary mail  upon David T. Croall, Porter Wright Morris & Arthur LLP, attorney for Plaintiff, at his office at 250 East 5th St., Ste 2200, Cincinnati, Ohio 45202-5117, by ordinary mail on this 21st  day of April, 2004.

/s/ John A. Rebel
John A. Rebel (0031771)
Attorney for Defendant

13