IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., <br><br> Plaintiff, <br><br> v. <br><br> PHILIPPE HOUEIX, <br><br> Defendant. | CIVIL ACTION FILE <br><br> NO. C-1-02 490 |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT ON DEFENDANT'S COUNTERCLAIMS**

Plaintiff Savannah College of Art and Design, Inc. ("SCAD") submits this reply brief in support of its motion for summary judgment on the counterclaims of Defendant Philippe Houeix ("Houeix").

**SUMMARY OF THE ARGUMENT**

The briefing on this Motion has helped clarify for SCAD what is, and what is not, still at issue with respect to Houeix's counterclaims and thus what is, and what is not, at issue in this Motion. To help provide an organizational framework for the Court's consideration of SCAD's Motion, SCAD sets forth in outline form below a summary of Houeix's remaining counterclaims and why SCAD is entitled to summary judgment on each of these claims.[1]

---

[1] This brief does not address Houeix's claim that SCAD breached the 2000-01 Agreement by reversing a payment to him in the amount of $1,215.48. Although that claim was part of SCAD's original motion for summary judgment, SCAD withdraws that claim from consideration as part of its motion, and, instead, intends to address that claim on the facts at trial.

ATL01/11647180v3

     **1.**    **Alleged Breach of the 2000-01 Agreement for Failing to Provide Course Instruction.**

Houeix alleges that SCAD has breached the agreement the parties entered into for the 2000-01 school year (the "2000-01 Agreement") by failing to provide him with master's level instruction – instruction that he admits he did not want and did not need. As damage flowing from this alleged breach, Houeix claimed in his discovery responses that he is entitled to the value of the education not provided, or $7,400. This amount equals the cost of the tuition (although Houeix, as a faculty member, did not pay any such cost) for the relevant classes that he alleges he did not attend. Houeix further claimed in his discovery responses that he was entitled to damages to compensate him for harm to his professional reputation allegedly suffered as a result of not having been provided the relevant instruction.

SCAD seeks summary judgment on both liability and damages as it relates to this counterclaim. As to liability, Houeix waived his claim as a matter of Georgia law by failing to notify SCAD of the claim at any time during the 2000-01 school year, or the summer quarter thereafter, while at the same time repeatedly accepting payment from SCAD and even entering into additional contracts with SCAD.

As to damages, Houeix did not respond to SCAD's motion for summary judgment regarding Houeix's claim for damages to his professional reputation. Houeix has therefore conceded SCAD's motion regarding this damage claim.[2] *See, e.g., Owner-Operator Independent Drivers Assoc., Inc. v. Arctic Express, Inc.*, 238 F. Supp. 2d 963, 969 n.3 (S.D. Ohio 2003)("By

---

[2]     Because Houeix has failed to challenge SCAD's motion as to this damage theory, SCAD does not address it further herein.

failing to respond to the Plaintiff's Motion in this regard, the Court finds that the Defendants conceded this issue.")

SCAD is likewise entitled to summary judgment regarding Houeix's claim that he is entitled to $7,400 as damages for the instruction he alleges he did not receive. Houeix openly admits that he did not want to take the classes and that he would not have learned anything through the classes because of his 20+ years of experience as a professional designer. Nor has Houeix asserted that he has made any effort to take the same or similar courses since he left SCAD. Houeix has therefore suffered no legitimate monetary or other harm as a result of SCAD's alleged failure to provide him with the relevant instruction as a matter of undisputed fact, and any payment to him related to the classes he allegedly did not take would be nothing but a financial windfall to him.

### 2. Alleged Breach of the 2001-02 Agreement for Failing to Provide Course Instruction.

Houeix alleges that SCAD has also breached the agreement the parties entered into for the 2001-02 school year (the "2001-02 Agreement") by failing to provide him with course instruction; however, the basis for this claim is not entirely clear. Based upon his briefing, it appears that Houeix is alleging that he had a right to terminate the agreement, not teach any classes, yet be paid for the full school year because SCAD had not provided him with course instruction during the first two days of the 2001-02 school year. As to damages, Houeix states in response to SCAD's Motion that he is entitled to recover as damages the amount of money he would have been paid by SCAD under the 2001-02 Agreement had he actually taught classes during that school year, or $32,948.

