# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SAVANNAH COLLEGE OF
ART AND DESIGN, INC.,
    Plaintiff                             Case No. 1:02-cv-490

vs

                                           **ORDER**
PHILIPPE HOUEIX,                    (Hogan, M.J.)
    Defendant

       This matter is before the Court on plaintiff Savannah College of Art and Design, Inc.'s (Savannah College) motion for summary judgment on defendant Philippe Houeix's counterclaims (Doc. 38), defendant Houeix's response thereto (Doc. 39), and Savannah College's reply memorandum. (Doc. 41).

       A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

       In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a

factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Philippe Houeix is an interior designer formerly residing in France who was hired by Savannah College as an interior design instructor. Houeix moved to Savannah, Georgia in May 1999 and began teaching in June 1999.

Houeix and Savannah College executed four written employment contracts, two of which are the subject of Houeix's counterclaims: (1) a one-year contract dated August 16, 2000, pursuant to which Savannah College retained Houeix to teach during the 2000-2001 school year (Doc. 22, Exh. A); and (2) a one-year contract dated April 18, 2001, pursuant to which Savannah College retained Houeix to teach during the 2001-2002 school year. (Doc. 22, Exh. B).

Savannah College, in reviewing faculty credentials as part of its accreditation process, determined that Houeix's educational training in France was not the equivalent of a master's degree in the United States as required for teaching at the College. In August 2000, Savannah College required Houeix to enroll in a master's degree program in Interior Design at the College. Savannah College and Houeix executed a Repayment Agreement on September 12, 2000 which allowed Houeix to take two classes per quarter at no expense to Houeix. (Doc. 22, Exh. D). The Agreement of Repayment provided, in pertinent part, that "[i]n consideration for additional tuition waiver(s) for courses offered by the Savannah College of Art and Design, … If [Houeix] chooses to leave the College's employment before the term of one year from the date the degree is awarded, [Houeix] agrees to repay the College the tuition for classes taken to achieve the terminal degree in Interior Design." (Doc. 22, Exh. D). Houeix understood that under the Repayment Agreement, he would owe the College the cost of tuition for courses taken if he left his employment within one year after the award of his master's degree. (Houeix Depo. at 78).

Brian Murphy, the Executive Vice President of Savannah College, states that individual arrangements were made for Houeix so he could fulfill his teaching requirements and continue to earn his degree. (Doc. 38, Exh. A, Murphy Decl. at ¶8). He states an individualized program of study was created for Houeix wherein all of his classes would be in the form of a directed, independent study format. *Id*. Mr. Murphy states that Houeix enrolled in classes towards his master's degree in the fall, winter, spring, and summer quarters and continued to teach at the College during the same time period. He was awarded grades for all of his classes and at no time complained in any way to the College that he was not receiving any course instruction. Houeix also continued to accept all of the compensation owed to him under the 2000-2001 employment

agreement. Houeix did not complain to the College about not receiving course instruction before he entered into the 2001-2002 Employment Agreement. (Doc. 38, Exh. A at ¶9).

Houeix disputes that any individual arrangement or individual study program was made for him so he could teach and earn his master's degree. (Doc. 40, Houeix Aff. ¶4). He states he never engaged in any independent study projects and the College did not require him to produce any art of design projects as a master's degree student. Houeix states he did not attend any master degree class during the one year period. He states that during the summer of 2001, he was enrolled in three classes that did not exist. He was awarded a grade of "A" for eight courses, and one incomplete grade. (Doc. 40, Houeix Aff. ¶¶3-5, 12-15).

Houeix admits that prior to his resignation, he never complained to the College about not receiving instruction for the credits received, although he states he complained to the Southern Association of Colleges and Schools, the accreditation organization for Savannah College, in June 2001. (Doc. 39 at 3, Doc. 40, Houeix Aff. ¶16; Houeix Depo. at 102-103, 132-134). Houeix admitted he was aware of the College's grievance policy, but did not file a grievance regarding his alleged lack of instruction. (Houeix Depo. at 133). Houeix's immigration J-1 Visa authorized teaching employment at only Savannah College. To legally remain in the United States Houeix had to retain his employment with Savannah College. (Doc. 40, Houeix Aff. ¶6). Houeix states he went along with the "fraudulent" grading scheme because he feared termination of his employment at the College and subsequent deportation of his family. He alleges his wife was arbitrarily terminated from the College in November 2000, and that two colleagues in his department were abruptly terminated. (Doc. 40, Houeix Aff. ¶¶6-7). He states that in September 2001, for the first time, it was possible for him to leave his employ with the College without

jeopardizing his family's immigration status since his wife had obtained an H1B Visa. (Doc. 40, Houeix Aff. ¶8).

After teaching classes at the College on September 12 and September 13, 2001, Houeix by letter resigned his employment on September 14, 2001. (Houeix Depo. at 24). Mr. Murphy states this action caused a substantial hardship on the College's students and faculty. He states that only after Houeix sent his letter of resignation did the College become aware that Houeix asserted the College had engaged in purported fraud by allegedly granting him academic credit for classes he did not attend. (Doc. 38, Exh. A at ¶10).

