IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., <br><br> Plaintiff, <br><br> v. <br><br> PHILIPPE HOUEIX, <br><br> Defendant. | CASE NO. C-1-02 490 <br><br> Magistrate Judge Hogan |

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENTS REGARDING THIRD PARTY USES OF THE SCAD MARK IN UNRELATED FIELDS AND MEMORANDUM IN SUPPORT THEREOF**

Plaintiff Savannah College of Art and Design, Inc. ("SCAD") respectfully moves the Court for an Order precluding Defendant Philippe Houeix ("Houeix") from admitting the evidence of alleged third party uses of the SCAD mark that he produced to SCAD in discovery and that he presented to the Court in response to SCAD's motion for summary judgment. The reasons for requesting such relief are set forth below.

## I.   BACKGROUND

SCAD is the owner of the famous mark "SCAD" which SCAD has used since 1979 in connection with education services. In recognition of SCAD's exclusive rights to use this mark in commerce in the United States in connection with these services, the U.S. Patent and Trademark Office ("USPTO") issued SCAD Certificate of Registration No. 2,686,644 for the mark, a copy of which is attached as Exhibit A.

Trial is set to proceed in this matter on SCAD's claims of trademark infringement, trademark dilution, unfair competition, and cyberpiracy. SCAD's claims arise from Houeix's use of SCAD's famous mark, in domain name form, as the address for an Internet web site located at the URL <www.scad.info> (the "SCAD.INFO Web Site").

In response to SCAD's claims, Houeix has alleged that SCAD's mark is weak because there are numerous third parties that allegedly use the acronym "SCAD" to identify a variety of different goods and services. The only evidence, however, that Houeix has offered supporting his allegations of third party use is contained in or attached to his Brief in opposition to SCAD's motion for summary judgment, and the Affidavits filed in support thereof. For example, Houeix points to the following uses that he claims weaken SCAD's mark:

- SCAD used as an acronym for "Skipton and Craven Action for Disability," a UK organization for individuals with disabilities;

- "SCAD," used by students at Dartmouth University as an acronym for its skating club, the Skating Club at Dartmouth;

- The South Carolina Association for the Deaf's use of SCAD to identify itself;

- The use of "SCAD" in the medical field to identify the disorder Short-Chain Acyl-CoA Dehydrogenation; and

- The use of "SCAD" as an acronym for the extreme sports phrase "Suspended Catch Air Device".

*See* Defendant's Affidavit Contra to Plaintiff's Motion for Summary Judgment at ¶ 25 and Tab 2 (attached hereto as Exhibit B). *See also* Defendant's Response to Plaintiff's Motion for Summary Judgment at 3-4 (attached hereto as Exhibit C) (discussing additional alleged third party uses); Defendant's Attorney's Affidavit Contra to Plaintiff's Motion for Summary Judgment at Tab 2 (attached as Exhibit D) (same). Furthermore, many of the uses Houeix cites are for uses outside the United States. *See*, *e.g.*, Exhibit B (Defendant's Affidavit attaching web

- 2 -

site printouts for organizations in Japan, the United Kingdom, France, Germany, and South Korea). Houeix has also previously introduced printouts from the USPTO's records showing alleged use of the acronym SCAD in various federal trademark registrations. *See* Exhibit D at Tab 2. Even where the asserted registrations have actually issued and are in use, however, they are not used in the educational services field.

Indeed, *none* of the third party uses Houeix has identified are trademark uses of the term "SCAD" to identify educational goods or services sold in commerce in the United States. For this reason, the alleged examples of third party use of the SCAD trademark which are not within the educational services field are not relevant to any claims or defenses in this case.

## II.    ARGUMENT AND CITATION OF AUTHORITY

A.    **Standards of Relevant Evidence**.

It is a fundamental rule of evidence that only relevant evidence is admissible at trial. Fed. R. Evid. 402. "'Relevant evidence'" is evidence "having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Evidence is not, however, admissible simply because it is relevant. The Court must balance the probative value of even relevant evidence against the danger of, *inter alia*, wasting time, and in instances where that risk substantially outweighs the probative value of the proffered evidence, the evidence should be excluded. Fed. R. Evid. 403.

