# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| SAVANNAH COLLEGE OF ART AND DESIGN, INC., | : | |
| Plaintiff, | : | **CASE No.    C-1-02-490** |
| vs. | : | |
| PHILIPPE HOUEIX, | : | Magistrate Hogan |
| Defendant. | : | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE AND ARGUMENTS REGARDING THIRD PARTY USES IN UNRELATED FIELDS**

Houeix use of *scad* does not compete with the college's sale of educational services. Houeix web site does not sell a service or seek donations. On the inter net *scad* is included in more than sixty domain names of commercial sites and noncommercial or expressive sites.[1]

---

[1] The following is a sampling of the domain names

| | |
|---|---|
| www.scad.com | South Carolina Directory,. southcarolinaonline.com |
| www.scad.org | Smith County Appraisal District, smithcad.org |
| www.scad.ac.jp | Seian College of Art & design |
| www.scad.demon.co.uk | Skipton & Craven action for Disability |
| www.scad.uqam.ca | Service de Consultation en Analyse de Donne's |
| www.scadskaters.org | Skating Club at Dartmouth |
| montic.de/html/scad.html | SCAD-Diving Suspended Catch Air Device |
| scad-group.com | SCAD-Group Copyright claimed |
| www.princeton.edu/scad | Support for Computing in Academic Department |
| scad.utdallas.edu | Systems and Control Archive at Dallas |
| www.rexscad.tripod.com | Supreme Court Advance Decisions |
| www.indexingsociety.ca/accueil.html | Society Canadienne pourl'analyse de documents |
| www,scadeaf.org | South Carolina Association of the Deaf |
| www.dsi.co.krle_scad.html | SCAD$^{TM}$1.0 Korean Corp. & US affiliate |

Websites deal with *Scad* as of a coastal fish that has commercial uses. The acronym SCAD in medicine means **S**hort-Chain **A**cyl-CoA **D**ehydrogenation disorder. In extreme sports, **S**uspended **C**atch **A**ir **D**evice diving has several web addresses using *scad*. SCAD is better known as Simplified CAD, or Structure CAD, engineering applications software, several computer companies have *scad* web addresses.

Plaintiff contends that evidence of unrelated-noncompeting use by third parties is irrelevant to this case. This ignores the dilution prong of the case. The cases[2] cited by Plaintiff are infringement determinations without any consideration of a dilution remedy. The strength of a mark is relevant to both consumer confusion for infringement, and to high level distinctiveness for dilution. In the dilution context of 15 U.S.C. §1125(c), one factor at (1)(G) is "the nature and extent of use of the ...mark by third parties." Reported dilution decisions that apply (1)(G) consider third parties' noncompeting and unrelated use.[3] Consequently Houeix evidence is relevant and admissible.

The legislative schemes for trademark infringement, 15 U.S.C. §1125(a) and trademark dilution, 15 U.S.C. §1125(c) carefully balance rights of the mark owner and the non-infringing user. There are no infringement rights for noncommercial use, noncompetitive use, fair use under 15 U.S.C. §1115(b)(4), and use that is unlikely to confuse a consumer as to the source of the good or service or affiliation with the mark owner. Dilution rights are not limited by consumer confusion, or by noncompetitive use. But dilution is limited by noncommercial use, fair use, and news commentary. The threshold limitation for dilution is the mark must be famous and have a very high degree of distinctiveness. Simply put the mark must be on the level of AUTOZONE, FORD, KODAK, DUPONT, or XEROX. It must attain the level of a household word for the dilution remedy.[4] There must be actual dilution.[5]

---

[2] *Ameritech Inc. V. Am. Information Techs* 811 F.2d 960 (6th Cir. 1987); *Midwest Guaranty Bank v. Guaranty Bank,* 270 F.Supp. 2d 900, 912 (ED Mich 2003); *Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 281 (6th Cir. 1997); *Nat'l Cable Television v. Am. Cinema*, 937 F.2d 1572,1579-1580 (Fed Cir. 1991);*Tisch Hotels v. Americana Inn,* 350 F.2d 609, 614 (7th Cir. 1965); *National Lead Co. v. Wolfe*, 223 F.2d 195 (9th Cir. 1995)

[3] See for example *Avery Dennison v. Sumpton*, 189 F.3d 868, 875, 878 (9th Cir. 1999) a domain name decision, where evidence of third party interenet use of *Avery* and *Dennison* was admitted.

