IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,

               Plaintiff,

    v.

PHILIPPE HOUEIX,

               Defendant.

CASE NO. C-1-02 490

Magistrate Judge Hogan

**FINAL PRETRIAL STATEMENT**

This matter came before the Court at a Final Pretrial Conference held on

September 28, 2004 at 3:00 p.m., pursuant to Federal Rules of Civil Procedure 16.

**I.    APPEARANCES:**

    1.  For Plaintiff:

- Stephen J. Butler
  Thompson Hine LLP
  312 Walnut Street
  Cincinnati, Ohio 45202-4089
  Telephone:  (513) 352-6700
  Facsimile:  (513) 241-4771

- David J. Stewart and J. Patrick Elsevier
  Alston & Bird, LLP
  1201 West Peachtree St.
  Atlanta, Georgia 30309-3424
  Telephone: (404) 881-7000
  Facsimile: (404) 881-7777

- David T. Croall
  Porter Wright Morris & Arthur LLP
  250 East Fifth Street
  Suite 2200
  Cincinnati, OH 45202-5117
  Telephone: (513) 381-4700
  Facsimile: (513) 421-0991

2.  For Defendant:

- John A. Rebel
  McKinney & Namei
  15 E. 8th St.
  Cincinnati, Ohio 45202
  (513) 721-0200
  (513) 632-5898

## II.    NATURE OF ACTION AND JURISDICTION

1.  This is an action for false designations of origin, false descriptions, and false representations in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a); federal service mark dilution arising under Section 43(c) of the Trademark Act of 1946, 15 U.S.C. § 1125(c); and cyberpiracy under the Anticybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d). Plaintiff Savannah College of Art and Design, Inc. ("SCAD") seeks permanent injunctive relief, as well as damages, costs, and reasonable attorneys' fees.

2.  The jurisdiction of the Court is invoked under Title 15 United States Code, Section 1121 and pursuant to Title 28 United States Code, Sections 1331, 1337 and 1338, because this case arises under the Trademark Act of 1946, 15 United States Code Sections 1-51, et seq.

3.  The jurisdiction of the Court is not disputed.

4.  The parties have consented to entry of final judgment by the United States Magistrate Judge.

5.  Defendant reserves its right to seek reasonable attorney fees, if the prevailing party under 15 U.S.C. § 1125.

## III.    TRIAL INFORMATION

1.  The estimated length of trial is two days.

2.  Trial to the court has been set for 10:00 am on October 6, 2004 in Courtroom 701 before Magistrate Timothy S. Hogan.

3.  Initial explanation of the case.

- Plaintiff's Initial Explanation of the Case is attached hereto as Appendix H.

- Defendant's Initial Explanation of the Case is attached hereto as Appendix I.

## IV.    AGREED STATEMENT AND LISTS:

1. <u>General Nature of the Claims of the Parties</u>:

    a.  PLAINTIFF CLAIMS:

Plaintiff asserts in Count I a right of recovery for false designations of origins, false descriptions, and false representations in interstate commerce in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

Plaintiff asserts in Count II a right of recovery for trademark dilution in violation of the Federal Dilution Act of 1995, 15 U.S.C. s 1125(c).

Plaintiff asserts in Count III a right of recovery for cyberpiracy in violation of Section 43(d) of the Trademark Act of 1946, 15 U.S.C. § 1125(d).

    b.  DEFENDANT CLAIMS:

Defendant denies liability for trademark infringement by use of the mark, *scad*, in the domain names of *scad.info* and *scad-&-us.info* for the following reasons:

    (1) Defendant did not use the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services, and

    (2) Defendant did not use the mark in a manner likely to confuse consumers as to the source or sponsorship of goods or services, because:

        a.  The mark is not a strong mark given the numerous other users.

        b.  There is no relatedness of goods or services since the parties do not compete.

        c.  There is no actual confusion about the source of goods or services. Moreover confusion cannot be presumed, there is no intent to trade on or derive a benefit from Plaintiff's mark. The sophistication of the students interested in Plaintiff's education services reduces the likelihood of confusion that Defendant's web site is affiliated with Plaintiff.

Defendant denies liability for dilution of the Plaintiff's mark, for the following reasons:

    (1) The mark is not famous, nor distinctive.

    (2) The mark is not used commercially by Defendant.

    (3) Defendant has not caused dilution of the distinctive quality of the mark.

Defendant affirmatively denies liability for dilution of the Plaintiff's mark for the following reasons:

(1) Defendant's use is fair use because it only identifies the owner of the mark in criticizing the owner's administrative conduct (as opposed to its educational services).

(2) Defendant's use is non-commercial use.

