UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAVANNAH COLLEGE OF ART AND :
DESIGN, INC.,                :
                Plaintiff,   :   CASE No.   C-1-02-490
                              :
vs.                          :
                              :
PHILIPPE HOUEIX,             :   Magistrate Hogan
                              :
                Defendant.   :

**TRIAL BRIEF**

Plaintiff college seeks to censor Defendant's speech through its action to enforce the Lanham Act, the Federal Trademark Dilution Act and the Anticybersquatting Consumer Protection Act. Their scopes are limited by the First Amendment, to false and misleading commercial speech.[1] Decisions defining commercial speech clarify the meaning of "in connection with commerce" for trade mark infringement. The Lanham Act does not in any way limit political speech, consumer or

---

[1] *Taubman Co. V. Webfeats,* 319 F.3d 770, 774-775 (6th Cir. 2003)*; Procter & Gamble v. Amway,* 242 F.3d 539, 547 (5th Cir. 2001) at ft. nt. 13 discusses the legislative history of the Lanham Act citing *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 ft. nt. 6 (5th Cir. 1996):
    " The "commercial" requirement was inserted to ensure that § 43(a) does not infringe on free speech protected by the First Amendment. *See* 135 Cong.Rec. H1216-17 (daily ed. April 13, 1989) (statement of Rep. Kastenmeier) ("The proposed change in section 43(a) should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material... The section is narrowly drafted to encompass only clearly false and misleading commercial speech."); 134 Cong.Rec 31,851 (Oct. 19, 1988) (statement of Rep. Kastenmeier) (commenting that the reach of Section 43(a) "specifically extends only to false and misleading speech that is encompassed within the "commercial speech' doctrine developed by the United States Supreme Court"). *See generally Gordon & Breach,* 859 F. Supp. at 1533-34 (discussing the legislative history of the Lanham Act)."

editorial comment, or other constitutionally protected material.[2]  Speech on the Internet is to be accorded the highest level of protection.[3]  Speech that is only partly commercial is entitled to full First Amendment protection.[4]  Although economic damage may be an intended effect of a web site operator who criticizes a mark owner and who has the mark in the domain name, the First Amendment protects the critical commentary.[5]

The test for commercial speech as noted in *Procter & Gamble v. Amway,*[6] is found in the decision of *Bolger v. Youngs Drug Products.*[7]  Commercial speech, at its core, merely proposes a commercial transaction.[8]  Commercial speech has two features. One is that the speakers have an extensive knowledge of the markets and their products. Secondly, Commercial speech is a hardy breed of expression that is not susceptible to being crushed by the powerful.[9]  The Supreme Court holds commercial speech to be an "expression related solely to the economic interests of the speaker

---

[2] *Procter & Gamble v. Amway,* 242 F.3d 539, 547. See *L.L. Bean, Inc.* v. *Drake Publishers, Inc.*, 811 F.2d 26, 29 (1st Cir. 1987): "[T]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." Also *Mattel v. MCA Records,* 296 F.3d 894, 900 ( 2nd Cir, 2002)

[3] *Reno v. ACLU*, 521 U.S. 844, 870 (1997)

[4] *Mattel v. MCA Records,* 296 F.3d 894, 905 ( 2nd Cir, 2002), dilution of trademark case, citing *Hoffman v. Capital Cities/ABC,* 255 F.ed 1180, 1184 (9th Cir. 2001)

[5] *Taubman Co. V. Webfeats,* 319 F.3d 770, 778 (6th Cir. 2003)

[6] *Procter & Gamble v. Amway,* 242 F.3d 539, 547

[7] *Bolger v. Youngs Drug Products,* 463 U. S. 60, 103 S. Ct. 2875 (1983)

[8] *Procter & Gamble* at 547, citing *Va. State Bd. v. Va. Citz. Coun.* 425 U.S. 748,762 ; 96 S. Ct. 1817 (1976)

[9] *Central Hudson Gas v. Pub. Serv. Comm.,* 447 U. S. 557, 563 n. 6, 100 S. Ct. 2343 (1980).

