IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,

                    Plaintiff,

          v.

PHILIPPE HOUEIX,

                    Defendant.

CASE NO. C-1-02 490

Magistrate Judge Hogan

## PLAINTIFF'S RESPONSE IN OPPOSITION TO
## DEFENDANT'S MOTION FOR ATTORNEY'S FEES

Plaintiff Savannah College of Art and Design, Inc. ("SCAD") hereby submits its response in opposition to Defendant Philippe Houeix's ("Houeix") Motion for Attorneys fees. For the reasons set forth below, this case was not "exceptional." Accordingly, Houeix is not entitled to an award of fees.

## ARGUMENT AND CITATION OF AUTHORITY

SCAD asserted and tried trademark infringement and dilution claims under the federal Lanham Act and an unfair competition claim under the common law of Ohio. SCAD's claims arose out of Houeix's unauthorized registration and use of the domain name <scad.info> as the address for an Internet Web site that denigrates the College, its administration and faculty members. SCAD asserted a claim of cyberpiracy under the Lanham Act in its Complaint, but, with Houeix's consent, SCAD dismissed the claim prior to the start of trial.

Houeix seeks an award of fees only under Section 1117(a) of the Lanham Act. This section provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." As Houeix correctly notes, the burden of establishing that a case is exceptional

under this standard is extremely high. A prevailing defendant can recover fees only "where a plaintiff brings a suit that could fairly be described as 'oppressive.'" *Eagles, Ltd. v. American Eagle Foundation*, 356 F.3d 724, 728 (6th Cir. 2004) (citing *Balance Dynamics Corp. v. Schmidt Indus., Inc.*, 208 F.3d 212 (6th Cir. 2000) (unpublished)). "Where a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate." *Eagles*, 356 F.3d at 728 (citing *American Council of Certified Podiatric Physicians & Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 625 (6th Cir. 1999)).

For a prevailing defendant in a Lanham Act case to recover fees, the defendant must establish that the plaintiff's claims were "unfounded" and brought "for harassment and the like." *Eagles*, 356 F.3d at 729 (citation omitted). The test for recovery of fees by a prevailing defendant thus "requires an objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation." *Id.*

Houeix does not contend that SCAD prosecuted its claims in a manner that was oppressive or harassing. Rather, he argues merely that SCAD's claims were unfounded. For the reasons addressed below, although ultimately unsuccessful, each of SCAD's claims was well-founded in fact and law and prosecuted in good faith. SCAD therefore submits that Houeix is not entitled to recovery of any fees on any of his claims.

A.    **SCAD's Infringement Claim**

    1.    **SCAD'S Claim Was Well Founded in Fact and Law**

Houeix's only argument that SCAD's infringement claim was unfounded is the Court's finding that Houeix was not selling or offering for sale a product on his Web site. (Houeix's Motion for Attorney's Fees at 6.) SCAD respectfully submits that, although the Court found that

Houeix was not using the SCAD mark in connection with the advertising or sale of goods or services, SCAD's claim was well-founded under existing facts and law.

SCAD based its claim three independent grounds.  The first ground was premised on the holdings of the Fourth Circuit and other federal courts that a defendant need not have actually sold or advertised goods or services on his Web site to have used the mark in connection with goods or services but need only have "prevented users from obtaining or using [plaintiff's] goods or services, *or* need only have connected its website to other's goods or services." *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001); (SCAD's Proposed Findings of Fact and Conclusions of Law at ¶¶ 75-86).[1]  The Sixth Circuit supported this conclusion in *Taubman Co. v. Webfeats*, 319 F.3d 770, 774-775 (6th Cir. 2003) in which it held that links on the defendant's Web site to third party commercial sites constitutes use of the plaintiff's mark "in connection with the advertising of the goods" sold by the site operators and that "[t]his is precisely what the Lanham Act prohibits."

SCAD introduced evidence at trial that Houeix had linked his Web site to several third party commercial Web sites, including Yahoo!, World Student, and Live Journal.  (See December 20 Order at ¶ 64.)  Additionally, Houeix conceded that he registered <scad.info> because it includes SCAD's mark and that he switched his site to this domain name from <phoueix-master-

---

[1]      *Accord OBH*, 86 F. Supp. 2d at 186 ("[T]he 'in connection with' requirement is not only met by use of the mark in connection with the goods or services distributed or advertised by the alleged infringer; it may also be met by use in connection with the goods or services distributed by the trademark holder.  Here, defendants' use of the mark is 'in connection with' the distribution or advertising of services, because it is likely to prevent or hinder Internet users from accessing plaintiffs' services on plaintiffs' own web site." (citations omitted)); *Faegre & Benson, LLP v. Purdy*, 70 U.S.P.Q.2d (BNA) 1315, 1317 (D. Minn. 2004)("Defendants' use of domain names incorporating Faegre's mark is in connection with goods or services, because it is designed to, and is likely to, prevent some Internet users from reaching Faegre's official website."); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 309 (D.N.J. 1998) (finding use in commerce in connection with goods and services because defendant's site provided a hyperlink to another organization's site that was commercial in nature, and holding "[t]he requirement that the activities of an infringer be done 'in connection with any goods or services,' does not require the infringer to actually cause goods or services to be placed into the stream of commerce."), *aff'd* 159 F.3d 1351 (3d Cir. 1998).

