# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SAVANNAH COLLEGE OF ART
AND DESIGN, INC.,
   Plaintiff,         Civil Action No. 1:02-cv-490

  vs.

PHILIPPE HOUEIX,        **ORDER**
   Defendant.         (Hogan, M.J.)

  This matter is before the Court on defendant's motion for award of attorney fees (Doc. 75), and plaintiff's memorandum in opposition. (Doc. 77).

  Plaintiff Savannah College of Art and Design, Inc. ("Savannah College") brought this action against defendant Philippe Houeix's ("Houeix") pursuant to the Lanham Trademark Act of 1946, 15 U.S.C. § 1125(a), (c), and (d), alleging claims of trademark infringement, unfair competition, service mark dilution, and cyberpiracy.  Savannah College owns trademark and service mark rights in the "SCAD" mark and sued Houeix over his use of the SCAD mark in his registered Internet domain names <scad.info> and <scad-and-us.info>.  Houeix's websites provided commentary critical of Savannah College.  The Court conducted a two-day bench trial on the trademark infringement, unfair competition, and dilution claims.  The cyberpiracy claim was dismissed prior to the start of trial at the request of Savannah College and with the consent of Houeix.  On December 21, 2004, the Court entered judgment in favor of Houeix finding that Savannah College failed to establish its trademark infringement, unfair competition, and trademark dilution claims. (Doc. 73).  Houeix now seeks an award of attorney fees.

  Attorney fees may be awarded to prevailing Lanham Act defendants pursuant to 15 U.S.C. § 1117(a) in "exceptional" cases. *American Council of Certified Podiatric Physicians and*

*Surgeons v. American Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 624 (6th Cir. 1999). The Act provides:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 43(a) or (d), or a willful violation under section 43(c), shall have been established in any civil action arising under this Act, the plaintiff shall be entitled, subject to the provisions of sections 29 and 32, and subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action. The court shall assess such profits and damages or cause the same to be assessed under its direction. In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty. *The court in exceptional cases may award reasonable attorney fees to the prevailing party.*

15 U.S.C. § 1117(a)(emphasis added). For purposes of the Lanham Act, the Sixth Circuit has equated an "exceptional" case with one fairly described as "oppressive." *Eagles, Ltd. v. American Eagle Foundation*, 356 F.3d 724, 728 (6th Cir. 2004), quoting *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 208 F.3d 212, (6th Cir. 2000)(unpublished), 2000 W.L. 226959, citing *Finance Inv. Co. v. Geberit AG*, 165 F.3d 526, 533 (7th Cir. 1998). In determining whether a case is "oppressive" the Court must make "an objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation." *Eagles, Ltd.*, 356 F.3d at 729, citing *S Indus. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001) ("A suit is oppressive if it lacked merit, had elements of an abuse of process claim, and plaintiff's conduct unreasonably increased the cost of defending against the suit."); *National Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143,

1146-47 (10th Cir. 2000) ("No one factor is determinative, and an infringement suit could be 'exceptional' for a prevailing defendant because of (1) its lack of any foundation, (2) the plaintiff's bad faith in bringing the suit, (3) the unusually vexatious and oppressive manner in which it is prosecuted, or (4) perhaps for other reasons as well."). "Where a plaintiff sues under a colorable, yet ultimately losing, argument, an award of attorney's fees is inappropriate." *American Bd. of Podiatric Surgery, Inc.*, 185 F.3d at 625, citing *Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir.1997) (where plaintiff raised debatable issues of law and fact, the case was not "exceptional" so as to justify an award of attorney's fees).

      Houeix contends that Savannah College's infringement and unfair competition claims were groundless because Houeix was not selling or offering for sale any products. (Doc. 75 at 6). Although this Court determined as a matter of law that Houeix was not using the SCAD mark in connection with the advertising or sale of goods or services, Savannah College's claims were colorable under the Lanham Act when brought and therefore an award of attorney fees is not warranted on this basis. Savannah College raised three separate bases for contending that Houeix's use of the SCAD mark was "in connection with the sale, offering for sale, distribution, or advertising of any goods or services," 15 U.S.C. § 1114(1)(a), as required under the Lanham Act: (1) Houeix advertises the goods and services of third parties on his web site in the form of banner ads and links to third party commercial websites; (2) Houeix has prevented others from reaching Savannah College's web site; and (3) Houeix's sites are designed to harm Savannah College commercially. Savannah College introduced evidence at trial on each of these contentions and presented case law and argument in support thereof. While this Court disagreed with Savannah College on each of the grounds raised for the reasons set forth in its December