The undisputed facts of record evidence that SCAD did not breach the 2001-02 Agreement but rather that Houeix quit the College three days into the new school year on his own accord, in breach of the Employment Agreement himself. Houeix is asking that this Court pay him for an entire year of teaching when he admits that he taught only two days of the year. Houeix is not entitled to a salary for that school year under any legitimate factual or legal theory.[3]

## ARGUMENT AND CITATION OF AUTHORITY

I. **SCAD Is Entitled To Summary Judgment On Houeix's Claim For Breach Of The 2000–01 Agreement.**

By continuing performance and accepting and retaining the benefits under the 2000-2001 Employment Agreement from the College after Houeix became aware of the alleged breach without bringing his claim to the attention of the College, Houeix waived any claim he might have had based on any such alleged breach. *See, e.g., Southern Sav. Bank v. Dickey*, 199 S.E. 546, 549 (Ga. Ct. App. 1938)("[W]hen the defendant breached or changed the contract and departed from its terms, and this was acquiesced in and accepted by the plaintiff by his continuing to work and receive pay therefore, without objection of protest, he is now bound thereby, and cannot be heard to complain."); *Luke v. McGuire Ins. Agency of Ga.*, Inc., 212 S.E.2d 889 (Ga. Ct. App. 1975)(same); *Cartwright v. Bartholomew*, 64 S.E.2d 323, 326 (Ga. Ct. App. 1951)("Where a contract is entire and one party thereto breaches the same, the other party

---

[3] In his discovery responses, Houeix also alleged that he is entitled to recover $4,800 on this claim as the value of courses he believes he likely would have been retained by SCAD to teach in the summer of 2002 had he not quit on September 14. (Houeix's Response to SCAD's Interrogatory No. 3: "Defendant's damages are the agreed compensation for [sic] 2001-2002 school year of about $39,000 plus the probably summer quarter of $4,800."). SCAD's Motion addresses this damage item, and Houeix wisely does not make any attempt in his Opposition brief to rebut SCAD's Motion. The undisputed evidence of record is that Houeix had no contract to teach the 2002 summer quarter; thus, SCAD had no obligation to Houeix that it could have breached. In addition, by not addressing this claim in his opposition brief, Houeix conceded that claim. *See, e.g., Owner Operator Independent Drivers Assoc.*, 238 F. Supp. 2d at 969 n.3. SCAD is therefore entitled to summary judgment on this claim, to the extent it is still at issue in this case.

may usually treat the contract as rescinded and be absolved from further performance, but he cannot do so after waiver of his right by continuing to accept benefits arising under the contract after knowledge of its breach."); *Nguyen v. Talisman Roswell, LLC*, 585 S.E.2d 911, 913 (Ga. Ct. App. 2003) ("When a contract 'is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform'"). As set forth in SCAD's opening brief, under Georgia law, once a party to a contract is made aware of a breach, the party must assert the breach promptly or such breach is deemed to be waived. *See, e.g., Forehand v. Perlis Realty Co.,* 400 S.E. 2d 644, 649 (Ga. Ct. App. 1990) ("Our courts generally are quick to seize upon any waiver of a forfeiture, the rule being that the right to rescind for any breach must be asserted promptly, and a waiver of a breach or forfeiture cannot be recalled.").

Here, Houeix asserts that he was aware that the Interior Design Department was allegedly not providing him course instruction by at least as early as September 2000, and yet, he admits that he failed to complain or raise any issue with the College's administration or anyone else at SCAD (Opposition, pp. 2-3). Moreover, Houeix does not refute that he continued to receive and accept his salary from SCAD for the full regular term of the 2000-2001 academic school year. Houeix further admits that he accepted the College's additional offer of employment during the summer of 2001, and that he taught that entire quarter without bringing any alleged breach to the College's attention. (*Id.*) In addition, Houeix admits that he entered into a new Employment Agreement with SCAD for the subsequent 2001-2002 school year without giving any notice to the College of any alleged breach. (*Id.*). Finally, Houeix admits that he unilaterally terminated the 2001-2002 Employment Agreement two days into the new school year, in September 2001, without ever providing any notice to the College or complaining in any way about the alleged lack of course instruction by the Interior Design Department. (*Id.,* p. 7). As the above cited

Georgia law makes clear, under these circumstances, Houeix waived any claim for a breach of the agreement that he might have asserted.

The cases cited by Houeix for the proposition that mere silence alone is not sufficient to establish waiver are distinguishable from the facts of this case because in each of those cases the party that allegedly waived the breach did not continue to perform under the contract or continue to receive the benefits under the contract, as Houeix did here.[4] For example, *TST, Ltd., Inc. v. Houston*, cited by Houeix, involved an option contract whereby the plaintiff had the option to purchase certain real estate from the defendant. *TST*, 353 S.E.2d 26, 26 (Ga. 1987). The contract at issue required the plaintiff to exercise the option and to close on the property by a certain date. *Id.* The plaintiff alleged that one of its secretaries contacted the defendant by phone to try and set up a date for the closing to take place within the time period specified under the contract, but that on that call the defendant stated, that the secretary had caught him at a bad time and that he would have to call the secretary back. *Id.* The defendant allegedly did not call the secretary back and the closing did not take place within the required time period. *Id.* The plaintiff in that case alleged that the telephone conversation between its secretary and the defendant evidenced a waiver by the defendant of the right to insist upon a timely closing. *Id.* Although the court in that case held that the defendant's silence did not constitute a waiver, the court distinguished the case upon which it relied for its decision from another Georgia case, *Smothers v. Nelson*, 246 Ga. 216, 271 S.E.2d 137 (1980), noting in that in the *Smothers* case, a "repeated agreement to accept interim payments after due date constituted waiver." *Id.*