Houeix states that pursuant to the Repayment Agreement of September 13, 2000, he was charged $7,400 for classes neither attended nor taught. (Doc. 40, Houeix Aff. ¶¶9-10). However, Houeix has not yet paid Savannah College for any of the master's degree courses. (Houeix Depo. at 78). Houeix states that on September 14, 2001, the College withdrew $1,215.49 from Houeix's checking account which was his final paycheck for the 2001 summer quarter. He states these amounts represent his loss from the College's breach of the August 16, 2000 Employment Agreement. (Doc. 40, Houeix Aff. ¶20). Houeix states his total lost wages from the College's breach of the April 18, 2001 Employment Agreement are $32,948.00, the difference between his expected income of $39,000.00 under the Employment Agreement and his actual income from work as a Design Consultant from October 2001 to June 2002. (Doc. 40, Houeix Aff. ¶18).

On July 5, 2002, Savannah College filed a complaint against Houeix to recover damages it suffered as a result of Houeix's alleged breach of his Employment Agreement, among other relief. (Doc. 1). Houeix filed a Counterclaim against Savannah College, alleging the College

breached the Employment Agreements. (Doc. 22). Savannah College moved to dismiss the Counterclaim. On September 24, 2003, the Court granted the motion in part, but denied the motion with respect to Houeix's claim that Savannah College breached the Employment Agreements by failing to provide Houeix class instruction towards a master's degree. (Doc. 30). Savannah College now seeks summary judgment on Houeix's remaining breach of contract claim.

As an initial matter, Savannah College asserts it is not seeking summary judgment on Houeix's claim that the College breached the 2000-2001 employment agreement by reversing a payment to him in the amount of $1,215.48 for the 2001 summer quarter. Although this claim was part of Savannah College's original motion for summary judgment, the College in its reply brief withdrew this claim from consideration on summary judgment and will address this claim on the facts at trial. (Doc. 41, n. 1).

Savannah College contends that even accepting as true Houeix's assertions that the College's failure to provide Houeix with master's level course instruction constitutes a breach of Houeix's employment contract, Houeix has waived his breach of contract claim as a matter of Georgia law by his continuation of the contract in spite of the known breach.[1] Under Georgia law, "[w]aiver may be established by express statements or implied by acts and conduct from which an intention to waive may reasonably be inferred." *TST, Ltd., Inc. v. Houston*, 256 Ga. 679, 679-80, 353 S.E.2d 26, 27 (1987), citations omitted; *James v. Mitchell*, 159 Ga. App. 761, 762, 285 S.E.2d 222, 224 (1981). Mere silence, however, is generally insufficient to show a waiver unless there is an duty to speak. *Houston,* 256 Ga. at 679-80, 353 S.E.2d at 27. When "a

---

[1] It is undisputed that Georgia state law applies to this matter.

contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but assented to." *Southern Savings Bank v. Dickey*, 58 Ga. App. 718, 199 S.E. 546, 548-49 (1938). In *Southern Savings Bank*, an employee sued his former employer over compensation allegedly due under his employment contract. The Georgia Court of Appeals dismissed the action, finding the employee's continued acceptance of benefits under the contract without objection over a period of years constituted a waiver of the alleged breach:

> Where, as in the present case, the petition discloses that the defendant violated and changed the terms of the contract, and the plaintiff elected to accept the breach and abide by the changes by continuing to perform services thereunder and receive the benefits therefrom for a period of some seven or eight years, without objection or protest, he can not then, upon terminating his services with the defendant, maintain a suit for benefits which he claims accrued to him under the original contract but after the alleged breach and changes in the contract occurred.

*Southern Savings Bank*, 199 S.E. at 549. *See Smothers v. Nelson*, 246 Ga. 216, 271 S.E.2d 137 (1980)(repeated agreement to accept interim payments after due date constituted waiver); *Nguyen v. Talisman Roswell, LLC*, 262 Ga. App. 480, 482-83, 585 S.E.2d 911, 913 (2003)(lessee knowingly waived defect in square footage provided under lease where he failed to object and remained on premises for more than two years); *Cartwright v. Bartholomew*, 83 Ga. App. 503, 64 S.E.2d 323, 324(1951)("Where a contract is entire and one party thereto breaches the same, the other may usually treat the contract as rescinded and be absolved from further performance, but he cannot do so after waiver of his right by continuing to accept benefits arising under the contract after knowledge of its breach."). *See also Luke v. McGuire Ins. Agency of Georgia, Inc.*, 133 Ga. App. 948, 212 S. E. 2d 889 (1975).