B.    **Evidence of Third Party Uses of the Mark SCAD in Fields Other Than Educational Services Is Irrelevant and Should Be Excluded Under Fed. R. Evid. 402 and 403.**

Although third party use of an asserted trademark may be relevant to the strength of the plaintiff's trademark, not all third-party uses affect a mark's strength. Indeed, "[e]vidence of numerous third-party registrations is only relevant if the registrations are 'current and in current

- 3 -

use ... in the very industry at issue.'" *Midwest Guaranty Bank v. Guaranty Bank*, 270 F.Supp.2d 900, 912 (E.D. Mich. 2003) (quoting *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 281 (6th Cir. 1997)); *Nat'l Cable Television Assoc., Inc. v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1579-80 (Fed. Cir. 1991) (third-party uses do not reduce the strength of a mark if they "are [not] nearly as closely related to the activities of the parties as the virtually identical uses of [the marks by] the parties are to each other"); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 614 (7th Cir. 1965) ("The fact that the word 'americana' is used in connection with numerous other businesses, enterprises and products is irrelevant. Uses of the name outside the hotel field could not possibly cause confusion with plaintiffs' mark").

As discussed above, Houeix has pointed to a variety of third party uses of the term SCAD. However, none of these uses are trademark uses in the field of educational services in the United States. The *only* uses Houeix has cited that could even conceivably be argued to be in the field of educational services are the uses of "SCAD" by the Seitan College of Art and Design – apparently a Japanese university – and by the computer support group at Princeton University (Support for Computing in Academic Departments). *See* Exhibit D at ¶ 4. With regard to the former, Houeix has offered no evidence that this Japanese university has used the name SCAD in the United States. As such, it is not a use in commerce in the United States that could weaken SCAD's mark as a matter of law. *See Ameritech, Inc. v. Am. Information Techs. Corp.*, 811 F.2d 960, 967 (6th Cir. 1987) (third party use in distinct geographic regions does not weaken a mark). With regard to the latter, Princeton's computer science department uses the term SCAD only to identify internal support services. Because Princeton does not offer services to any third parties under the term, the term is not a service mark used in commerce and does not in any way serve to weaken SCAD's rights in its mark. For these reasons, as well as the unrelatedness of the

remainder of Houeix's alleged third party uses, all of the third party uses Houeix has cited should be excluded under Fed. R. Evid. 402.

The asserted uses should also be excluded under Fed. R. Evid. 403 because admission of these asserted uses would take significant time, and, if forced to rebut the applicability of each asserted use, SCAD's rebuttal case could last days. From an evidentiary standpoint, Houeix must first establish actual use in United States commerce of each of the asserted third party uses. *Daddy's Junky Music Stores*, 109 F.3d at 281 ("'[M]erely showing the existence of marks in the records of the Patent and Trademark Office will not materially affect the distinctiveness of another's mark which is actively used in commerce. In order to be accorded weight a defendant must show what actually happens in the marketplace.'"). SCAD may then challenge whether these marks are in fact recognized in the marketplace, or whether their use is so minimal as to be inconsequential. One Court has noted the breadth of the matters that each asserted third party use places in issue:

> A study of [defendant's alleged third party uses] reveals that some of them are duplications, some relate to uses discontinued many years ago, some were used but to a limited extent and in single communities or limited localities far from the Pacific Coast to which appellees' operations were confined, and for the most part in the eastern portion of the United States, and some with respect to which there was no proof of any sale whatever; some relate to non-paint products such as floor wax. The remaining proven third party uses . . . in connection with paint sale or manufacture are too inconsequential to establish . . . the claim that appellant's mark has become a weak mark . . . .

*National Lead Co. v. Wolfe*, 223 F.2d 195, 204 (9th Cir. 1955). Offering such evidence on both sides of each third party use cited by Houeix would needlessly extend the length of the trial when it is clear by examining the evidence at this point that the third party uses Houeix has cited do not weaken the SCAD mark as a matter of law. Plaintiff therefore further submits that evidence of these uses should also be excluded at trial under Fed. R. Evid. 403.

- 6 -

## III.   CONCLUSION

For the foregoing reasons, SCAD respectfully requests that Houeix be precluded, pursuant to Fed. R. Evid. 402 and 403, from admitting evidence or raising arguments regarding alleged third party uses of the mark SCAD that are not in the educational services field.

Respectfully submitted this 14th day of September, 2004.

    s/*Stephen J. Butler*
Stephen J. Butler, Esq.
Bar. No. 0010401
Theodore D. Lienesch, Esq.
Bar. No. 0016542
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771

David J. Stewart, Esq.
J. Patrick Elsevier, Esq.
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

David T. Croall
Bar No. 0009149
Rachel E. Burke
Bar No. 0066863
Adele E. O'Conner
Bar No. 0023133
Porter, Wright, Morris & Arthur LLP
Suite 2200
250 East Fifth Street
Cincinnati, Ohio 45202-5117
Telephone: (513) 381-4700
Facsimile: (513) 421-0991

Counsel for Plaintiff Savannah College
Of Art and Design, Inc.

**CERTIFICATE OF SERVICE**

This is to certify that this 14th day of September, 2004, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                             s/*Stephen J. Butler*