[4] See *Thane International, v. Trek Bicycle,* 305 F.3d 894, (9th Cir. 2002) discusses the legislative history of 15U.S.C. 1125(c) noting that the mark must have a special *aura;* examples of dilution would be *DUPONT shoes,*

If the mark *scad* is not strong, there is little likelihood of confusion as to the college's affiliation with Houeix's web site, for the trademark infringement claim, 15 U.S.C. §1125(a). If the mark does not have the highest level of distinctiveness, there is no dilution under 15 U.S.C. §1125(c). Distinctiveness for dilution is much greater that distinctiveness for trademark registration.[6]

The college argues that any use of *scad* in a domain name, even noncommercial use such as occurs at *scad.info, scad.org* and *scad.com*, is infringement or dilution. In its motion it seeks exclusion of the evidence that sixty or more web sites use *scad* in their domain names, of evidence of the many registered businesses having *scad* in their names,[7] and the evidence of the expressive

---

*BUICK aspirin and KODAK pianos. A mark will achieve broad-based fame* only if a large *portion of the general consuming public recognizes that mark. ....the mark must be a household name.* In *Avery Dennison v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) it was noted *Dilution is a cause of action invented and reserved [\*\*13] for a select class of marks - those marks with such powerful consumer associations that even non-competing uses can impinge on their value.* At page 876 it noted *to be capable of being diluted, a mark must have a degree of distinctiveness and 'strength' beyond that needed to serve as a trademark.* Citing 3 McCarthy, *at* § 24:109.

[5] *Autozone v. Tandy,* 373 F. Supp. 786, 804 (6th Cir. 2004); *Moseley v. V Secret Catalogue,* 537 U.S. 418, 123 S. Ct.1115 (2003)

[6] See ft. nt. 4, supra, page 876

[7]

| STATE | REGISTERED NAME |
|---|---|
| California | SCAD International Trading, Inc. |
| Illinois | SCADAWARE, Inc |
| Ohio | Scad Management, Inc. |
| Oregon | S.C.A.D. Industries |
| Indiana | SCAD's Enterprises Inc |
| Arizona | SCADA, Inc. |
| Arizona | SCADAPRO, Inc. |
| Texas | Metso Automation Scada Solutions |
| Georgia | SCAD Oaks, Inc. |
| Florida | SCAD, Inc. |
| Florida | SCAD Company LTD |
| Florida | SCADA Communication Systems, Inc. |
| Florida | SCADAS, Inc. |
| Florida | SCADA Services, Inc. |
| Florida | SCAD Holdings, Inc. |
| Florida | SCAD Partners, LTD |
| Florida | SCADS Leasing, Inc. |
| Louisiana | SCADA Specialist, Inc. |
| Nevada | Metso Automation Scada Solutions |

use of *scad* on the inter net. A printout of USPTO records show nineteen other entities that applied for registration of trademarks containing *SCAD*.

Out side of Savannah Georgia. *scad* is not automatically associated with Plaintiff school, the college may have niche fame in Savannah Georgia, but that never rises to the high level distinctiveness required for dilution.

Contrary to the college's assertion, the majority view in the Sixth Circuit is that any use by third parties of a mark is relevant to a determination of confusion for infringement.[8]

For these reasons the Plaintiffs Motion in limine to exclude evidence of third party use must

---

| | |
|---|---|
| Nevada | SCADS, Inc. |
| Tennessee | SCADA Design Specialist |
| New Mexico | SCADA Source, LLC |
| Wyoming | SCADA Comm, Inc. |
| Michigan | SCAD Incorporated |
| Arkansas | Metso Automation Scada Solutions, Inc. |
| Maryland | SCAD, Inc. |
| Maryland | SCAD, Inc. |
| New York | SCAD Inc. |
| New York | SCAD Promotions, Inc. |
| New York | SCADA Systems, Inc. |
| South Carolina | SCADA Insurance Agency, Inc. |
| South Carolina | SCAD, Inc. |
| Pennsylvania | SCADA Solutions |
| North Dakota | Metso Automation Scada Solutions, Inc. |

[8] See *Data Concepts,* 150 F.3d 620, 625 (6th Cir. 1998); *Big Time Worldwide Concert & Sport Club v. Marriott International, Inc.*, 236 F. supp. 791, 799, 800 (E.D. Mich 2003). "The greater the number of identical or more or less similar trade-marks already in use on **different kinds of goods,** the less is the likelihood of confusion. Indeed, courts have found extensive third-party uses of a trademark to substantially weaken the strength of a mark." *Homeowners Group v. Home Marketing Specialists*, 931 F.2d 1100, 1108, (6th Cir.1991). "In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." 2 McCarthy, *Trademarks* § 11:85.

be over ruled.

                                                Respectfully submitted,

                                                /s/ John A.. Rebel
                                                John A. Rebel (0031771)
                                                Attorney for Defendant
                                                McKinney & Namei
                                                15 E. 8th St.
                                                Cincinnati, Ohio 45202
                                                (513) 721-0200, Fax: 513- 632-5898

                              **Certification of Service**

     The foregoing was served electronically on plaintiff's attorneys of record, on this 23rd day of September, 2004 .

                                                /s/ John A.. Rebel
                                                John A. Rebel (0031771)
                                                Attorney for Defendant