(3) Defendant's use to a large extent is news commentary.

Defendant denies liability for Cyberpiracy for the following reasons:

(1) Defendant has no bad faith intent to profit from the use of Plaintiff's mark.

(2) Defendant's use is fair use and non-commercial use.

(3) Defendant's use does not disparage or tarnish the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement to his web site.

(4) Defendant at all times believed that use of the domain name was fair use and lawful.

Defendant reserves its right to seek reasonable attorney fees, if the prevailing party under 15 U.S.C. § 1125.

2.  <u>Uncontroverted Facts</u>:

The following facts are established by admissions in the pleadings or by stipulations of counsel:

1)  Since 1978, SCAD has offered high quality instruction at the college level in the fields of design, the visual and performing arts, the building arts, and the history of art and architecture.

2)  SCAD draws students from all over the United States and from more than eighty countries worldwide, many of whom seek information about SCAD via the Internet.

3)  SCAD's current enrollment is approximately 5,700 students.

4)  Since its inception, SCAD has continuously used the term "SCAD" in interstate commerce as a service mark to identify college-level education services.

5)  The SCAD mark is distinctive and arbitrary in Savannah and Atlanta Georgia in as much as it is an acronym for the college's full name, "Savannah College of Art and Design."

6)  SCAD uses its SCAD name and mark as a trademark to identify a variety of goods, including clothing, notebooks, journals, deskpads, and other imprinted materials.  (SCAD's service mark and trademark rights are referred to collectively hereinafter as the "SCAD Mark").

7)  SCAD has used the e-mail address info@scad.edu as its general e-mail address for persons seeking information about the College since at least as early as 1998.

8)  SCAD operates a heavily trafficked Internet web site under the domain name SCAD.EDU that provides detailed information about the college and its goods and services.

9)  The SCAD.EDU domain name also serves as the address for SCAD's internal Intranet, which in part serves to facilitate dialogue by and among SCAD's students and faculty regarding the college.

10) In May 2002, the SCAD.EDU web site received more than 2.39 million hits, more than 1.35 million of which were from off-campus Internet users.

11) For years, SCAD has engaged in substantial international advertising and promotional efforts, many of which prominently feature the SCAD mark and/or SCAD.EDU domain name.

12) SCAD's annual advertising expenditures are nearly half-a-million dollars.

13) Advertisements for Savannah College of Art and Design and its services have appeared regularly for years in such well known and widely distributed publications as *The New York Times, Chicago Tribune, Los Angeles Weekly, The Atlanta Journal Constitution, London Modern Painter, The Strait Times (Singapore), The Village Voice*, and many others.

14) SCAD owns valid and enforceable trademark and service mark rights for use throughout Savannah and Atlanta Georgia in the mark that it acquired prior to Defendant's registration of the domain name <scad.info>.

15) By virtue of SCAD's long-term and substantial promotion and use of its SCAD Mark throughout the state of Georgia, the SCAD Mark is famous in Savannah and Atlanta Georgia.

16) On February 11, 2002, SCAD was issued a Certificate of Registration, No. 2,686,644, for the SCAD Mark by the United States Patent and Trademark Office (the "USPTO") for education services, namely providing instruction and training at the undergraduate, graduate and post-graduate levels. SCAD applied for registration of the mark on January 31, 2002.

17) The Internet is an international network of interconnected computers used by more than 100 million individuals, companies, organizations, and educational institutions worldwide to exchange data, information, and ideas.

18) Although the Internet permits a variety of communication, the best-known category of communication is the "World Wide Web" (the "web").  To post

- 5 –

content on the web, a user must have an Internet domain name, which serves as an address through which a user's web site can be located.

19) The web "address" for a site typically consists of the letters "www" and a domain name (e.g., SCAD.EDU). Domain names consist of at least two parts: a top-level domain (e.g. ".EDU") and a second-level domain (e.g. "SCAD").

20) The ".info." top-level domain is one of several top-level domains that are unrestricted and open to registration by any Internet user.

21) The ".info" top-level domain is widely viewed by Internet users as a domain that can be used to find information regarding particular companies or institutions (e.g., information about Xerox Corporation can be found at XEROX.INFO).

22) Register.com, Inc. is one of several registrars that are authorized to register domain names in the ".info" top-level domain.

23) Register.com registers domain names on a first-come, first-served basis, and makes no determination as to whether an applicant has rights in the desired domain name.

24) Defendant Philippe Houeix ("Houeix") is a former faculty member at SCAD.

25) Houeix resigned from SCAD's faculty on September 14, 2001.

26) On October 29, 2001, Houeix registered the domain name SCAD.INFO.