2

and the audience."[10] In *Bolger* three factors are used to determine commercial speech (i) whether the communication is an advertisement, (ii) whether the communication refers to a specific product or service, (iii) whether the speaker has an economic motivation for the speech.[11]

Houeix's *scad.info*, is linked to a third party web page which has a purported "advertisement." To determine whether the "advertisement" is connected with commerce, it is necessary to apply a four factor analysis. "In order for representations to constitute "commercial advertising or promotion" under Section 43(a)(1)(B), they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services. ... (4) must be disseminated sufficiently to the relevant purchasing public to constitute "advertising" or "promotion" within that industry."[12]

The fact that a linked website may carry advertisement is too remote to be treated as Defendant's advertisement for the purposes of establishing "use in connection with commerce".[13]

Linked web pages have only been held to connect with commerce, where the alleged infringer created the linked web page, and where the linked page solicits donations or sells a product

---

[10] *Central Hudson Gas,* 447 U. S at 561 citing *Va. State Bd.* 425 U. S. at 762.

[11] *Bolger,* 463 U. S. at 67.

[12] *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996); *Kansas Bankers Surety Co. v. Bahr Consultants*, 69 F. Supp. 1004, 1013-1014 (E.D. Tenn. 1999).

[13] *Ford v. 2600 Enterprises*, 177 F. Supp. 2d 661 (ED Mich 2001). For the facts similar to this case—no products or services sold at a commentary website—the mark's use is not "in connection with commerce" *Ford v. 2600 Enterprises*, 177 F. Supp. 2d 661 (ED Mich 2001); *Bally Total Fitness Holding Corp. v. Faber* 29 F. Supp. 2d 1161, 1167 (CD Cal. 1998); *Lucent Technologies, Inc. v. Lucentsucks.com*, 95 F. Supp. 2d 528, 535 (ED Va. 2000). See concurring opinion, Merritt J., *Data Concepts, Inc. v. Digital Consulting, Inc.,* 150 F.3d 620, 627 (6th Cir. 1998), a domain name of a website used wholly for communicative purposes and not used to identify the source of a product or service, is not trademark use in connection with commerce.

for the the benefit of the infringer, or promotes the sale of a book allied with the alleged infringer.[14]

Non-deceptive and non-misleading commercial use is not trademark infringement. Examples arise under the fair use exemption of 15 U.S.C.1115(b)(4) for comparative advertising, or for nominative use of the mark where there is reasonably no other descriptive word to use.[15] The alleged infringer must use the mark as a trademark.[16] There must be competition.

There are no facts to support a finding of commercial speech or use connected with commerce.

Likelihood of confusion between the origin or affiliation of the websites is irrelevant in absence of confusion between the parties' products.[17] Houeix use of the mark in the domain name is in the Top Level Domain Name (TLDN) of *.info* this is an indication that it is not a school affiliated web site, because the great majority of colleges including the Plaintiff have web sites at *.edu* which is limited to education uses. Literary or song titles have hybrid purposes to attract readers or listeners and to relate the subject matter of the song or novel.[18] The same is true of Houeix's domain name of *scad.info.* The expressive title rule is that as long as the title is related

---

[14] See *Ford v. 2600 Enterprises*, 177 F. Supp. 2d 661, 663 (ED Mich 2001) which analyzes *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 309 (D.N.J. 1998) and *Planned Parenthood V. Bucci*, 1997 U.S. Dist. LEXIS 3338, 1997 WL 133313; In *Taubman Co. V. Webfeats,* 319 F.3d 770, 775 (6th Cir. 2003) the alleged infringer created the linked web pages where his and his girlfriend's products were sold was "in connection with advertising".

[15] *New Kids On Block v. News America Publish.* 971 F.2d 302, 308 (9th Cir. 1992)

[16] *Interactive v. A2Z Mobile,* 326 F.3d 687, 695

[17] See *Taubman v. Webfeats*, 319 F.3d 770, 776 (6th Cir, 2003)

[18] *Rosa Parks v. LaFace Records*, 76 F. Supp. 2d 775, 780 (ED Mich 1999) citing *Rogers v. Grimaldi*, 875 F.2d 994, 998 (2nd Cir. 1989)

to the subject of the expressive work, it is speech protected by the First Amendment.[19] The same rule applies to this matter.