scad.com> because he knew the <scad.info> domain name would capture more prospective

SCAD students and faculty who were looking for information about SCAD on the Internet.  (*See*

R-64 at p. 159, lns. 9-18 and p. 161, ln. 19 through p. 164, ln. 2).  SCAD introduced evidence

that an alumna of SCAD had gone to <scad.info> by mistake believing that she was going to

SCAD's site.  (Plaintiff's Trial Exhibit P-51.)

     The second basis for SCAD's claim of commercial use was the holdings of several federal

courts that a defendant's use of the plaintiff's mark to disparage or otherwise interfere with the

plaintiff's ability to engage in commerce constitutes commercial use of a mark in commerce.  *See,*

*e.g., Jews for Jesus*, 993 F. Supp. at 309; *see also Johnson v. Jones Mgmt.*, 149 F.3d 494, 502

(6th Cir. 1998) (noting that because defendants action had an adverse effect on plaintiff's ability

to conduct its business, the "in connection with goods and services" requirement under the

Lanham Act was satisfied).  SCAD introduced evidence at trial that Houeix's site had deterred

prospective students from attending SCAD and prospective faculty members from pursing job

opportunities at SCAD.  (*See* December 20 Order at ¶ 90.)  SCAD also introduced evidence that

the .info top-level domain is being used with more and more frequency; thus, the likelihood that

consumers would look for SCAD's Web site in the .info top-level domain is significant now and

will only get worse in the future.

     Finally, SCAD premised its claim of commercial use on the demonstrated facts that

Houeix's Web sites are designed to harm, and have harmed, SCAD commercially.  In support of

this claim, SCAD cited to two different federal courts that have held in the context of claims

under the federal dilution act that use of a trademark owner's mark to harm the owner

commercially is a commercial use in commerce.  *See, e.g., Jews for Jesus*, 993 F. Supp. at 309

(holding that defendant's registration and use of jewsforjesus.org for a web site with views

antithetical to plaintiff "constitutes a commercial use of the Mark and the Name of the [plaintiff] because it is designed to harm the [plaintiff] by disparaging it."); *Planned Parenthood*, 42 U.S.P.Q.2d at 1432 ("I hold, however, that defendant's use of plaintiff's mark [in the domain name plannedparenthood.org] is 'commercial' … [because] defendant's actions are designed to, and do, harm plaintiff commercially.")

Although the Court ultimately disagreed with SCAD on all three of its arguments, SCAD submits that its claims were well-founded and based on good faith arguments of fact and law in an emerging area of the law where there are not yet established rules as to what does and does not constitute commercial use, and where federal courts have disagreed with one another.[2]  Houeix's motion for fees related to SCAD's infringement claim should therefore be denied.

### 2.    SCAD Prosecuted Its Infringement Claim in Good Faith

SCAD sought narrow relief that would address *only* the irreparable harm it was suffering. SCAD refrained from seeking damages or other relief that would have the effect of multiplying the effort and burden on the parties to prepare for and try SCAD's claims.  SCAD tried a well-

---

[2]    The Court found against SCAD on its first argument on the ground that commercial content linked to Houeix's sites was two clicks removed from Houeix's site.  Citing to a 2004 case out of the Southern District of California, the Court held that a two click process is too far removed to constitute commercial use.  SCAD respectfully disagrees with the Court's conclusion and will seek a ruling from the Sixth Circuit on this issue.  Nevertheless, for purposes of this motion, SCAD notes that the *Taubman* decision does not make a distinction between commercial content that is one click or two clicks removed from the Defendant's site, and that, even if it did, the Yahoo! ads linked to Houeix's site were only one click removed from his sites.  SCAD thus submits that the first basis for its commercial use claim was well founded, although not ultimately successful.