3

21, 2004 Order (Doc. 73 at 17-28), the Court cannot say that such grounds were not well-founded in fact or based on a good faith reading of the law in this emerging area. While the Sixth Circuit will ultimately resolve each of these claims on appeal, the Court cannot say Savannah College's infringement and unfair competition claims were objectively unfounded when brought to make this case "exceptional" for an award of attorney fees. Nor does Houeix specifically challenge Savannah College's conduct during the litigation of these claims. *Eagles, Ltd.*, 356 F.3d at 729. Therefore, to the extent Houeix seeks attorney fees under the Lanham Act on these claims, his motion is denied.

Houeix also argues the economic disparity between the parties in this matter justifies an award of attorney fees. The Court disagrees. The Sixth Circuit has not held that the disparate financial positions of the parties to an infringement action is a factor making an "exceptional" case for attorney fees under the Lanham Act. The case of *Kellogg Co. v. Toucan Golf, Inc.,* 337 F.3d 616, 629 (6th Cir. 2003), cited by Houeix, is not to the contrary. The Court in *Kellogg* did not address the issue of attorney fees under the Lanham Act, but whether the plaintiff's claims against smaller companies warranted sanctions under Fed. R. App. P. 38 for taking a frivolous appeal. *Id*. Moreover, the Sixth Circuit in *Eagles, Ltd.* declined to adopt an "economic coercion" standard for determining attorney fees:

> While the circuits differ somewhat as to the test for determining whether a case is "exceptional," often replacing the term with other adjectives, *see, e.g., Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 144 (4th Cir. 2000) ("Relevant factors include 'economic coercion,' 'groundless arguments,' and failure to cite controlling law."); *Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 555 (8th Cir. 1996) ("When a plaintiff's case is groundless, unreasonable, vexatious, or pursued in bad faith, it is exceptional, and the district court may award attorney's fees to the defendant."), we believe that the "oppressive" standard first followed in *Balance Dynamics* most closely follows the statute. Awarding attorney's fees to a prevailing defendant is meant to "provide

> protection against unfounded suits brought by trademark owners for harassment and the like." S. Rep. No. 93-1400 (1974), reprinted in 1974 U.S.C.C.A.N. 7132, 7136. The test requires an objective inquiry into whether the suit was unfounded when it was brought and a subjective inquiry into the plaintiff's conduct during litigation.

*Eagles, Ltd.*, 356 F.3d at 728-29. *See also Texas Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992)(court cannot consider the parties' relative economic positions when determining whether a case is exceptional). Houeix has not cited any binding authority for the proposition that the relatively unequal financial positions of the parties warrants an award of fees in an infringement action.

In addition, the cases cited by Houeix indicate that something more than the economic strength of the parties is required before a finding of an "exceptional" suit warranting attorney fees is appropriate. For example, in *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant*, 771 F.2d 521, 526-27 (D.C. Cir. 1985), the court found "more than a hint of 'economic coercion'" where the plaintiff chose to litigate its infringement action against a California defendant in Washington, D.C. "when a Supreme Court decision precisely on point plainly declared the impropriety of that course." *Id*. Likewise, in *Finance Inv. Co. (Bermuda) Ltd. v. Geberit AG*, 165 F.3d 526, 533-34 (7th Cir. 1998), the Seventh Circuit upheld an award of attorney fees and sanctions finding the litigation oppressive because the plaintiffs had no colorable claim to standing under the Lanham Act, the case involved protracted discovery, and the lawsuit's international dimensions required documents to be translated from German to English. Finally, in *Rohr-Gurnee Motors, Inc. v. Patterson*, 2004 W.L. 422525, *5 (N.D. Ill. 2004), the court awarded attorney fees to a defendant who used the plaintiff's trade name in a domain name of a gripe web site finding the plaintiff's delay in dismissing its lawsuit to be oppressive. In that

case, the court denied the plaintiff's motion for preliminary injunction finding the plaintiff "did not have a better than negligible chance of success on the merits of its cyberpiracy claim." *Id*. Despite this finding from the court, the plaintiff continued litigating for four months before moving to dismiss the complaint. There was also correspondence indicating that the suit was brought for the purpose of "beating the defendant into submission" which the court noted was an element of abuse of process justifying attorney fees. 2004 W.L. 422525, *5. In all of the cases cited by Houeix, there were additional factors coupled with the relative economic positions of the parties which justified attorney fees. Here, the alleged financial disparity between Houeix and Savannah College does not, in itself, justify an award of fees in this case.