---

[4] Because one of the case cited by Houeix, *Metropolitan Deluxe, Inc. v. Bradsher*, is not on point whatsoever, it is not discussed herein in any detail. The issue in that case is not whether there was a waiver of a breach of a contract, but rather is whether a party's counsel in a lawsuit waived his right to file a motion to strike the answer and take a default judgment. *Metropolitan Deluxe*, 573 S.E.2d 504, 507 (Ga. Ct. App. 2002).

In the same way, *MNM 5, Inc. v. Anderson/6438 Northeast Partners, Ltd.*, also cited by Houeix, is distinguishable from the situation in this case. There, a tenant alleged that a landlord waived his right to demand a timely security deposit, which was due on or before April 1, 1993, even though the landlord sent a certified letter on June 17, 1993 naming several defaults including failure to response to a demand for the security deposit. *MNM 5*, 451 S.E.2d 788, 791 (Ga. Ct. App. 1994). The court there determined that the landlord did not waive its right to demand a security deposit by not immediately demanding payment on April 1, 1993, because the landlord "gave reasonable notice of its intention to rely on the lease terms." *Id.* Accordingly, unlike the situation in this case, the landlord in that case did not continue to perform under or accept the benefits under the contract, but, to the contrary, provided the tenant with timely notice of the tenants alleged breach. *Id.*

Likewise, the only other case cited by Houeix in support of his argument that he did not waive the alleged breach, *Stronghaven, Inc. v. Ingram*, did not involve a situation like the one here where the party that waived the breach continued to perform under or accept the benefits under a contract. In fact, the court in *Stronghaven*, although finding based on the facts of that case that a material fact existed as to whether an employer waived a 30-day closing period, specifically recognized that "continuing performance, demanding or urging further performance, or permitting the other party to perform and accepting or retaining benefits under the contract, may constitute waiver of a breach." *Stronghaven*, 555 S.E.2d 49, 52 (Ga. Ct. App. 2001). Accordingly, because Houeix continued to perform under the 2000-01 Agreement, continued to allow SCAD to pay him and repeatedly accepted and retained the salary and other benefits under the agreement, Houeix waived any claim he might have had for the alleged breach. *See, e.g.,*

*Southern Sav. Bank*, 199 S.E. at 549; *Luke*, 212 S.E.2d at 889; *Cartwright*, 64 S.E.2d at 326; *Nguyen*, 585 S.E.2d at 913.

In addition, SCAD is entitled to summary judgment with respect to Houeix's claim for damages with respect to the alleged breach of the 2000-01 Agreement because there is no evidence in the record that would allow a trier of fact to estimate with reasonable certainty the amount of damages. There is no dispute that Houeix was not charged, nor did he ever pay SCAD any money for these courses. (Houeix Depo., p. 78). Rather, the $7,400 that Houeix is seeking is the value that SCAD typically gets paid for such classes. There is no evidence in the record that Houeix was damaged in this amount for allegedly not receiving the course instruction. To the contrary, the record indicates that Houeix himself stated that he "thought it was maybe a little bit ridiculous to go to class with other students [because he] didn't feel that [he] needed that at all." (Houeix Depo., p. 76). Moreover, Houeix was able to obtain a master's degree from France based on his previous work experience without any additional coursework. (Houeix Depo., p. 69-70). Accordingly, because there is no evidence in the record that would allow a trier of fact "to estimate with reasonable certainty the amount of damages" with respect to this claim, SCAD is entitled to summary judgment on that additional basis. *See Turner v. Connor*, 385 S.E.2d 19, 20 (Ga. Ct. App. 1989). Moreover, because Houeix has suffered no legitimate monetary or other harm as a result of SCAD's alleged failure to provide him with the relevant instruction, any payment to him related to the classes he allegedly did not take would be nothing but a financial windfall to him.

Accordingly, SCAD is entitled to summary judgment on both liability and damages with respect to Houeix's claim for breach of the 2000–01 Agreement.

**II.     SCAD Is Entitled To Summary Judgment On Houeix's Claim For Breach Of The 2001-02 Agreement.**

Houeix's largest remaining damage claim relates to his claim that he is entitled to payment of $32,948 for unperformed services related to the 2001-02 school year.