Here, Houeix knew of the alleged breach of the 2000-2001 employment contract in the fall of 2000 when he allegedly received no instruction towards his master's degree, yet was awarded grades of "A" and credit for such instruction. Despite this knowledge, Houeix admits he did not complain to Savannah College and continued to accept his salary and benefits under the 2000-2001 employment agreement. In this same vein, Houeix continued to enroll in classes in the winter, spring and summer quarters and continued to receive grades for course work during those quarters without complaint or objection to Savannah College. During this same time, he continued to teach and receive his salary under the 2000-2001 employment agreement. He then executed a new agreement with Savannah College for the 2001-2002 school year and enrolled in classes without asserting any objections about the alleged failure to receive instruction towards his master's degree. Houeix's failure to object to the known breach and continued acceptance of the benefits under the employment contract constitutes a waiver of his breach of contract claim under Georgia law.

Houeix admits he did not complain to officials at Savannah College about the failure to receive course instruction, but argues the only reason he did not was to avoid losing his job and thereby his immigration status which was tied to his employment at Savannah College. Houeix argues his "intent" was not to waive Savannah College's breach, but rather to retain his immigration status and avoid deportation of his family. Houeix cites several cases for the proposition, "A party may by his conduct waive a legal right but where the only evidence of an intention to waive is what a party does or forbears to do, there is no waiver unless his acts or omissions to act are so manifestly consistent with an intent to relinquish a then-known particular right or benefit that no other reasonable explanation of his conduct is possible." *MNM 5, Inc. v.*

*Anderson/6438 Northeast Partners, Ltd.*, 215 Ga. App. 407, 410, 451 S.E.2d 788, 791 (1994), citations omitted. (Doc. 39 at 10).

The cases cited by Houeix are distinguishable from the instant case. In those cases, the party who allegedly waived the breach either objected to the breach, or did not continue to perform under the terms of the contract or receive the benefits under the contract. *See, e.g., Metropolitan Deluxe, Inc. v. Bradsher*, 258 Ga. App. 265, 267-68, 573 S.E.2d 504, 507 (2002)(no waiver of right to default judgment where counsel did not agree to extension and notified opposing counsel she did not agree to stipulation); *Stronghaven, Inc. v. Ingram*, 252 Ga. App. 124, 555 S.E.2d 49 (2001)(mere retention of stock assignment forms after closing date did not constitute waiver of closing deadline where forms were simply filed away and party undertook none of usual activities associated with purchase of stock shares when it received assignment forms); *Georgia Farm Bureau Mutual Ins. Co. v. Bishop*, 219 Ga. App. 42, 464 S.E.2d 9 (1995)(employee did not accept revision of contract by continuing to work after receiving lower pay where he complained to agency and district manager and sought remedy while continuing employment); *MNM 5, Inc.*, 215 Ga. App. 407, 451 S.E.2d 788 (landlord did not waive right to demand timely security deposit on date of alleged breach where landlord gave reasonable notice of intent to rely on lease terms). In each of these cases, the party's actions evidenced an intent to adhere to the original terms of the contract. Here, in contrast, Houeix never communicated his intent to adhere to the original terms of the contract by notifying Savannah College of the alleged breach or otherwise complaining of the failure to receive course instruction in exchange for college credit. Houeix was not merely silent concerning the alleged breach, but continued to affirmatively accept benefits under the employment contract and

continued to enroll for classes despite not receiving instruction. His affirmative, contemporaneous conduct evidences an intent to waive the alleged breach and overrides his post-hoc rationalization for not notifying Savannah College of the breach.

For these reasons, the Court finds that Houeix's failure to notify Savannah College of the alleged breach of contract while continuing to accept his salary and benefits under the contract constitutes a waiver of his breach of contract claims.

Houeix also argues that the failure to provide instruction during the summer 2001 quarter constitutes a breach of the April 2001 employment agreement since such breach occurred subsequent to the April 18, 2001 signing of the 2001-2002 employment agreement. (Doc. 39 at 7). Houeix alleges such breach excused his performance under the April 2001 agreement to provide instruction for the 2001-2002 academic year. It is undisputed that Houeix provided only two days of instruction in September 2001, then resigned his position with Savannah College.

Even assuming the failure to provide instruction for the summer 2001 quarter constitutes a breach of Houeix's 2001-2002 employment contract, for the reasons cited above Houeix has waived his breach of contract claim.

In any event, it is clear from the terms of the 2000-2001 employment agreement that the summer 2001 quarter is part of the 2000-2001 employment agreement signed by Houeix and Savannah College. Houeix admits in his brief that the 2000-2001 employment agreement provides that "[t]he term of employment will be extended through the end of the Summer Quarter 2001 in the event the College assigns the Employee to teach summer classes." (Doc. 22, Exh. A at 4 and Doc. 39 at 2, n.1). Therefore, any breach occurring in the summer of 2001 is a breach of the 2000-2001 employment agreement, and not the 2001-2002 employment agreement.

In view of the above, the Court finds Savannah College's motion for summary judgment well-taken and therefore **GRANTS** the motion.  The Court need not reach Savannah College's alternative arguments that it is entitled to partial summary judgment on Houeix's damages claims related to the failure to provide course instruction.

**IT IS SO ORDERED**.


Date:   7/12/2004                                              s/Timothy S. Hogan
                                                         Timothy S. Hogan
                                                         United States Magistrate Judge


J:\KLL\hogan cases\02-490msj.wpdkl