27) Shortly after registering the SCAD.INFO domain name, Houeix and began using the domain name to host a web site that is critical of SCAD.

28) An alumnus of SCAD has expressed that she was briefly confused after accessing Houeix's web site when she was looking for SCAD's web site.

29) Houeix's web site contains links to certain other web pages. One link is to "www.worldstudent.com/uk/mag/features/accreditation.shtml," which has pop-up links that are clearly labeled which change every few seconds and which link to web sites for other universities and for college placement services. At times, Houeix's web site is linked to teacher and student forum pages at "www.savannahnow.com/ubb/Forum7/HTML/000182.html;" "http://teachers.net/mentors/higher_education/topic257/6.11.01.13.16.39.html ;" and "http://pub97.ezboard.com/ffailure75800frm1.showMessage?topic ID=89.topic." Currently Houeix's web site is linked to SCAD student forum groups at "http://groups.yahoo.com/group/scad3/interrupt?st=2&m=1&done =%2Fgroup%2Fscad3%2Fmessage%2F44" and "www.livejournal.com/ community/scad-community/30659.html.".

30) An Internet user who intends to access a party's products or services, but who has not done so before, may go to a search engine to locate the party's web site.

31) Searches for Plaintiff's web page on popular Internet search engines, list Plaintiff's web site as their first or second "hit."

32) Houeix's web site does not use metatags to misdirect Internet users of search engines using the keyword "scad," to his web site.

3.  Issues of Fact and Law:

    a.  CONTESTED ISSUES OF FACT:  The contested issues of fact remaining for decision are:

    1)  Whether Defendant has used the SCAD Mark in commerce on or in connection with any goods or services.

    2)  Whether the Defendant's use of the SCAD Mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods, services or commercial activities by SCAD.

    3)  Whether the SCAD Mark is a strong mark.

    4)  The degree of relatedness of Defendant's Web site and Plaintiff's web site.

    5)  The degree of similarity between the Defendant's and Plaintiff's marks.

    6)  Whether any actual confusion has occurred.

    7)  The relatedness of the marketing channels and target audience.

    8)  The likely degree of care exercised by current or potential art students, parents, staff, faculty members and other members of the public interested in news or information about SCAD.

    9)  Whether Defendant chose the SCAD.INFO domain name with the intent to trade upon or derive a benefit from the SCAD Mark.

    10) Whether the SCAD Mark is famous.

    11) Whether, and in what geographic regions, the SCAD Mark is distinctive.

    12) Whether Houeix's use of the SCAD.INFO domain name causes dilution of the SCAD Mark.

13) Whether Defendant has registered or used the SCAD.INFO domain name with the bad faith intent of profiting from the SCAD Mark.

14) Whether the sophistication of the students interested in Plaintiff's education services reduces the likelihood of confusion that Defendant's site is affiliated with Plaintiff.

15) Whether Defendant's use is fair use.

16) Whether Defendant's use of the SCAD Mark is limited to identifying the owner of the mark in connection with criticizing the owner's administrative conduct.

17) Whether Defendant's use of the SCAD Mark is limited to news commentary.

18) Whether Defendant's use of the SCAD mark disparages or tarnishes the mark.

19) Whether Defendant believed at all times that his use of the SCAD.INFO domain name was a fair use and lawful.

20) Whether the Defendant's use of the SCAD mark is commercial use.

21) Whether any college or university uses the TLDN ".info" for its domain name.

22) What was Defendant's intent upon opening of his web site?

23) Whether in excess of 99.5% of U. S. colleges and universities have their web sites located in the TLDN of .*edu*.

24) Whether the TLDN of .*edu*  TLDN is limited to colleges or universities.

25) Whether Defendant's web site offers for sale any goods, services or ideology, or solicits donations.

26) Whether Defendant's web site deceives visitors by use of the mark *scad* or a similar mark to link to any other web site.

27) Whether Defendant's web site uses metatags to misdirect internet users of search engines using the keyword *scad*, to his web site.

28) Whether Defendant is likely to begin competing with the college in the provision of art and design education.

b. CONTESTED ISSUES OF LAW:  The contested issues of law in addition to those implicit in the foregoing issues of fact are:

- 8 –

1) Whether Defendant's use of the SCAD.INFO domain name and associated web site and other actions constitute use of false designations or origins, false descriptions, and false representations in interstate commerce in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

2) Whether Defendant's use of the SCAD.INFO domain name and associated web site and other actions diluted the distinctive quality of the SCAD Mark in violation of 15 U.S.C. § 1125(c).