For trademark infringement there must be use of the registered mark "in connection with commerce" and a likelihood of consumer confusion as to the origin of a good or service[20] or the affiliation of the mark owner with the alleged infringer.[21] Likelihood of confusion is synonymous with a probability of confusion, which is more than a possibility.[22]

The Sixth Circuit has adopted eight factors for the likelihood of confusion analysis: (1) strength of plaintiff's mark, (2) relatedness of the goods/services, (3) similarity of the marks, (4) evidence of actual confusion, (5) marketing channels used, (6) likely degree of purchaser care, (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.[23] These factors are a guide.[24] In a trademark infringement case, the central issue "is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.[25] The eight factors focus on the ultimate inquiry:

---

[19] *Rosa Parks v. LaFace Records*, 76 F. Supp. 2d 775, 780 "Lanham Act ordinarily applies to commercial transactions involving ordinary goods and services, not expressive rights in which First Amendment concerns are paramount."

[20] *Champions Golf Club v. The Champions Golf Club,* 78 F.3d 1111, 1116, 1123 (6th Cir. 1996); *Bird v. Parsons,* 289 F.3d 865, 877 (6th Cir, 2002)

[21] *Gray v. Meijer*, 295 F.3d 641, 646 (6th Cir. 2002)

[22] *Pebble Beach v. Tour 18*, 155 F.3d 526, 543 (5th Cir. 1998); *Northland Ins. v. Blaylock*, 115 F. Supp. 2d 1108, 1122 (D. Minn. 2000)

[23] *Gray*, 295 F.3d 641, 646; *Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 280 (6th Cir. 1997).

[24] Id. at page 646.

[25] *Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000).

"whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way.[26] The *scad* mark is not strong outside of Georgia. There are many unrelated third party users of *scad*. Houeix sells no goods or services, consequently there is no relatedness. There is no competition. Consumer care is high because of the expense of education and the sophistication of the student consumer. Houeix's intent in using the mark is to describe the school in his narrative and to title his expressive communication.

There are no facts to support a finding of consumer confusion as to the origin of the web site or that any minimal services mentioned on the web site are related to Plaintiff.

The dilution remedy under 15 U.S.C. §1125(c) is not limited by consumer confusion, or by noncompetitive use. But dilution is limited by noncommercial use, fair use, and news commentary. The litmus test for dilution is the mark must be of the select class of truly famous or renown marks and must have a very high degree of distinctiveness. The mark must be on the level of AUTOZONE, FORD, KODAK, DUPONT, or XEROX. It must attain the level of a household word for the dilution remedy.[27]  Distinctiveness for dilution is much greater that distinctiveness for trademark

---

[26]   "*Daddy's Junky Music*, 109 F.3d at 280; *Homeowners Group v. Home Marketing Specialists*, 931 F.2d 1100, 1107, (6th Cir.1991).

[27]   See *Thane International, v. Trek Bicycle,* 305 F.3d 894, (9th Cir. 2002) discusses the legislative history of 15U.S.C. 1125(c) noting that the mark must have a special *aura;* examples of dilution would be *DUPONT shoes, BUICK aspirin and KODAK pianos. A mark will achieve broad-based fame only if a large portion of the general consuming public recognizes that mark. ....the mark must be a household name*. In *Avery Dennison v. Sumpton*, 189 F.3d 868, 875 (9th Cir. 1999) it was noted *Dilution is a cause of action invented and reserved for a select class of marks - those marks with such powerful consumer associations that even non-competing uses can impinge on their value*. At *Avery Dennison* page 876 it noted *to be capable of being diluted, a mark must have a degree of distinctiveness and 'strength' beyond that needed to serve as a trademark.* Citing 3 McCarthy, *at* § 24:109.

registration.[28] There must be actual dilution.[29] The dilution remedy exemption at §1125(c)(4)(B), of "noncommercial use" refers to fully constitutionally protected speech.[30]

Criticism of a mark owner at a web site, that incorporates the mark in the domain name, is noncommercial use and exempt from the dilution remedy.[31] There are absolutely no facts to support a violation of the Federal Trademark Dilution Act.

For a cybersquatting violation there must be a bad faith intent to profit from the domain name. The defendant must register multiple domain names with the intent of selling them to the mark owner.[32] There are absolutely no facts to support a violation of the Anticybersquatting Consumer Protection Act.