With regard to SCAD's third argument, the Court rejected the argument based on the Sixth Circuit's holding in *Taubman* that "although economic damage may be the intended effect of [the defendant's] expression, the First Amendment protects critical commentary *when there is no confusion as to source*…." *Id.* at 778 (emphasis added).  The necessary implication of this statement is that a confusing use is not protected.  Although this Court found that confusion was not likely, SCAD submitted evidence of actual confusion and valid arguments under each of this Circuit's likelihood of confusion factors, with the Court finding that several of the factors supported SCAD's claim.  SCAD thus submits that its argument was well-founded and asserted in good faith even in light of *Taubman.*, a case decided after SCAD filed its claims.  *See Eagles*, 356 F.3d at 729 (holding that the test for recovery of fees by a prevailing defendant "requires an objective inquiry into whether the suit was unfounded *when it was brought*….) (emphasis added).

founded, streamlined infringement claim, and SCAD pursued narrow discovery that included only two sets of written discovery requests to Houeix and one deposition.[3]

Despite Houeix's continued cries that this case was about stifling Houeix's free speech rights, SCAD made it clear from the outset that it had no such intent.  Indeed, SCAD sought no relief that was even capable of this result (even though SCAD demonstrated at trial that significant content on Houeix's site is false).  Houeix could easily have kept his content on the Internet and avoided the lawsuit merely by moving his site to a domain name that made clear that the site located at the domain name was not associated with SCAD, such as <scad-sux.info>.  Houeix chose not to do so, as is his right, but this decision does not render SCAD's claims oppressive.

### 3.     The Parties' Relative Economic Positions is Not Properly Considered on Houeix's Motion

Houeix intimates in his motion that the Court should award him recovery of his fees because of the economic disparity of the parties.  (Houeix's Motion at 3, 5.)  As support, Houeix cites to *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 630 (6th Cir. 2003).  The *Kellogg* case offers no support for this contention.  The Sixth Circuit in *Kellogg* refused to accept the defendant's argument that it should be awarded recovery of its fees merely because the plaintiff pursued the same claims on appeal that it had lost below.  *Kellogg*, 337 F.3d at 629.  The court noted that the plaintiff had aggressively pursued actions against smaller entities in the past in which the plaintiff's claims were weak, and that fees may have been appropriate in those cases, but the court did not state that fees would have been appropriate in those cases merely because

---

[3]     Because Houeix has not challenged SCAD's prosecution of its claims as being oppressive, SCAD has not submitted herewith a declaration to support its contentions regarding the extent of discovery undertaken in the case.  Nevertheless, if the Court deems that such evidence would be useful in its resolution of this Motion, SCAD will submit an appropriate declaration from its counsel.

the defendants were smaller entities. *Id.* With regard to the case before it, the *Kellogg* court found that the plaintiff's claims were well-founded and did not support an award of fees, even though the defendant was a much smaller entity. *Id.*

The Sixth Circuit has made clear that the "exceptional case" analysis must focus only on an "objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation." *Eagles*, 356 F.3d at 729. Although the Sixth Circuit has been presented with numerous opportunities to hold that the relative economic size of the parties plays a role in the "exceptional case" determination -- including *Kellogg* -- the Sixth Circuit has never adopted such a rule. Other federal courts that have squarely addressed the issue have held that "[t]he parties' relative economic positions should not enter into the [attorney's fee] determination." *Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.* (5th Cir. 1992); *see also Steak & Brew, Inc. v. Beef & Brew Restaurant, Inc.*, 370 F. Supp. 1030, 1038 (N.D. Ill. 1974) ("The fact that plaintiff corporation here is somewhat larger than defendant corporation here does not mean that plaintiff must pay defendants' attorney fees when plaintiff loses its action"). [4] Houeix's attempt to paint SCAD's claims as an effort to "squash the little

---

[4]    Houeix notes that "economic coercion" is a factor that the Fourth Circuit considers in determining whether to award fees to a prevailing defendant in a Lanham Act case. *Ale House Mgmt, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000). However, the Sixth Circuit did not adopt this standard in its holding in *Eagles*. *See Eagles*, 356 F.3d at 728-29. Therefore, "economic coercion" is not a factor properly considered in this Circuit. Moreover, there is no evidence in this case that SCAD pursued its claims because it believed it could coerce Houeix into settling or that SCAD otherwise exercised its superior financial position in any way to coerce Houeix to do anything. SCAD asserted and tried well-founded claims under the Lanham Act, as it is entitled to do by law. The fact that Houeix is less well situated financially does not make SCAD's assertion of its legal rights oppressive or coercive.

guy" is therefore not only unfounded but irrelevant with regard to the issues properly before the Court on Houeix's motion.[5]

For the foregoing reasons, Houeix has failed to demonstrate that SCAD's infringement claim was oppressive. Rather, the objective evidence of record demonstrates that SCAD's claim was colorable and that SCAD prosecuted its claim in good faith. Houeix's motion for fees relating to the claim should therefore be denied.

**B.     SCAD's Dilution Claim**

Houeix attacks SCAD's dilution claim as allegedly being unfounded because: (1) SCAD did not establish that its mark was famous (Houeix's Motion at 6); (2) niche fame was not applicable in this case because Houeix did not sell competitive products or services (*Id.* at 4); and (3) SCAD did not offer evidence of "actual dilution damages" (*Id.*). SCAD addresses each argument in turn below.