Houeix also contends that Savannah College did not present a colorable claim for trademark dilution. To establish its trademark dilution claim under 15 U.S.C. § 1125(c), Savannah College was required to show that its mark (SCAD) was (1) famous; and (2) distinctive, and that Houeix's use of the mark was (3) a commercial use in commerce; (4) subsequent to plaintiff's mark becoming famous; and (5) causing actual dilution of the distinctive quality of the SCAD mark. *See AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 802 (6th Cir. 2004); *Kellogg Co.*, 337 F.3d at 628. This Court held that Savannah College's dilution claim failed because Houeix's use of the SCAD mark was for noncommercial commentary and was not a "commercial use" under 15 U.S.C. § 1125(c). (Doc. 73 at 45-47). The Court declined to review the remaining elements of Savannah College's dilution claim in view of its failure to establish an essential element of its trademark dilution claim. (Doc. 73 at 47). Houeix contends that the dilution claim was unfounded in any event because: Savannah College did not establish that its mark was famous; niche fame was not applicable in this case because Houeix did not sell

competing products or services; and Savannah College did not offer evidence of "actual dilution damages." (Doc. 75 at 4, 6).

In view of the evidence presented at trial and the case law supporting Savannah College's position on its trademark dilution claim, the Court cannot say the dilution claim was unfounded as a matter of law.  Savannah College's claim of fame was predicated upon the legal theory of niche fame.  At trial, Savannah College presented evidence of the fame and notoriety of the SCAD mark in the field of higher education in the United States and that Houeix was targeting his web sites to the very same market that Savannah College was attempting to reach.  Moreover, Savannah College presented authority from several circuits supporting its argument that a mark may be entitled to anti-dilution protection even if it is not famous to the general public if it possesses a "high degree of fame in its niche market."  *See Times Mirror Magazines Inc. v. Las Vegas Sports News*, 212 F.3d 157, 164 (3d Cir. 2000), *cert. denied,* 531 U.S. 1071 (2001); *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 640-41 (7th Cir. 1999).  *See also Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1032 (9th Cir. 2004).  While Houeix cites cases from other circuits which have declined to adopt niche fame as an actionable theory for a federal dilution claim, both parties agree that there is no controlling authority in the Sixth Circuit on this issue.  Nor was Savannah College required to provide evidence of  "actual dilution *damages*," such as actual loss of sales or profits, in support of its dilution claim. *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 433 (2003).  Because Savannah College presented a colorable claim of trademark dilution which was well-founded on fact and law, attorney fees under § 1117(a) are not warranted on this claim.

Finally, Houeix argues he is entitled to an award of attorney fees because Savannah

Case: 1:02-cv-00490-TSH-TSH Doc #: 79 Filed: 04/22/05 Page: 8 of 12  PAGEID #: 976

College failed to present a colorable claim for cyberpiracy.  To establish a cyberpiracy claim under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d)(1)(A), a plaintiff must show that (1) the defendant has a bad faith intent to profit from that mark; and (2) registers or uses a name that is identical to, confusingly similar to, or dilutive of that mark.  "In order for liability to attach under the ACPA a court must conclude that the defendant's actions constitute 'bad faith.'" *Lucas Nursery and Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004).  In determining bad faith intent to profit, a court must consider, among others, the nine non-exhaustive factors listed in the ACPA:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
> (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection

8

(c)(1) of this section.

15 U.S.C. 1125(d)(1)(B). The statute also contains a safe harbor: "Bad faith intent described under subparagraph (A) shall not be found in any case in which the court determines that the person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful." 15 U.S.C. 1125(d)(1)(B).