SCAD is frankly uncertain of the exact factual and legal bases for Houeix's claims. In his Opposition brief, Houeix asserts that the alleged breaches by SCAD "occurred at various times from September to August of 2000." (Opposition, p. 2). By its explicit language, however, the term of the 2001-2002 Employment Agreement did not begin until September 12, 2001. (*See* 2001-2002 Employment Agreement, attached as Exhibit B to Houeix's Amended Answer and Counterclaim, p. 3). Accordingly, SCAD could not have breached the 2001-02 Agreement prior to September 12, 2001. It is undisputed that Houeix unilaterally quit the College on September 14, 2001 after teaching only two days worth of classes. SCAD therefore had no opportunity to perform its services (or to even fail to perform its services) under the 2001-02 Agreement before Houeix abruptly quit and left town. SCAD therefore could not have breached the 2001-02 Agreement on this basis because it did not have time to do so.

Some language in Houeix's Opposition Brief suggests that Houeix may be claiming that SCAD's alleged obligation to provide him with master's level course instruction was a condition precedent to his own performance. (*See* Houeix's Opposition brief at 8-9.) To the extent this is the basis for Houeix's claim, Houeix's claim is factually and legally unsound. SCAD's alleged obligation to provide Houeix with Master's level course instruction is plainly not a condition precedent to Houeix's obligation to teach under the 2001-02 Agreement. The best evidence of this is that Houeix alleges that SCAD did not provide him course instruction in the prior four quarters; yet Houeix makes no attempt to argue that this prevented him from fulfilling his

teaching obligations during the 2000-01 school year or the ensuing summer quarter. Accordingly, there is no factual or legal reason why the instruction SCAD was allegedly obligated to provide Houeix in the 2001-02 school year was a necessary predicate to Houeix's ability or obligation to perform the teaching services he agreed to provide during that school year. Furthermore, Houeix admits that he did not want and did not need the education he would have gotten in the classes because he already knew it all.  Thus, SCAD's alleged failure to provide Houeix with instruction in no way entitles Houeix to terminate the 2001-02 Agreement, then get paid for the entire school year despite the fact that he concedes that he only taught two days worth of classes.

Even if SCAD's alleged obligation to provide teaching was a condition precedent, the parties were only three days into the new contract when Houeix quit without advance notice and left town for Cincinnati.  Houeix thus gave SCAD no opportunity to fulfill its alleged obligations.  SCAD therefore cannot be liable for breach of contract as a matter of undisputed fact and law.  *See, e.g., Clark v. Cox*, 347 S.E.2d 4, 5 (Ga. Ct. App. 1986)(holding purchaser of real estate anticipatorily breached contract when he repudiated his contractual obligation prior to the time when performance was required of the seller, even though plaintiff contended that there was no way that the items could be remedied by the closing deadline); *McLeod v. Mclatcher*, 410 S.E.2d 144, 145 (Ga. Ct. App. 1991)(rejecting defendant's argument that he had the right to rescind contract on the ground of failure of performance by the plaintiff where the defendant "did not afford [the plaintiff] an opportunity to address his concerns and demonstrated no willingness to negotiate").

## CONCLUSION

For the reasons set forth above as well as those set forth in SCAD's opening brief, it is entitled to summary judgment on each of Houeix's counterclaims with the exception of Houeix's claim related to SCAD's cancellation of payment to Houeix in the sum of $1,215.48 arising out his unilateral termination of the 2001-02 Agreement.

Respectfully submitted this 5th day of May 2004.

> By: /s/ David T. Croall
> David T. Croall (0009149)
> Rachel E. Burke (0066863)
> Adele E. O'Conner (0023133)
> Porter Wright Morris & Arthur LLP
> 250 East Fifth Street, Suite 2200
> Cincinnati, Ohio 45202-5117
> Telephone: (513) 381-4700
> Facsimile: (513) 421-0991

Of Counsel:
Stephen J. Butler (0010401)
Theodore D. Lienesch (0016542)   [Deleted: .]
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone: (513) 352-6700
Facsimile: (513) 241-4771

Peter M. Degnan
David J. Stewart
Patrick Elsevier
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000

> Counsel for Plaintiff
> SAVANNAH COLLEGE OF ART AND DESIGN, INC.

**CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing Plaintiff's Reply in Support of Its Motion for Summary Judgment on Defendant's Counterclaims was electronically served upon John A. Rebel, Esq., McKinney & Namei, 15 East Eighth Street, Cincinnati, OH 45202, this 5th day of May, 2004.

                                            /s/ David T. Croall
                                            David T. Croall

CINCINNATI/110142 - 01