3) Whether Defendant's use of the SCAD.INFO domain name and associated web site and other actions constitute cyberpiracy in violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d).

4) Whether as a result of Defendant's actions, Plaintiff is entitled to an injunction ordering Defendant to transfer the SCAD.INFO domain name to Plaintiff.

5) Whether as a result of Defendant's actions, Plaintiff is entitled to an injunction permanently enjoining Defendant, his agents, employees, attorneys and/or representatives, and all those in active concern or participation with him, from:

    i. registering, seeking to register or using any domain name that incorporates the term "SCAD," any of SCAD's marks, or any term, mark, or name confusingly similar thereto;

    ii. adopting, using, or registering as a trade name, corporate name, service mark, e-mail address, meta-tag, or keyword any name or mark that incorporates the SCAD Mark or any term, name, or mark confusingly similar thereto;

    iii. passing off or inducing or enabling others to sell or pass off any goods, services, Internet web sites, or e-mail addresses that are not authorized by SCAD as and for goods, services, web sites, or e-mail addresses that are sponsored or endorsed by, associated with, or affiliated with SCAD; and

    iv. otherwise diluting the distinctive quality of the SCAD Mark; otherwise infringing the SCAD Mark; and otherwise violating the Anti-Cybersquatting Consumer Protection Act;

6) Whether, pursuant to Section 36 of the Trademark Act of 1946, 15 U.S.C. § 1118, as a result of Defendant's actions, Plaintiff is entitled to have the Court order the Defendant to transfer to Plaintiff the SCAD.INFO domain name.

7) Whether a linked website that carries or may carry advertisements is too remote for the purposes of establishing "use in connection with commerce" and to refute "noncommercial use".

The following are issues which Defendant believes to be relevant issues of law for trial but which Plaintiff does not:

1) Do First Amendment rights protecting expressive or communicative speech prevail over trademark rights if the alleged infringer is not selling a product, service or ideology, and not soliciting donations?

2) Does a web site (with the mark in its domain name) that has no offers for sale or advertisement, but links to a similar web page with commentary, but without advertisements, which in turn links to a third web page which may have advertisements or offers for sale, constitute use connected with commerce?

3) Does a non-commercial commentary web site (with the mark in its domain name) that links to a second non-commercial communicative web page, which is apart of a larger web site which may contain commercial web pages, constitute use connected with commerce?

4) Must the circumstances of numerous other users of the mark, both within and without the area of protected use, be considered in the determination of a strong mark, a famous mark and a distinctive mark, for both the infringement and dilution claims?

5) Is trademark use of a domain name of a website used wholly for communicative purposes and not used to identify the source of a product or service, use in connection with commerce?

6) Is Defendant entitled to reasonable attorney fees if he is the prevailing party?

4.  Witnesses

a.  Plaintiff will call or will have available for testimony at trial those witnesses listed on Appendix B hereof.

b.  Defendant will call or will have available for testimony at trial those witnesses listed on Appendix C hereof.

c.  The parties reserve the right to call nonlisted rebuttal witnesses whose testimony could not reasonably be anticipated without prior notice to opposing counsel.

**INSTRUCTIONS:**  Leave to call additional witnesses may be granted by the Court in unusual situations.  Counsel seeking such leave must file a Motion to Add Witnesses and serve a copy upon opposing counsel with names, addresses, and an offer of proof of such witness's testimony at least five (5) days prior to trial.

5.  Expert Witnesses

The parties do not expect to call any expert witnesses.

6.  Exhibits

The parties will offer as exhibits those items listed herein as follows:

a.  Joint Exhibits – Appendix E

b.  Plaintiff Exhibits – Appendix F

c.  Defendant Exhibits – Appendix G

**INSTRUCTIONS:**  The above exhibits will be deposited with the Court at trail.  Exhibit markers obtainable from the Courtroom Deputy Clerk should be affixed to the upper right corner.  In all cases, two additional sets of all exhibits for use of the Court and opposing counsel will be required.  All sets should be bound and tabbed.

7.  Depositions

Testimony of the following witnesses may be offered by deposition/videotape:

- Sarah Talreja

8.  Discovery

Discovery has been completed, with the exception that Defendant has requested in discovery Plaintiff's written response to Southern Association of Colleges and Schools inquiry concerning Defendant's allegation of fraudulent grade scheme. Plaintiff has objected to producing the response because it is not relevant to any issue in this lawsuit, and the subject of the relevance of the issues are before the court on Plaintiff's motion in limine.  Defendant has not moved to compel production of the document.

9.  Pending Motions

Plaintiff has two pending motions in limine.  The first addresses the admissibility of evidence related to Defendant's allegations that Plaintiff has engaged in a fraudulent grading scheme.  The second addresses the relevance of third party uses of "SCAD" outside the field of educational services.