**Evidence**

Plaintiff's Exhibit P-79, *LiveJounal.com/support/faq.browse.bml?faqcat=about* is not a part of Defendant's web site. The Web page at Exhibit P-79 is not linked to the Houeix's web site. He made no connection from his website to Plaintiff's Exhibit P-79. Houeix did not create this web page, he does not profit from it. It is irrelevant because there is no connection to the Defendant or

---

[28] Id., *Avery Dennison* page 876

[29] *Autozone v. Tandy,* 373 F. Supp. 786, 804 (6th Cir. 2004); *Moseley v. V Secret Catalogue,* 537 U.S. 418, 123 S. Ct.1115 (2003)

[30] *Mattel v. MCA Records,* 296 F.3d 894, 905 (2nd Cir, 2002) discusses the legislative history; at page 906 it cites *Bolger* supra at ft. nt. 5 & 9;

[31] *Ford v. 2600 Enterprises*, 177 F. Supp. 2d 661, 665 (ED Mich 2001); *Northland Ins. v. Blaylock*, 115 F. Supp. 2d 1108, 1122-1123 (D. Minn. 2000)

[32] *Lucas Nursery v. Grosse*, 359 F.3d 806, 811 (6th Cir, 2004) no multiple domain names, noncommercial with intent to inform other consumers, distinguishes *Toronto-Dominion Bank v. Karpachev* 188 F. Supp. 2d 110 (D, Mass. 2002); Also see *Taubman v. Webfeats*, 319 F.3d 770, 776 (6th Cir, 2003).

to his web site.

Plaintiff's Exhibit P-46 consists of multiple web pages SCAD 00282 through 00288. Unfortunately the papers are shuffled and out-of-order, to the prejudice of defendant. Pages SCAD 00284 and 00285 are out of order. Pages SCAD 00284 and 00285 are the web page URL of *worldstudent.com/uk/entrance/offer.shtml*. Pages SCAD 00282, 00283, 00286, 00287 and 00288 are the web page URL of *worldstudent.com/uk/mag/features/accreditation.shtml* which is linked to scad.info. The *worldstudent.com/uk/mag/features/accreditation* page is three pages, three operations or three clicks away from the *worldstudent.com/uk/entrance/offer* web page. Plaintiff's Exhibit P-55 and Defendant's Exhibit D-8 present an accurate, genuine copy of the *worldstudent.com/uk/mag/features/accreditation* web page. The importance of this web page is that it is hyperlinked to Houeix's web site. In its present form Defendant's Exhibit P-46 is inadmissible for an obvious inaccuracy.

Evidence of a button for register.com on the web site Plaintiff's Exhibit P-47 is from many months ago. It is not admissible. When injunctive relief is the sole remedy, the content of linked web pages is not considered, when the link has been removed from the web pages prior to the any hearing on the injunction.[33] The button for register.com may connect to Plaintiff's Exhibit P-48 or P-49. These are also not relevant.

As to the Pretrial Statement Uncontroverted Fact 29 must have the following deleted *and which link to web sites for other universities and for college placement services*. This was agreed to at the pretrial conference. Defendant is submitting four additional Exhibits: D-27, Web page

---

[33] *Taubman v. Webfeats*, 319 F.3d 770, 775 (6th Cir, 2003) "Mishkoff had at least removed the shirtbiz.com link prior to the injunction. A preliminary injunction is proper only to prevent an on-going violation."

*livejournal.com/ support*, D-28, *Web page livejournal.com/support/faq.bml* , D-29, Web page *worldstudent.com/uk/entrance/index.shtml*, D-30, Web page *worldstudent.com/uk/entrance/offer.shtml*. Exhibits D- 27 & 28 clarify Plaintiff's Exihit P-79 (recently added). Exhibits D-30 & 31 clarify Exhibit P-46, which has the shuffled web pages.

        Respectfully submitted,

        /s/ John A. Rebel
        John A. Rebel (0031771)
        Attorney for Defendant
        McKinney & Namei
        15 E. 8th St.
        Cincinnati, Ohio 45202
        (513) 721-0200, Fax: 513- 632-5898

**Certification of Service**

The foregoing was electronically served on the attorneys for plaintiff, on this 5th day of October, 2003.

        /s/ John A. Rebel
        John A. Rebel (0031771)
        Attorney for Defendant