**1.     SCAD's Claim of Niche Fame was Well-Founded in Fact and Law**

SCAD's claim of fame was predicated upon the legal theory of niche fame. Houeix admits that the Third, Seventh and Tenth Circuits have all adopted niche fame as a sufficient basis to establish a dilution claim under the Lanham Act. (Houeix Motion at 4, fn 3.)[6] SCAD introduced significant evidence of the fame and notoriety of the SCAD mark in the field of higher education in the United States at trial. (*See* SCAD's Proposed Findings of Fact at ¶¶ 4-17, 116-122.) SCAD also demonstrated that it is the only party that uses the mark "SCAD" in the field of higher

---

[5]     Houeix contends that the "economic burden on an individual such as defendant is ruinous." (Houeix's Motion at 5.) Upon information and belief, Mr. Rebel defended this case on a contingent fee basis. Accordingly, Houeix's claim that this case was ruinous to him is unsupported and untrue.

[6]     Houeix contends that "Plaintiff did not present an argument of law that there was niche dilution." (Houeix's Motion at 4.) This contention is incorrect. *See* SCAD's Proposed Findings of Fact and Conclusions of Law at ¶ 115.

education in the United States.  (Id. at ¶ 17.)  The Court found that "[b]y virtue of Savannah College's longstanding promotion and use of its goods and services under the SCAD mark, the mark is well known in the field of higher education…."  (Order dated December 20, 2004, at 4.)[7]

Houeix admitted that he was targeting his Web site at students and faculty interested in SCAD; therefore, it is undisputed in this case that Houeix was targeting his actions at the very niche market in which SCAD had established fame. (*See* R-64 at p. 159, lns. 9-18).  SCAD's claims were thus well-founded and prosecuted in good faith.

## 2.     Niche Fame Does Not Require that the Defendant Sell Competitive Products

Houeix next contends that SCAD did not have a legitimate claim for dilution under a theory of niche dilution because his product does not "closely match" SCAD's product. (Houeix's Motion at 3, fn 1.)  Houeix did not make this argument until he submitted his Proposed Findings of Fact and Conclusions of Law following trial.  SCAD therefore has not had an opportunity to rebut the argument previously.  Nevertheless, neither of the cases Houeix cites in support of his argument holds that the federal dilution statute applies only to parties that are offering directly competitive goods or services.  Rather, both cases hold only that the defendant must be using its mark in the same market as the plaintiff.  *See Times Mirror Magazines, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 164-65 (3rd Cir. 2000) ("We are persuaded that a mark not famous to the general public is nevertheless entitled to protection from dilution where both the plaintiff and defendant are operating in the same or related marks…."); *Syndicate Sales,*

---

[7]     The Court did not enter specific findings as to whether SCAD had established niche fame actionable under the Lanham Act because the Court held that it did not need to reach the issue.  (December 20 Order at 46.)

*Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 640-41 (7th Cir. 1999) (referencing with approval cases "in which the plaintiff and defendant are using the mark in the same or related markets).[8]

In this case, Houeix is using his domain names in SCAD's market. Indeed, Houeix admitted that he intends Internet users who see his domain names to understand that the "scad" portions of the names refers to SCAD, and Houeix admitted that he intends his sites to influence the decisions of prospective students, staff, and faculty members of SCAD.

Houeix is correct that not all Circuits have adopted niche fame as an actionable theory under the federal anti-dilution statute. However, there is no controlling contrary authority in this circuit, and the majority of federal circuits have adopted the theory. SCAD therefore submits that its claim of niche market fame and dilution was well-founded legally and factually.

### 3.    SCAD Was Not Obligated to Establish "Actual Dilution Damages"

Houeix contends that SCAD's dilution claim was unfounded because SCAD did not introduce evidence of "actual dilution damages." (Houeix's Motion for Attorney's Fees at 4.) Houeix does not cite any authority for the proposition that a claim under the federal dilution statute requires evidence of "actual dilution damages." To the contrary, the Supreme Court made clear in *V Secret Catalogue, Inc. v. Moseley*, 537 U.S. 418, 432-33 (2003) that a dilution plaintiff does not need to introduce evidence of "the consequences of dilution, such as an actual loss of sales or profits...." *Id.* at 433.[9] For the foregoing reasons, SCAD submits that its dilution claim

---

[8]    *See also* Restatement (Third) of Unfair Competition § 25 (cmt. e (1995) (stating that where a mark is famous in a niche market, a mark owner's mark may be protected "against a dilution of the mark's distinctiveness … against uses specifically directed at that particular class of purchasers….")) (cited with approval in both *Times Mirror* and *Syndicate Sales*).