Houeix contends Savannah College had no valid cyberpiracy claim from the commencement of this lawsuit.  He argues that there was no evidence to support a bad faith intent to profit and no evidence showing he registered numerous domain names to sell to Savannah College. (Doc. 75 at 3).

Savannah College contends Houeix is not a "prevailing party" for purposes of the cyberpiracy claim and consented to dismissal of the claim at the outset of the trial.  Savannah College also argues that the record lacks evidence on the bad faith element of the cyberpiracy claim because the claim was dismissed prior to the start of trial.  Savannah College asserts that it dismissed the cyberpiracy claim because it was seeking only injunctive relief at trial, and a finding of infringement or dilution is a predicate to a finding of cyberpiracy.  Pursuing the cyberpiracy claim at trial, Savannah College argues, would not have availed it of any additional relief. (Doc. 77 at 11).

The record supports Savannah College's contention that it dismissed the cyberpiracy claim before the start of trial because it was seeking only injunctive relief and the elements of its cyberpiracy claim were subsumed in the trademark infringement and dilution claims which proceeded to trial. (Doc. 64 at 5-6, transcript of proceedings held on Oct. 6, 2004).  Houeix consented to the dismissal of this claim before the start of trial. *Id*.  Assuming, arguendo, that

9

Houeix was a prevailing party for purposes of the cyberpiracy claim, the Court nevertheless finds an award of attorney fees under § 1117(a) is not warranted.

The pertinent inquiry for the Court is whether Savannah College's cyberpiracy claim was unfounded when it was brought. *Eagles, Ltd.*, 356 F.3d at 729. At trial, Savannah College presented evidence in connection with its infringement and dilution claims which was also necessary to prove the cyberpiracy element of using a name that is identical to, confusingly similar to, or dilutive of the SCAD mark. As discussed above, the evidence and argument presented by Savannah College satisfy the Court that the infringement and dilution claims were not unfounded, and by extension, necessarily persuades the Court that this part of the cyberpiracy claim was not without a basis in fact or law.

With regard to the "bad faith" element of the cyberpiracy claim, both parties assert that the Court made a finding on this element in their respective favors. The Court examined evidence of Houeix's intent in selecting the SCAD mark for use in his websites in connection with its analysis of the likelihood of confusion such use would cause to consumers in regard to the trade infringement claim:

> In this case, the Court finds credible Houeix's testimony that his purpose in creating *scad.info* was to provide a site for communicating his negative experiences with Savannah College and to provide a forum for others to report their experiences. Houeix's intent also was to provide information to foreign students on accreditation and other information he believed was important. At the time Houeix registered the domain name scad.info, Savannah College had not yet registered the SCAD mark with the United States Patent and Trademark Office. On the other hand, Houeix admitted he chose the "scad" portion of his scad.info and scad-and-us.info domains to convey not only to the purpose of the website, i.e., to "share, communicate and disclose" information about Savannah College, but to specifically refer to the College. Houeix also admitted that the websites are designed to target persons who are affiliated with the College or who may one day be affiliated with the College. On balance, this factors weighs in favor of Savannah College on the issue of likelihood of confusion.

(Doc. 73 at 44). The Court made no finding on bad faith either way. Nevertheless, this evidence supports the fifth factor of the bad faith inquiry: "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site." While on balance this factor alone may not have satisfied the bad faith element of the cyberpiracy claim, the Court cannot say such claim lacked any foundation for a finding of bad faith when brought.

Nor can the Court say that Savannah College's dismissal of such claim on the first day of trial was "unusually vexatious" or "oppressive." Since Savannah College was seeking only injunctive, and not monetary, relief, it was not necessary to proceed with its cyberpiracy claim and to prove the "bad faith" element of the claim to obtain such relief. Therefore, as a matter of judicial economy, Savannah College's motion to dismiss the cyberpiracy claim prior to the start of trial was reasonable. Therefore, the Court finds Savannah College's cyberpiracy claim was colorable when brought and that the litigation and ultimate dismissal of the claim was not oppressive.

Accordingly, the Court finds this lawsuit does not constitute an exceptional case

11

warranting an award of attorney fees under the Lanham Act.  Houeix's motion for attorney fees is therefore **DENIED**.

    **IT IS SO ORDERED.**


Date:  4/22/2005          s/Timothy S. Hogan
                                             Timothy S. Hogan
                                             United States Magistrate Judge