10. Miscellaneous Orders

Defendant will apply that a computer with Internet capacity and a printer be present in the courtroom.  Defendant will demonstrate the result of Internet searches using the keyword "scad."  Plaintiff reserves the right to oppose Defendant's motion for such an order, but Plaintiff may join in a motion to use a computer with Internet capacity at trial to demonstrate the content of Defendant's site and the content of sites linked to Defendant's site.

**V.    MODIFICATION**

This Final Pretrial Order may be modified at the trial of this action, **or prior** thereto, to prevent manifest injustice.  Such modification **may** be made by application of counsel, or on motion of the Court.

**VI.    SETTLEMENT EFFORTS**

Settlement negotiations are still ongoing at this time, but settlement appears doubtful.

**VII.    PROPOSED INSTRUCTION - TRIAL TO A JURY**

This trial is to be a bench trial and, therefore, jury instructions are unnecessary.


Date:    September 24, 2004.


_____          _____
Date                                     TIMOTHY S. HOGAN
                                         U.S. MAGISTRATE JUDGE

ATL01#11745239v1

9/24/2004
_____
Date

    /s/Stephen J. Butler___
Stephen J. Butler, Esq.
Bar. No. 0010401
Theodore D. Lienesch, Esq.
Bar. No. 0016542
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone:  (513) 352-6700
Facsimile:  (513) 241-4771

David J. Stewart, Esq.
J. Patrick Elsevier, Esq.
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

David T. Croall
Bar No. 0009149
Rachel E. Burke
Bar No. 0066863
Adele E. O'Conner
Bar No. 0023133
Porter, Wright, Morris & Arthur LLP
Suite 2200
250 East Fifth Street
Cincinnati, Ohio 45202-5117
Telephone: (513) 381-4700
Facsimile: (513) 421-0991

Counsel for Plaintiff Savannah College Of Art
and Design, Inc.

ATL01#11745239v1

9/24/2004                                        /s/ John A. Rebel
———————————————————
Date                                             John A. Rebel
                                                 McKinney & Namei
                                                 15 E. 8th St.
                                                 Cincinnati, Ohio 45202
                                                 (513) 721-0200
                                                 (513) 632-5898

                                                 Counsel for Defendant
                                                 Philippe Houeix

ATL01#11745239v1

**APPENDIX B**

PLANTIFF'S WILL CALL WITNESSES

| NAME | ADDRESS |
| --- | --- |
| Brian Murphy | 342 Bull Street<br>Post Office Box 3146<br>Savannah, GA  31402-3146 |
| Philippe Houeix | 635 Tennessee Apt. 4<br>San Francisco, CA 94107 |

PLANTIFF'S MAY CALL WITNESSES

| NAME | ADDRESS |
| --- | --- |
| Nancy Tanenberg | 342 Bull Street<br>Post Office Box 3146<br>Savannah, GA  31402-3146 |

– 15 –

**APPENDIX C**

DEFENDANT WITNESSES

| NAME | ADDRESS |
| --- | --- |
| Philippe Houeix | 635 Tennessee Apt. 4<br>San Francisco, CA 94107 |
| Kristin M. Crabb | |

**APPENDIX E**

JOINT EXHIBITS OF PLAINTIFF AND DEFENDANT

| Exhibit ID | DESCRIPTION |
| --- | --- |
| J-1 | Printout of scad.info home page |
| J-2 | Printout of scad-and-us.info home page |
| J-3 | Printout of web page located at "www.livejournal.com/community/scad-community/30659.html" |
| J-4 | Printout of web page located at "groups.yahoo.com/group/scad3/message44 |