[9]    The Supreme Court in *Moseley* found that a defendant needs to establish "actual dilution" to prevail on a claim under the Dilution Act, but, as addressed in paragraphs 130-132 of SCAD's Proposed Findings of Fact and Conclusions of Law, SCAD's dilution claim satisfied the actual dilution element of the Dilution Act because the second level domain of Houeix's <scad.info> domain name is identical to the SCAD mark.

was well-founded in fact and law, although not ultimately successful, and that Houeix is not entitled to an award of fees related to the claim.

**C.**    **SCAD's Cyberpiracy Claim**

**1.**    **Houeix Did Not "Prevail" on SCAD's Cyberpiracy Claim**

To qualify for an award of fees, the moving party must first establish that it prevailed on the claim.  15 U.S.C. § 1117(a).  Houeix did not prevail on SCAD's cyberpiracy claim.  Rather, Houeix consented to the dismissal of the claim before trial.  Houeix therefore should not be awarded fees related to the claim.  *See National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.3d 478, 488-89 (7th Cir. 1982) (affirming lower court's ruling that defendant was not the "prevailing party" with regard to a copyright claim the plaintiff dismissed "shortly before trial.")

With regard to the objective merit of the claim, Houeix contends that there is no evidence in the record that he registered or used his domain names with a bad faith intent to profit from SCAD's mark.  However, the facts and law regarding this element of SCAD's cyberpiracy claim were never developed at trial because of the dismissal of the claim.  SCAD moved to dismiss the claim because it was seeking only injunctive relief at trial, and a finding of infringement or dilution are a predicate to a finding of cyberpiracy.  15 U.S.C. 1125(d).  Pursuing the claim therefore would not have availed SCAD of any additional relief.  To streamline the trial and post-trial briefing for the benefit of *both* parties and the Court, SCAD elected not to pursue the claim at trial.  SCAD's offer to do so was a gesture of good will to Houeix, not an acknowledgement, tacit or otherwise, that it would not have prevailed on the claim.  Even if SCAD had dismissed the claim earlier, it would not have reduced the fees of defending the lawsuit because SCAD's

infringement and dilution claims were predicate claims to SCAD's cyberpiracy claim and because the parties spent almost no time litigating the cyberpiracy claim before SCAD moved to dismiss it.

With regard to the intent element that Houeix highlights, SCAD notes that the Court found in SCAD's favor in its December 20 Order with regard to the "intent" element of SCAD's infringement claim. Therefore, even if Houeix is properly deemed a "prevailing party" on SCAD's cyberpiracy claim, the claim was colorable and not litigated oppressively or in any other manner that would render the claim exceptional under the Lanham Act.

>   **2.    Houeix has Not Evidenced that He Incurred Any Meaningful Fees in Defending SCAD's Cyberpiracy Claim.**

Even assuming arguendo that Houeix is entitled to recovery of fees on SCAD's cyberpiracy claim, the objective evidence of record demonstrates that Houeix did not incur any meaningful attorney's fees in defending the claim. Houeix's attorney, John Rebel, guesses in the affidavit he gave in support of Houeix's motion that he spent "about 60 hours" on the cyberpiracy claim. However, the itemization that Mr. Rebel attached to his affidavit does not support this claim. There are only two time entries in the itemization that reference the cyberpiracy claim. These entries are as follows:

| "**Date** | **Item** | **Time (Hr)** |
|---|---|---|
| 8/21/04 | research cyberpiracy and case _____. | .75 |
| 9/25/04 | File review, separate copies of caselaw on cyberpiracy dilution and confusion, review Ptlf's exhibit. List questions.  Meet with client" | 6.0 |

The time entry on August 21 indicates that not all of the time incurred that day was spent researching the cyberpiracy claim. SCAD thus submits that, on the proof before the Court, the Court should award Houeix no more than half of this time, or .375 hours.

The time entry on September 25 indicates that the only action Mr. Rebel took regarding the cyberpiracy claim was to separate copies of cases. As set forth below, Houeix only cited three cases related to the cyberpiracy claim at any point in this litigation. Mr. Rebel would have needed no more than two tenths of an hour to separate these cases, and separation of the cases is a function that a non-billing secretary should have performed, not a lawyer. Accordingly, the evidence Houeix has submitted with his Motion supports an award of only .375 hours of attorney time related to the cyberpiracy claim, or $61.88 at the $165/hour rate Houeix submits. Because Houeix bears the burden of establishing the fees for which he should be awarded through an appropriate itemization, SCAD submits that Houeix has not demonstrated an entitlement to any fees beyond this amount. *See, e.g., Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999) ("The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed"); *Tinch v. City of Dayton*, 199 F. Supp.2d 758, 762 (S.D. Ohio 2002); *Monaghan v. SZS 33 Assocs., L.P.*, 154 F.R.D. 78, 83 (S.D.N.Y. 1994) (holding that "the burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required….") (citation omitted).