– 17 –

# APPENDIX F

## EXHIBITS OF PLAINTIFF

| Exhibit ID | DESCRIPTION |
|---|---|
| P-1 | Certificate of Registration for SCAD Mark, Registration No, 2,686,644 |
| P-2 | Composite Exhibit:  Photocopies of SCAD Branded Merchandise |
| P-3 | Photo and Description of SCAD Trustees Theatre |
| P-4 | Verisign WHOIS Search Result for SCAD.EDU domain name registration |
| P-5 | Color Brochure for the SCAD Parents Association |
| P-6 | Color Savannah College of Art and Design Money Matters Newsletter |
| P-7 | Color SCAD Athletics Creating Champions Brochure |
| P-8 | Color Brochure for Trustees Theatre – Lucas Theatre For The Arts 2002-2003 Season |
| P-9 | Color Program for Trustees Theatre – Lucas Theatre For The Arts 2002-2003 Season |
| P-10 | Color SCAD Digital Media Brochure |
| P-11 | Color 2002-03 Campus Visitation Days Mailer |
| P-12 | Color Savannah College of Art and Design Daily Campus Tours Mailer |
| P-13 | Color Looking For SCAD Artists Mailer |
| P-14 | Color The Campus Newsletter |
| P-15 | Color Savannah College of Art and Design Historic Preservation Brochure |
| P-16 | Color SCAD 2002 Athletics Schedule |
| P-17 | Color SCAD Spring 2001 Media Guide |
| P-18 | Color Savannah College of Art and Design Viewbook |
| P-19 | Savannah College of Art and Design Catalog |
| P-20 | Savannah College of Art and Design "See Your Dreams" Poster |
| P-21 | SCAD T-Shirt (Real T-Shirt to be used at trial) |
| P-22 | Property Of SCAD Bees Basketball T-Shirt (Real T-Shirt to be used at trial) |
| P-23 | SCAD Baseball Cap (Real hat to be used at trial) |
| P-24 | SCAD Sports Bottle (Real bottle to be used at trial) |
| P-25 | SCAD Keytag (Real keytag to be used at trial) |
| P-26 | SCAD Bandanna (Real bandanna to be used at trial) |
| P-27 | SCAD Pennant (Real pennant to be used at trial) |
| P-28 | SCAD Stickers (Real stickers to be used at trial) |
| P-29 | Composite Exhibit of National Newspaper Advertisements for SCAD |
| P-30 | Composite Exhibit of Local Newspaper Advertisements for SCAD |
| P-31 | Magazine Advertisement for SCAD |
| P-32 | Composite Exhibit of Newspaper Articles about SCAD |
| P-33 | Composite Exhibit of Burrelle's Information Services transcripts from TV and Radio Sportscast regarding SCAD |
| P-34 | Burrelle's Information Services transcript from news article from The |

| | Star Online (Berhad, Malaysia) placed on the World Wide Web |
|---|---|
| P-35 | Printout of SCAD.EDU Home Page |
| P-36 | Letter dated March 20, 1999, from Nathalie and Philippe Houeix to SCAD |
| P-37 | Letter to Philippe Houeix from Harley Lingerfelt |
| P-38 | Verisign WHOIS Search Result for SCAD.INFO domain name registration |
| P-39 | Verisign WHOIS Search Result for SCAD-AND-US.info domain name registration |
| P-40 | Printout from SCAD.INFO Home Page dated 01/23/2002 |
| P-41 | Printout from SCAD.INFO Home Page dated 10/17/2002 |
| P-42 | Printout from SCAD.INFO Home Page dated 07/21/2003 |
| P-43 | Printouts from SCAD.INFO Web Site (Letters of Students) dated 09/01/2004 |
| P-44 | Printouts from SCAD.INFO Web Site (Emails of the Week) dated 09/01/2004 |
| P-45 | Printout from WORLDSTUDENT.COM Home Page dated 10/17/2002 |
| P-46 | Composite Exhibit Printouts from WORLDSTUDENT.COM web site |
| P-47 | Printout from SCAD.INFO.futuresite.register.com/ Home Page |
| P-48 | Printout from WEBSITENOW.COM Home Page |
| P-49 | Printout from REGISTER.COM Home Page |
| P-50 | Printout from SCAD-AND-US.INFO Home Page |
| P-51 | E-mail from Sarah Talreja to Nancy Taneberg dated 27 June 2002 |
| P-52 | E-mail dated October 29, 2001 from invoice@register.com to houiex@gateway.net |
| P-53 | Printout from YAHOO.COM web site |
| P-54 | Printout from YAHOO.COM web site dated 11/25/2003 |
| P-55 | Color Printout from LIVEJOURNAL.COM web site |
| P-56 | Printout of the home page of the Rutgers University web site, located at the URL www.rutgers.info |
| P-57 | Printout of the home page of the Brigham Young University web site, located at the URL www.byu.info |
| P-58 | Printout of home page of J.W. McClure School of Communications Systems Management at Ohio University, located at the URL www.mcclureschool.info |
| P-59 | Printout of the home page of the Georgetown University Maternal and Child Health Library web site, located at the URL www.mchlibrary.info |
| P-60 | Printout of the home page of the Michigan State University College of Law Animal Legal & Historical Center web site, located at the URL www.animallaw.info |
| P-61 | Printout of the home page of the University of Massachusetts Center for Information Technology and Dispute Resolution web site, located at the URL www.odr.info |
| P-62 | Printout of the home page of the web site of the Einstein Papers Project at the California Institute of Technology, located at the URL |