Even if the Court were to consider awarding Houeix recovery of any more time than this, the 60 hours that Mr. Rebel estimates he spent defending the cyberpiracy claim is unreasonably high. Neither party incurred any meaningful time in connection with the cyberpiracy claim. The claim was always treated by both parties as wholly secondary to SCAD's infringement and dilution claims. In his Answer, Houeix asserted simple denials of each allegation of SCAD's cyberpiracy claim. These denials could not have taken Mr. Rebel more than a few minutes to draft. SCAD moved for summary judgment on all of its claims at the outset of the case, but SCAD devoted only a page and a half at the end of its brief to the cyberpiracy claim. SCAD also

addressed only one element of the claim.  In his response brief, Houeix likewise devoted only a page and a half to the claim, and Houeix cited only one case in this section of his response.  Mr. Rebel therefore clearly did not invest any meaningful time on the claim in preparing his client's response.

With regard to discovery, Houeix served one set of document requests on SCAD, but otherwise took no discovery.  None of his document requests were directed at the cyberpiracy claim.  All of the discovery that SCAD took that related to its cyberpiracy claim also related to its infringement and dilution claims.  Therefore, Houeix did not incur any fees in discovery that were attributable to SCAD's cyberpiracy claim that he would not otherwise have incurred in defending SCAD's infringement and dilution claims.

The only other conceivable fees Houeix could have incurred in connection with the cyberpiracy claim were in connection with preparing the Final Pretrial Statement, the Trial Brief he filed prior to trial, or preparing for trial.  With regard to the Final Pretrial Statement, Houeix devoted only two paragraphs of the Statement to the claim, and Houeix cited no cases or other legal authority in these paragraphs.  Houeix therefore clearly did not invest any meaningful time on the claim in connection with preparing the Statement.  With regard to his Trial Brief, Houeix included only one paragraph related to the claim at the end of his brief, and he cited only two cases to support his position.  (Houeix's Trial Brief at 7, n. 32.)  With regard to trial, nothing about the cyberpiracy claim would have caused Houeix to prepare his case any differently than if the claim had not been pled.  Accordingly, the objective evidence in the record demonstrates that Mr. Rebel did not spend anywhere near the 60 hours of time that he guesses that he spent on the claim.  And even if Mr. Rebel did spend 60 hours on the claim, it was unreasonable to incur that

much time on the claim in light of the minor role the claim played in the case and the minor actions that Mr. Rebel took related to defense of the claim.

There is no way to ascertain from the billing records Houeix has submitted which time entries other than the two noted above relate to the cyberpiracy claim.  The Sixth Circuit has made clear that "[t]he documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a *high degree of certainty* that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate, Tile and Composition Roofers v. G&M Roofing and Sheet Metal Co., Inc.*, 732 F.2d 495, 502 (6th Cir. 1984) (emphasis added).  Indeed, the Sixth Circuit has held that "[w]here the documentation is inadequate, or recently compiled retrospective estimations of time expended, the district court would do violence to its judicial obligations were it to accept the amounts claimed at their value."  *Id.*  Because Houeix's fee affidavit does not support his retrospective estimate of the time he spent on the cyberpiracy claim, because the objective evidence of record demonstrates that his counsel could not reasonably have spent anywhere near this amount of time on the claim, because the documents Houeix has supported enable the court to identify only approximately $62 worth of fees that were actually expended in connection with the claim, and because Houeix bears the burden of proof on his motion, SCAD submits that, even if the Court were to find that Houeix is entitled to recover any fees related to the claim, the Court should not award Houeix recovery of any more than $62.  *See also Reed v. Rhodes*, 179 F.3d 453, 472 (6th Cir. 1999) ("The party seeking attorneys fees bears the burden of documenting his entitlement to the award….. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

**D.     Houeix's Fee Petition Includes Time That is Not Properly Recoverable or that is Unreasonably Excessive**

Assuming for purposes of argument that the Court finds that this is an exceptional case and awards fees to Houeix, Houeix's fee request should be reduced to eliminate fees related to claims for which Houeix is not entitled to recovery and for time Mr. Rebel incurred that is unreasonable for the tasks he performed. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424 (1983) (holding that hours that are excessive, redundant or otherwise unnecessary are not recoverable).

**1.     Houeix Improperly Seeks Recovery for Fees Incurred in Connection with His Dismissed Counterclaims**

Houeix asserted a number of counterclaims against SCAD.  The Court dismissed every one of them prior to trial.  By asserting these unfounded counterclaims, Houeix needlessly expanded the scope and expense of this litigation.  Because Houeix did not prevail on these counterclaims, he is not entitled to recover any fees related to the claims.[10]

Because of the scant nature of the descriptions included in his attorney's affidavit in support of his motion, it is difficult for SCAD to ascertain how much of the overall fees that Houeix is now seeking were devoted to prosecution of his counterclaims; however, because Houeix bears the burden of proof on his motion, any ambiguity should be construed against him. *See, e.g., Apple Corps. Ltd v. Int'l Collectors Soc.*, 25 F. Supp.2d 480, 487 (D.N.J. 1998) (disallowing recovery for time entries that included recoverable and non-recoverable time where the time descriptions did not enable the court to separate the recoverable time from the non-recoverable time).  The following is a listing of the fees included in Houeix's attorney's fee affidavit that were devoted in whole or in part to prosecution of the counterclaims.