| | |
|---|---|
| | www.alberteinstein.info |
| P-63 | Printout of the home page of the San Diego State University faculty and student news site, located at the URL www.sdsuniverse.info |
| P-64 | Printout of the Arizona State University basketball program web site, located at the URL www.asu.info |
| P-65 | Printout of the home page of the web site of the Phenomenology Institute at the University of Wisconsin, located at the URL www.pheno.info |
| P-66 | Printout of home page of Cornell College web site, located at the URL www.cornellcollege.info |
| P-67 | Printout of the home page of the Southern Regional Forestry web site, a collective effort of a number of universities, including Auburn, LSU, Georgia, Florida and Kentucky, located at the URL www.sref.info |
| P-68 | Printout of the home page of the web site of Golden West College, located at the URL www.gwc.info |
| P-69 | Printout of the home page of the Western International University web site, located at the URL www.wintu.info |
| P-70 | Printout of the home page of the University of Phoenix, located at the URL www.uofphx.info |
| P-71 | Printout of the home page of the Devry University web site, located at the URL www.devry-university-101.info |
| P-72 | Printout of the home page of the Statistical and Applied Mathematical Sciences Institute, an partnership of the Duke University, North Carolina State University, and the University of North Carolina, among others, located at the URL www.samsi.info |
| P-73 | Printout of home page of the University of Colorado Cancer Center, located at the URL www.uccc.info |
| P-74 | Printout of pages of search results of search on the term "scad" in Yahoo! search engine |
| P-75 | Printout of pages of search results of search on the terms "scad college" in Yahoo! search engine |
| P-76 | Printout of pages of search results of search on the term "scad" in MSN search engine |
| P-77 | Printout of pages of search results of search on the terms "scad college" in MSN search engine |
| P-78 | Printout of pages of search results of search on the term "scad" in Google search engine |

# APPENDIX G

## EXHIBITS OF DEFENDANT

| Exhibit ID | DESCRIPTION |
|---|---|
| D-1 | CPR Institute for Dispute Resolution CPR 0206 Savannah College Art & Design v. Houeix – Decision |
| D-2 | scad.info home page |
| D-3 | scad-&-us.info home page |
| D-4 | Link:  Article about Savannah College Art & Design: Lingua Franca  Sinister Design |
| D-5 | Link:  Article about Savannah College Art & Design: Crime |
| D-6 | Link:  Positions & decisions of educative organizations |
| D-7 | Link:  Securitycampus.org |
| D-8 | Link:  www.worldstudent.com/uk/mag/features/accreditation.shtml  web page |
| D-9 | Link:  http://teachers.net/mentors/higher_education/topic 257/6.11.01.13.16.39.html   forum |
| D-10 | Link:  www.livejournal.com/community/scad-community/30659.html forum web page |
| D-11 | Link:  groups.yahoo.com/group/scad3/message44   forum for scad students web page |
| D-12 | Link:  Savannah College Art & Design Testimonies |
| D-13 | Link:  Dossier/My Case |
| D-14 | Link: Link:  Details and Documents |
| D-15 | Link: Link: Link: Houeix's Faculty Schedule Fall 2000 to Summer 2001 |
| D-16 | Link: Link: Link: Houeix's Student Schedule Fall 2000 to Summer 2001 |
| D-17 | Link: Link: Link: Houeix's Grade Transcript Fall 2000 to Summer 2001 |
| D-18 | Link: Link: Link: Houeix's Grade Report Winter 2001 |
| D-19 | Link: Link: Link: Houeix's Grade Report  Summer 2001 |
| D-20 | Grade changes |
| D-21 | Tray Crow's e-mails (discovery from Plaintiff) |
| D-22 | Summary of web searches |
| D-23 | Summary of business entities registered by various states |
| D-24 | Summary of trademark registration application of scad |

**APPENDIX H**

PLAINTIFF'S INITIAL EXPLANATION OF THE CASE

Plaintiff Savannah College of Art and Design ("SCAD") is one of the best known and most widely respected institutions of higher learning devoted to art and design in the United States.  Since its inception, SCAD has continuously used the term "SCAD" in interstate commerce as a service mark to identify its college-level education services and as a trademark to identify a variety of goods, including clothing, notebooks, journals, desk pads, and other printed materials.  (SCAD's service mark and trademark rights are hereinafter referred to collectively as the "SCAD Mark.")  In recognition of SCAD's exclusive rights in its SCAD Mark, the United States Patent and Trademark Office has issued SCAD Certificate of Registration, No. 2,686,644, for the mark.