---

[10]     Mr. Rebel acknowledges in his fee affidavit that his client is not entitled to recover fees for time incurred in connection with the counterclaims because he states that he has excluded time related to the counterclaims. Nevertheless, Houeix's affidavit includes several time entries related to the claims.

| Date | Item | Time (Hr) |
|------|------|-----------|
| 11/26/2002 | Research 15 USC 1125, and case notes begin Amend. Answer and Counter Claim | 3.0 |
| 11/27/2002 | Draft Answer and Counter Claim, review content | 2.0 |
| 11/29/2002 | Call, draft Answer & Counter Claim, call Atty. Butler,  Prepare Notice of Appearance, Motion to Continue | 2.5 |
| 12/2/2002 | Drafting, call, Motion for Leave to Amend | 2.0 |
| 12/6/2002 | Conference with client review and discuss Affidavit, file Motion Continuing SJM, and Notification drafting, review Houeix's notebook with letters and replys from accreditation groups, emails & letters from school, revise Motion for Leave | 1.25 .5 7.0 |
| 12/9/2002 | Revise Affidavit, Answer & Counter Claim | 1.5 |
| 12/09/2002 | Drafting Ans. & Cc; Review McCarthy and trademarks | 3.5 |
| 5/05/2003 | Conference call and redo pleading | .75 |
| **Total** | | **24** |

The total fees for this time under the $165/hour rate Houeix proposes is $3,960.  Thus, even if Houeix were entitled to recovery of any fees on his Motion – which he is not – he is not properly entitled to recovery of these fees.

**2.    Houeix Should Not be Awarded Fees for Time Mr. Rebel Spent on Non-Attorney Work**

Mr. Rebel's affidavit shows that he spent a good deal of time over the life of the case handling matters that should properly have been handled by a paralegal or non-billing timekeeper. These actions include the following:[11]

| Date | Item | Time(Hr) |
|------|------|----------|
| 12/12/2002 | Email, Affidavit, file Motion for Leave to Amend with Amd. Ans. & CC | 1.0 |
| 12/18/2002 | Internet search "SCAD" and print out of a few web home pages | 1.25 |
| 12/18/2002 | Case research, trademark records for scad, Obtain a few Secretary of State filings for scad Drafting | 1.5 1.5 |
| 12/30/2002 | Search Engine research on scad, .infor, .edu number of schools at .edu, for affidavit | 2.0 |
| 1/13/2003 | Draft on SJM/assemble file, proof read | 4.0 |
| 1/14/2003 | Draft and assemble file, proof read | 9.5 |

---

[11]    SCAD notes that some of these time entries overlap with time entries addressed in other parts of this Section D because some of the time entries are unreasonable on two or more grounds.

| 1/16/2003 | file Response to Mot for SJM | .25 |
|---|---|---|
| 2/11/2004 | Prepare letter and documents for the email | 1.75 |
| 9/21/2004 | At home Research on numerous 3rd party users, for confusion and dilution | 1.5 |
| 9/22/2004 | Research on numerous 3rd party users, for confusion and dilution, drafting Respons. To In Limine on 3rd party users | 5.0 |
| 9/23/2004 | Finish response change to footnote form, ECF of responses, research | 5.5 |
| 9/24/2004 | Changes in pretrial statement review, revise, call, ECF, hand deliver copies to court | 2.0 |
| 9/25/2004 | File review, separate copies of caselaw on cyberpiracy dilution and confusion, review Ptlf's exhibit. List questions. Meet with client | 6.0 |
| 9/28/2004 | Cinti. Library computer, obtain trademarks registered to school | .5 |
| 10/1/2004 | Trial brief, fax the amended Pre-Trial Stmt, research *Hudson, Bolger* | 6.5 |
| 10/3/2004 | Trial brief, obtain book tabs | 6.5 |
| 10/4/2004 | Emails, revise Trial Brief, (3.0) research assemble Exhibit books (1.5) File revised pretrial statement | 10.0 |
| 10/7/2004 | Obtain McCarthy on Trademarks | .5 |
| 10/22/2004 | Read and outline transcripts | 8.0 |
| 10/23/2004 | Read and outline transcripts | 4.5 |
| 10/24/2004 | Read and outline transcripts | 8.0 |
| 10/25/2004 | Finish transcripts and notes | 8.75 |
| 11/5/2004 | Draft Closing argument, check cites, proof read, revise | 12.0 |
| **Total** | | **108.0** |