SCAD operates a heavily trafficked Internet Web site under the domain name <scad.edu> that provides detailed information about the college and its goods and services.  SCAD has used the e-mail address info@scad.edu as its general e-mail address for persons seeking information about the College since at least as early as 1998.  Defendant Philippe Houeix is a former faculty member at SCAD.  Shortly after leaving his employment with SCAD, Houeix registered the domain name <scad.info> and began using the domain name to host a Web site that contains information that is critical of SCAD, its faculty members and administration, and that is often blatantly false, if not libelous.  Houeix admits that he registered <scad.info> knowing and intending that Internet users looking for SCAD's Web site on the Internet would find his site instead.  Not until such customers actually go to Defendant's web site and read its content can they determine that the Houeix's site is not affiliated with SCAD.

- 22 –

Houiex's use of Plaintiff's SCAD mark creates initial interest confusion in that it is designed to lure, and indeed has lured, prospective students, parents and faculty members to Houeix's site when they believed they were going to a SCAD authorized or associated Web site.  Houeix has undertaken his actions in bad faith and with an intent of injuring SCAD and its business reputation.  Houeix's actions thus infringe and dilute SCAD's marks in violation of the Federal Trademark Act of 1946, 15 U.S.C. §§ 1125(a) and (c), and constitute cyberpiracy in violation of the Anticybersquatting Consumer Protection Act.  15 U.S.C. § 1125(d).

**APPENDIX I**

DEFENDANT'S INITIAL EXPLANATION OF THE CASE

Plaintiff, Savannah College of Art and Design, Inc., claims trademark rights in *SCAD* as used by Defendant, Philippe Houeix, at his web site with the domain name of *scad.info*. Defendant's web site comments on his involvement in Plaintiff's scheme to award a fraudulent master degree. His narrative has him receiving A's and B's for eleven graduate courses. He never attended these classes, never prepared art projects. A few of the classes did not exist. Houeix's teaching schedule conflicted with several graduate classes scheduled.

The web site presents documents: class schedules, report cards, and copies of e-mails. The documents verify Houeix's narrative. The web site links to student and teacher forum web pages that discuss the problems at the college. There is a link to a web page that presents general information on the accreditation of schools in many different countries. The links to the web pages are clearly labeled and non-deceptive. They do not confuse a user into believing that the link goes to a Savannah College of Art and Design web site.

Houeix's websites are critical of Plaintiff's administration, but not its service. Defendant's websites do not solicit donations, do not sell products, services or ideologies. Their content shows that the sites are not sponsored or related to Plaintiff, or in competition with Plaintiff. The student forum page changed over time to a community/group of Plaintiff's students at a *yahoo* web page. This web page may advertise matchmaking services or automobiles for sale.

The trademark infringement claim fails for two reasons. First, Defendant did not use the mark in connection with the sale, offering for sale, distribution, or advertising of goods or services. Secondly, Defendant did not use the mark in a manner likely to confuse consumers as to the source or sponsorship of goods or services. No competing goods or services are offered at Houeix's web site. No competing goods or services are offered at a web page linked to Houeix's *scad.info*. An ordinary art student searching the web will not be confused that good or service advertised on a web page linked to Houeix's page is affiliated with Plaintiff college. The art student is more sophisticated and will exercise a higher degree of care.

The mark is not a strong mark given the numerous other users

Houeix did not intend to derive a benefit or trade upon Plaintiff's mark; consequently, confusion may not be presumed.

*Commerce* appears in two contexts in this dispute. *In commerce* refers to within interstate commerce, and is applied broadly. *In connection with commerce* or *commercial* refer to the sale of a product or service.

Of over riding importance is the First Amendment right protecting expressive or communicative speech. These rights prevail over trademark rights, where the alleged infringer, is not selling a product, service or ideology, and not soliciting donations.

ATL01#11745239v1

Expressive or communicative speech and non-commercial use are fair use and not subject to regulation under 15 U.S.C. § 1125.

Defendant denies liability for dilution of the Plaintiff's mark. The mark is not famous, nor distinctive. The mark is not used commercially by Defendant.   Defendant has not caused dilution of the distinctive quality of the mark.  Defendant's use is fair use because it only identifies the owner of the mark, in criticizing the owner's administrative conduct (as opposed to its educational services).  Defendant's use is non-commercial use. Defendant's use to a large extent is news commentary.

Defendant denies liability for Cyberpiracy.  Defendant has no bad faith intent to profit from the use of Plaintiff's mark. Defendant's use is fair use and non-commercial use. Defendant's use does not disparage or tarnish the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of his web site. Defendant at all times believed that use of the domain name was fair use and lawful.

- 25 –