SCAD submits that it is unreasonable for an attorney to charge $165/hour for obtaining

book tabs, faxing documents, filing documents, obtaining a book, organizing exhibits, and the

other kinds of activities of this nature included in the time entries listed above. It is impossible to

tell from Houeix's fee petition how much of the relevant time entries were spent on non-lawyer

work. Because Houeix bears that burden of submitting clear and concise fee records, SCAD

submits that these time entries should be denied in full. *See, e.g.*, *Apple Corps*, 25 F. Supp.2d at

487. At a bare minimum, SCAD submits that the fees should be scaled back by 50% or more and

billed at a maximum paralegal hourly rate of $50/hour. *Tinch v. City of Dayton*, 199 F. Supp.2d

758, 766 (S.D. Ohio 2002) (holding that "$50 is an appropriate hourly rate for a paralegal.").

3.    **The Fees Houeix Seeks in Connection with Responding to SCAD's Motion for Summary Judgment are Unreasonable**

According to Mr. Rebel's fee affidavit, he spent 115.75 hours from December 17, 2002 through January 16, 2003 responding to SCAD's Motion for Summary Judgment. If Mr. Rebel billed 40 hours a week, this would amount to nearly three full weeks of time doing nothing but responding to SCAD's motion. SCAD submits that such time is unreasonably excessive, particularly in light of the fact that the response brief Mr. Rebel filed was only twenty pages long.

Houeix's fee request is also excessive in that Houeix seeks to recover two hours for time that Mr. Rebel spent on January 15, 2003 to prepare and revise a motion to file late the summary judgment response brief that Mr. Rebel had already been working on for a month. SCAD submits that this time is improper and should not be awarded. In total, SCAD submits that Houeix should be awarded no more than 35 hours of Mr. Rebel's time for responding to SCAD's motion for summary judgment if the Court determines that Houeix is entitled to recovery for any attorney's fees.

4.    **The Fees Houeix Seeks in Connection with Drafting His Findings of Fact and Conclusions of Law are Unreasonable**

From October 22, 2004 through November 5, 2004, Mr. Rebel spent 63.25 hours drafting his closing argument, and another 52 hours preparing his findings of fact and conclusions of law.[12] SCAD submits that this time is unreasonable, particularly the time Mr. Rebel spent on his closing argument. Mr. Rebel had already drafted and filed a summary judgment response brief on the claims and a Trial Brief. Incurring another 63.25 hours to draft a closing argument is therefore

---

[12]    Several of Mr. Rebel's time entries for this period include time incurred on both projects. In calculating the time for each project, SCAD has categorized the time into time spent on one or the other of the documents, based on Mr. Rebel's descriptions, without overlap.

wholly unreasonable. SCAD submits that the time incurred in connection with the closing argument should be reduced by at least 50%.

Mr. Rebel spent 29.75 hours reading the trial transcript and outlining it, presumably in connection with the preparation of his findings of fact and conclusions of law. The case took less than 12 hours to try. SCAD therefore submits that spending well more than double this amount of time to read and outline the trial transcript is wholly unreasonable. Accordingly, SCAD submits that 20 hours of this time should be deducted from Mr. Rebel's fee request.[13]

## CONCLUSION

For the foregoing reasons, SCAD submits that, although it did not prevail on its claims, its claims were well founded in fact and law and prosecuted in a streamlined, good faith manner. Thus, this case is not an exceptional case within the meaning of the Lanham Act and Houeix's motion should be denied in full.

Respectfully submitted, this 25th day of January, 2005.

/s/ J. Patrick Elsevier, Esq.

David J. Stewart, Esq.
J. Patrick Elsevier, Esq.
Alston & Bird, LLP
1201 West Peachtree St.
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7000
Facsimile: (404) 881-7777

Stephen J. Butler, Esq.
Bar. No. 0010401
Theodore D. Lienesch, Esq.
Bar. No. 0016542
Thompson Hine LLP
312 Walnut Street
Cincinnati, Ohio 45202-4089
Telephone: (513) 352-6700
Facsimile: (513) 241-4771

Counsel for Plaintiff Savannah College Of Art and Design, Inc.

---

[13]    The time Mr. Rebel incurred in connection with his closing argument and findings of fact highlights the unreasonableness of the 115.75 hours he spent on drafting his 20 page summary judgment response brief.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing Plaintiff's Response in Opposition to Defendant's

Motion for Attorney's Fees was filed and served electronically by using the CM/ECF system and

and served upon Defendant Philippe Houeix by causing true and correct copies thereof to be

delivered by first class mail to Defendant's attorney of record as follows:

John A. Rebel
McKinney & Namei
15 East 8th Street
Cincinnati, OH 45202

This 25th day of January, 2005.

/s/ J. Patrick Elsevier, Esq.
J. Patrick Elsevier
Counsel for Plaintiff Savannah College Of Art and
Design, Inc.